Vikram Valame

4039 2nd Street Palo Alto, California 94306

208-994-3067

vik.valame@gmail.com

Pro Se *Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

Vikram Valame

Plaintiff,

vs.

Joseph Robinette Biden, President of
the United States, et al.,

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case Number: 5:23-cv-03018-NC

**PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT**

Date: December 13, 2023
Time: 1:00 p.m.
Place: Courtroom 5, 4th floor

Hon. Nathanael Cousins

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................... iii

NOTICE OF MOTION AND MOTION ....................................................................1

STATEMENT OF PURPOSE .....................................................................................1

ISSUES TO BE DETERMINED .................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ..............................................1

I.       INTRODUCTION ...........................................................................................1

II.      Background .....................................................................................................3

A.   The 28th Amendment .........................................................................................3

B.   The Registration Requirement .........................................................................4

C.   Plaintiff's Lawsuit .............................................................................................5

III.     Legal Standards ..............................................................................................6

IV.      Argument ........................................................................................................7

A.   The 28th Amendment was validly ratified ........................................................7

1.   The deadline is invalid......................................................................................7

a.   Text ....................................................................................................................7

b.   Structure.............................................................................................................9

c.   History ..............................................................................................................11

2.   States cannot rescind ratifications ..................................................................12

a.   Text...................................................................................................................13

b.   Orderly Passage ...............................................................................................14

c.   History ..............................................................................................................14

3.   The Question is Justiciable .............................................................................15

B.   The MSSA violates the 28th Amendment .......................................................16

C.   Plaintiff has Article III Standing ....................................................................17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

D.  Remedies..................................................................................................................19

1.  Declaratory Judgment..............................................................................................19

2.  Vacatur.....................................................................................................................19

3.  Injunctive Relief.......................................................................................................20

V.  Conclusion...............................................................................................................21

# TABLE OF AUTHORITIES

## CASES

*Allen v. Wright*, 468 U.S. 737 (1984) ............................................................................18

*Bowsher v. Synar*, 478 U.S. 714 (1986)..........................................................................11

*Cal. Cmties. Against Toxics v. EPA*, 688 F.3d 989 (9th Cir. 2012) ...............................19

*Chiafalo v. Washington* 140 S. Ct. 2316 (2020) .............................................................13

*Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264 (1821)........................................................15

*Coleman v. Miller* 307 U.S. 433 (1939)....................................................................15, 16

*Defense Distributed v. U.S. Dep't of State*, 838 F.3d 451 (5th Cir. 2016) .....................20

*Dillon v. Gloss* 256 U.S. 368 (1921)...............................................................................10

*Dyer v. Blair*, 390 F. Supp. 1291 (N.D. Ill. 1975) (three-judge court) (Stevens, J.)......16

*eBay Inc. v. Mercexchange, L. L. C.*, 547 U.S. 388, 391 (2006) ................................6, 20

*Fair Housing C. of Riverside v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001)......6

*Franklin v. Massachusetts* 505 U.S. 788 (1992)..............................................................21

*Haaland v. Brackeen* 599 U. S. ____ (2023) ....................................................................2

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) .................................................18

*Hawke v. Smith*, 253 U.S. 221 (1920).............................................................................13

*Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017).....................................................20

*Hollingsworth v. Virginia*, 3 U.S. (3 Dall.) 378 (1798)...........................................3, 8, 16

*INS v. Chadha*, 462 U.S. 919 (1983) ..............................................................................16

*Kungys v. United States*, 485 U.S. 759 (1988)...................................................................9

*Leser v. Garnett*, 258 U.S. 130 at 137 (1922)......................................................7, 15, 16

*Marbury v. Madison*, 1 Cranch 137, 176 (1803) (Marshall, C. J.)..............................7, 15

*Md. Casualty Co. v. Pacific Co.*, 312 U.S. 270 (1941) ...................................................19

*Men v. Selective Serv. Sys*, No. 13-56690 (9th Cir. 2016) ..............................................19

*Mont. v. Haaland*, 29 F.4th 1158 (9th Cir. 2022) ...........................................................19

*Nat'l Family Farm Coal. v. E.P.A.*, 966 F.3d 893 (9th Cir. 2020) .................................19

*National Prohibition Cases*, 253 U.S. 350 (1920)...........................................................16

*NCFM v. Selective Service System* 593 U.S. ____ (2021)..................................................5

*New York State Rifle & Pistol Association, Inc. v. Bruen* 597 U.S. ___ .................................................11

*NOW, Inc. v. Idaho*, 459 U.S. 809 (1982)..................................................................................................4

Orr v. Orr (1979) 440 U.S. 268 ...................................................................................................................18

*Porretti v. Dzurenda*, 11 F.4th 1037, 1047 (9th Cir. 2021) ...................................................................6

*Posadas v. National City Bank*, 296 U.S. 497 (1936)..........................................................................12

*Rice v. Cayetano*, 528 U.S. 495 (2000).......................................................................................................16

*Rostker v. Goldberg*, 453 U.S. 57 (1981) ........................................................................................2, 5, 17

*Rucho v. Common Cause* 139 S. Ct. 2484 (2019) .................................................................................16

*Sammartano v. First Judicial District Court*, 303 F.3d 959 (9th Cir.2002) ...............................20

*Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020)...............12

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ....................................................................................17

State Oil Co. v. Khan, 522 U.S. 3 (1997). ...................................................................................................2

*Steffel v. Thompson*, 415 U.S. 452 (1974) ...............................................................................................17

*The Pocket Veto Case*, 279 U.S. 655 (1929)..........................................................................................12

*U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779 (1995)................................................................13

*United States v. Sprague*, 282 U.S. 716 (1931) .....................................................................................16

*United States v. Tynen*, 11 Wall. 88, 78 U. S. 92..................................................................................12

*V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071 (6th Cir.1994)........................20

*Zivotofsky ex rel. Zivotofsky v. Clinton* (Zivotofsky I), 566 U.S. 189 (2012) ..........................15

<u>S<small>TATUTES</small></u>

§922(g)(1) ............................................................................................................................................................4

10 U.S.C. §6015 (1976 ed., Supp. III) ........................................................................................................5

15 Stat. 706 (1868) ........................................................................................................................................14

2 Stat. 306......................................................................................................................................................11

28 U.S.C. §2201 ...........................................................................................................................................19

37 Stat. 646....................................................................................................................................................11

5 U.S.C. §3328 ...............................................................................................................................................4

5 U.S.C. §702 ...............................................................................................................................................20

5 U.S.C. §706 .........................................................................................................................................6, 19

50 U.S.C. § 3801 .......................................................................................................................................1, 4

50 U.S.C. §3802(a) ..........................................................................................................................4

9 Stat. 561 .....................................................................................................................................15

#### OTHER AUTHORITIES

101 Cong. Rec. 6628 (1955).........................................................................................................12

116 Cong. Rec. 28028–29 (1970) (statement of Rep. Chisholm), https://www.govinfo.gov/content/pkg/GPO-
    CRECB-1970-pt21/pdf/GPO-CRECB-1970-pt21-1-2.pdf [https://perma.cc/K5MB-MTDB]...........................3, 17

117 Cong. Rec. H9390 (daily ed. Oct. 12, 1971)..........................................................................17

2 The Records of the Federal Convention of 1787 (Max Farrand ed., 1911) ................................9

75 Cong. Rec. 3856 (1932) (statement of Rep. Jeffers)................................................................12

B. Garner et al., The Law of Judicial Precedent (2016) ..............................................................10

Bernstein, R.B., The Sleeper Wakes: The History and Legacy of the 27th Amendment, 61 FORDHAM L.REV. 497
    (1992) .....................................................................................................................................14

Brief for Intervenors-Appellees, *Illinois v. Ferriero*, No. 21-5096 (D.C. Cir. Mar. 4, 2022).....................................15

*Can a State Rescind Its Equal Rights Amendment Ratification: Who Decides and How*, 28 Hastings L.J. 979, (1977)
    ...............................................................................................................................................14

CONG. GLOBE, 40th Cong., 2d Sess. 4266 (1868) ......................................................................15

Defendants Motion to Dismiss, *National Coalition For Men v. Selective Service System,* No. 4:16-cv-03362
    (Southern District of Texas Oct. 6, 2017) .............................................................................18

Dellinger, W., The Legitimacy of Constitutional Change: Rethinking the Amendment Process, 97 HARV. L. REV.
    386 (1983) ..............................................................................................................................14

*Equal Rights Amendment Extension, Hearings on H.J. Res. 134 Before the Subcomm. On Civ. and Const. Rights of
    the H. Comm. On the Judiciary*, 95th Cong. 57 (1978) (testimony of Prof. William Van Alstyne) ........................14

H. Con. Res. 320, 102nd Congress (1992)....................................................................................11

H.J. Res 208, 92nd Cong. (1972) (emphasis added) .......................................................................3

H.J. Res 638, 95th Cong (1978)......................................................................................................3

*id.* at 3857 (statement of Rep. Ramseyer)....................................................................................12

J. JAMESON, A TREATISE ON CONSTITUTIONAL CONVENTIONS 632 (1887)..............................................14

Memorandum from Secretary of Defense to Secretaries of Military Departments et al. Re: Implementation Guidance
    for the Full Integration of Women in the Armed Forces 1 (Dec. 3, 2015) .......................5, 17

NATHAN BAILEY, THE NEW UNIVERSAL ETYMOLOGICAL ENGLISH DICTIONARY (London, T. Waller, 4th ed. 1756) ..................................................................................................................................13

National Archives, *Equal Rights Amendment – List of State Ratification Actions* (Mar. 4, 2020), https://www.archives.gov/files/foia/pdf/era-list-of-state-ratification-actions-03-24-2020.pdf. .................................3

*New Light on the ERA?*, Volokh Conspiracy (Sep. 13, 2023, 8:38 a.m.), https://reason.com/volokh/2023/09/13/new-light-on-the-era/#more-8248452 ............................................................................................................11, 12

*Ratification of the Equal Rights Amendment*, 44 Op. O.L.C. __ (Jan. 6, 2020) (the "**OLC Opinion**")............8, 10, 11

S.Rep. No. 96-826, p. 160 (1980)...............................................................................................................5

*Sabrina Jacobs*, Fifty Years Later, Voters Support Passing the Equal Rights Amendment, Data for Progress, June 2, 2022 (available at https://www.dataforprogress.org/blog/2022/6/2/fifty-years-later-voters- support-passing-the-equal-rights-amendment) ........................................................................................................10

SAMUEL JOHNSON, A DICTIONARY OF THE ENGLISH LANGUAGE (London, J.F. & C. Rivington et al., 10th ed. 1792) .......................................................................................................................................13

*Statement from President Joe Biden on Equal Rights Amendment Centennial* ..............................................2

THE FEDERALIST No. 39 (James Madison) .....................................................................................................9

THE FEDERALIST No. 43 (Alexander Hamilton)...............................................................................................9

U.S. House, *Constitutional Amendments Not Ratified* (2004), available at https://web.archive.org/web/20040909110249/http://www.house.gov/house/Amendnotrat.shtml..........................11

## RULES

Fed. R. Civ. P. 56(a) ...................................................................................................................................6

## TREATISES

5 Hind's Precedents of the House of Representatives (1907) ...............................................................................15

Scalia & Garner, *The Interpretation of Legal Texts* (2012)...............................................................................7

## REGULATIONS

1621.1(a) .....................................................................................................................................................5

32 C.F.R. §1615.3.......................................................................................................................................19

32 CFR §§ 1615.4(a) ...............................................................................................................................5, 19

32 CFR §1615.5..........................................................................................................................................19

45 FR 45247, 3 CFR, 1980 Comp., p. 82 .................................................................................2, 4

Proc. No. 7275, Feb. 22, 2000, 114 STAT. 3263 ........................................................................4

CONSTITUTIONAL PROVISIONS

Article I §7 ...........................................................................................................................3, 8

U.S. Const. amend. XVIII ........................................................................................................14

U.S. Const. Amend. XVIII §3 ...................................................................................................10

U.S. Const. amend. XXI ...........................................................................................................14

U.S. Const. amend. XXVIII §1 ............................................................................................2, 19

U.S. Const. art. 1 §8 ...................................................................................................................8

U.S. const. art. II §1 ................................................................................................................13

U.S. CONST. art. V ..................................................................................................7, 8, 12, 13

U.S. Const. art. VI ...................................................................................................................12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on December 13th, 2023 at 1:00 p.m. before the Honorable Nathanael Cousins, Magistrate Judge of the United States District Court for the Northern District of California at 280 South 1st Street, San Jose, CA 95113, Plaintiff will move the Court, pursuant to Federal Rule of Civil Procedure 56, to enter summary judgment in his favor on claims One, Two, and Three because (a) Plaintiff demonstrates standing; (b) the 28th amendment to the constitution of the United States prohibits discrimination based on sex; and (c) defendants knowingly and unlawfully impose sex discriminatory mandates upon plaintiff. This motion is supported by the following Memorandum of Points and Authorities, the attached declaration of Vikram Valame, and such other argument or evidence as may be presented to this Court at a hearing on this motion.

## STATEMENT OF PURPOSE

Plaintiff moves for an order granting summary judgment in his favor and entry of an order substantially similar to the attached proposed order.

## ISSUES TO BE DETERMINED

1. Whether the 28th Amendment to the Constitution of the United States was validly ratified

2. Whether the 28th Amendment invalidates the provisions of the Military Selective Service Act (50 U.S.C. § 3801 *et seq.*) insofar as they compel male plaintiff to register without compelling similarly situated women to register.

3. Whether this court has jurisdiction over this matter under Article III of the Constitution.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

This Military Selective Service Act (the "**MSSA**") requires "every male citizen of the United States" between ages 18 and 26 to register with the Selective Service System (the "**SSS**"). A registrant is required by Presidential Proclamation 4771 to provide "reasonable evidence of his

identity", and to "keep the [SSS] informed of his address". 45 FR 45247, 3 CFR, 1980 Comp., p. 82. Although clearly discriminatory, these requirements were upheld by the Supreme Court in *Rostker v. Goldberg*, 453 U.S. 57 (1981), which applied intermediate scrutiny under the equal protection component of the Fifth Amendment's due process clause. But the legal landscape has changed significantly since the court's decision in *Rostker*[1]. Plaintiff's claims arise under the recently ratified 28th Amendment to the Constitution of the United States, which expressly prohibits sex-based classifications: "equality of rights under the law shall not be denied or abridged by the United States or by any State on account of sex". U.S. Const. amend. XXVIII §1. The text and original public meaning of this amendment clearly invalidate the discriminatory scheme used under the MSSA.

The United States has therefore taken the position that the 28th Amendment was improperly ratified, principally because three of the thirty-eight necessary ratifications occurred after a congressionally imposed 7-year deadline on ratification. But the constitution "gives Congress a series of enumerated powers, not a series of blank checks" *Haaland v. Brackeen* 599 U. S. ____ (slip op. at 13) (2023), and no provision of the constitution authorizes such a deadline. The deadline therefore exceeds the powers of Congress and should be disregarded.

The United States has also noted that the purported recissions of ratification by some states may independently invalidate the 28th Amendment. Although the United States has refused to take a position on this claim in litigation, the President of the United States has indicated that such recissions are ineffective. *Statement from President Joe Biden on Equal Rights Amendment Centennial*[2]. In any event, constitutional text, history, and tradition do not support such a recission power.

This court should therefore disregard the unconstitutional deadline, apply the 28th Amendment as written, and grant relief on Plaintiff's claims against the official capacity defendants and the SSS. Such relief should enjoin subordinate executive officials from enforcing the MSSA against

---

[1]  Plaintiff also contends that Rostker has lost continuing vitality and should be overruled. But it is the Supreme "Court's prerogative alone to overrule one of its precedents." State Oil Co. v. Khan, 522 U.S. 3, 20 (1997).
[2]  Available at https://www.whitehouse.gov/briefing-room/statements-releases/2023/08/26/statement-from-president-joe-biden-on-equal-rights-amendment-centennial/, last accessed 9/7/2023.

plaintiff, vacate the regulations that implement its discriminatory mandates, and declare void Proclamation 4771 for doing the same.

## II.   Background

### A.  The 28th Amendment

As Representative Chisholm stated over fifty years ago, if the 28th Amendment was ratified, "the selective service law would have to include women", but they "would not be required to serve in the Armed Forces where they are not fitted any more than men are required to serve". 116 Cong. Rec. 28028–29 (1970) (statement of Rep. Chisholm), https://www.govinfo.gov/content/pkg/GPO-CRECB-1970-pt21/pdf/GPO-CRECB-1970-pt21-1-2.pdf [https://perma.cc/K5MB-MTDB]. Two years later, Congress passed the joint resolution that would become the 28th Amendment. The final resolution certified that two thirds of each house concurred in the Amendment and that the resolution was thus not subject to presentment under Article I §7 of the Constitution. *Hollingsworth v. Virginia*, 3 U.S. (3 Dall.) 378 (1798).

Just before the operative text of the 28th amendment, Congress declared that the "following article" would be valid "when ratified by the legislatures of three-fourths of the several States *within seven years from the date of its submission by the Congress*". H.J. Res 208, 92nd Cong. (1972) (emphasis added). Congress also imposed an additional condition for the amendment's operation in §3 of the text, which stated that the amendment would only have legal effect starting two years after its ratification. In contrast, and unlike the 18th, 20th, 21st, and 22nd Amendments, Congress did not include the ratification deadline in the text of the proposed amendment.

Over the next five years, thirty-five states ratified the proposed constitutional amendment. National Archives, *Equal Rights Amendment – List of State Ratification Actions* (Mar. 4, 2020), https://www.archives.gov/files/foia/pdf/era-list-of-state-ratification-actions-03-24-2020.pdf. Following these 35 ratifications, efforts to ratify the proposed amendment stalled. Wishing to provide more time for states to ratify, Congress—by law—declared that the deadline would not take effect before June 30th, 1982. H.J. Res 638, 95th Cong (1978). Although the

extension of the deadline was challenged, the Supreme Court dismissed those cases as moot in *NOW, Inc. v. Idaho*, 459 U.S. 809 (1982) because no further states ratified the 28th Amendment before the deadline extension expired.

The final three ratifications required to surpass the thirty-eight-state threshold under Article V came from Nevada, Illinois, and Virginia in 2017, 2018, and 2020 respectively. Because the 28th Amendment provides that it is to take effect two years after ratification, the Amendment became operative on January 27th, 2022. From that moment onwards, the constitution prohibited the United States or any state government from imposing a sex-based classification on rights under law.

### B. The Registration Requirement

Congress created the peacetime SSS in 1948 to facilitate "a system of selection which is fair and just" in determining who is eligible for conscription to serve the national defense. MSSA §1(c) (1948) *currently codified at* 50 U.S.C. §3802(a). Although the draft system that the MSSA supports has been discontinued since the 1970s, the act still obligates "every male citizen of the United States . . . between the ages of eighteen and twenty-six, to present himself for and submit to registration" in a manner directed by Presidential proclamation and implementing regulations. Failure to register is punishable by imprisonment for up to five years or a 250,000$ fine under 50 U.S.C. §3801, forfeiture of Second Amendment rights under §922(g)(1), and loss of most job opportunities in every executive department under 5 U.S.C. §3328.

Following the re-activation of the registration process in 1980, President Jimmy Carter issued proclamation 4771, which directed men (and only men) born after January 1st, 1963 to register within 30 days of their 18th birthday. Proc. No. 4771, July 2, 1980, 45 F.R. 45247 §1-105. President Clinton amended that proclamation in 2000 to allow registration "at the places and by the means designated by the director of" the SSS including "the Selective Service Internet Web Site". Proc. No. 7275, Feb. 22, 2000, 114 STAT. 3263. The SSS, in turn, has issued regulations implementing both the registration and information-update mandates found in the MSSA. The SSS requires men (and only men) to submit their "name, date of birth, sex, Social Security Account Number (SSAN), current mailing address, permanent residence, telephone

number, date signed, and signature, if requested", and to notify the SSS within 10 days of any changes to name, address, or residence. 32 CFR §§ 1615.4(a), 1621.1(a). The SSS administers a webpage[3] which allows men to input the required information, while redirecting women to a page asserting that *Rostker* and the MSSA bar their registration. The SSS estimates that the online form could take upwards of two minutes to complete. *See* Exhibit A.

Although Congress has not amended the core registration requirements in decades, the Supreme Court has deferred under intermediate scrutiny to the legislative findings made by Congress when it funded the renewed registration process in 1980. Citing extensively to the legislative history, the *Rostker* Court found that a "need for combat troops", combined with unchallenged bans on women in combat under 10 U.S.C. §6015 (1976 ed., Supp. III) provided adequate justification for the discriminatory policy. *See Rostker* 453 U.S. 457 at 76. *See also* S.Rep. No. 96-826, p. 160 (1980).

Today, the restrictions on women in combat relied upon by *Rostker* have been removed. *See* Memorandum from Secretary of Defense to Secretaries of Military Departments et al. Re: Implementation Guidance for the Full Integration of Women in the Armed Forces 1 (Dec. 3, 2015). Although three justices recognized that these developments could undermine *Rostker*, they denied immediate review of the MSSA's constitutionality. *NCFM v. Selective Service System* 593 U.S. ____ (2021) (Statement of Justice Sotomayor). Those three justices denied review in the "hope" that Congress would cure the constitutional defects in the MSSA without judicial intervention. It has now been over two years since the court denied review in *NCFM*. Congress has yet to amend the MSSA to comply with changed circumstances.

## C.  Plaintiff's Lawsuit

Plaintiff attained the age of 18 in May of 2023. Valame Dec. ¶4. Having learned of the draft through various sources, Plaintiff used the SSS website to request information about the registration process. *Id.* at ¶7. The SSS automatically informed plaintiff that failure to register would subject plaintiff to criminal prosecution and the loss of job opportunities. *Id*. at ¶8.

---

[3] https://www.sss.gov/register/

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff was informed by the SSS website that the SSS tracks the names and addresses of those who do not sign up for the draft and refers them to the Department of Justice for criminal prosecution. *Id.* at ¶¶ 8-9; *see also* Exhibit C. Plaintiff was informed by the official website of defendant U.S. Attorney Ismail Ramsey that the U.S. Attorney's office was actively enforcing the MSSA's requirements upon job applicants. Valame Dec. ¶10; *see also* Exhibit D.

Plaintiff brought this lawsuit to enjoin defendants from implementing these referrals, threats of prosecution, and other discriminatory acts against him.

### III.    Legal Standards

A party is entitled to summary judgment if it can demonstrate that no material disputes of fact exist and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[W]hen simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions." *Fair Housing C. of Riverside v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001).

Some of the claims brought in this suit arise under the Administrative Procedures Act (the "**APA**"). The APA empowers courts to "to "hold unlawful and set aside agency action, findings and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §706(1), (2). The APA requires courts to "decide all relevant questions of law" and "interpret constitutional provisions" to determine compliance. *Id.* at §706.

Some of the claims brought in this suit request an injunction to be entered against the official and agency defendants. A plaintiff seeking a permanent injunction must demonstrate (1) irreparable injury; (2) inadequacy of remedies at law; (3) favorable balance of the equities; and (4) the public interest. *eBay Inc. v. Mercexchange, L. L. C.*, 547 U.S. 388, 391 (2006). "Where, as here, the government opposes a . . . injunction, the third and fourth factors merge into one inquiry." *Porretti v. Dzurenda*, 11 F.4th 1037, 1047 (9th Cir. 2021).

1
2

## IV.    Argument

3

### A.  The 28th Amendment was validly ratified

4

    Article V states that an amendment proposed by two thirds of each house of Congress

5

and subsequently ratified by three fourths of the states is valid for all intents and purposes as part

6

of the constitution. The specification of these prerequisites naturally suggests that no other

7

requirements apply to the proposal of amendments. Scalia & Garner, *The Interpretation of Legal*

8

*Texts*, §10 (2012) (describing the *expressio unius* cannon). The United States does not dispute

9

that the 28th Amendment was proposed by two-thirds majorities in each house of Congress, and

10

then ratified by three-fourths of the States. Ordinarily, that would be the end of the matter, as

11

"resolutions of ratification" "duly authenticated" are conclusive upon the United States, and

12

"conclusive upon the courts". *Leser v. Garnett*, 258 U.S. 130 at 137 (1922). To rebut this

13

conclusive effect, the United States turns Article V on its head, finding a congressional power to

14

forbid ratifications that the Constitution expressly allows, and authority in state governments to

15

nullify conclusive ratifications.

16
17

### 1.  The deadline is invalid

18

#### a.  Text

19

    "The powers of the legislature are defined and limited; and that those limits may not be

20

mistaken or forgotten, the constitution is written." *Marbury v. Madison*, 1 Cranch 137, 176

21

(1803) (Marshall, C. J.). The text of Article V defines and limits the power of the Congress and

22

the states over amendments to the Constitution of the United States. Supermajorities in Congress

23

(or the states in convention) may "propose" amendments to the constitution, which "shall be

24

valid to all intents and purposes, as part of this Constitution" when "ratified by the legislatures of

25

three fourths of the several states." U.S. CONST. art. V. Congress is granted an explicitly

26

defined list of powers in the amendment process. Congress has the right to "deem" an

27

amendment necessary at any time, to "propose"—with minimal limitation—any amendment it

28

wishes, and to determine the "mode" of ratification as one of two options. *Id.* Unlike the ordinary

legislative powers granted to Congress, these three functions are not subject to presentment

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

under Article I §7 per the Supreme Court's ruling *Hollingsworth*. Conspicuously absent from these enumerated powers is the ability to impose deadlines, or any other preconditions, on the ratification of Amendments.

The Office of Legal Counsel (the "**OLC**") claims that the ability of Congress to set the "mode" of ratification for an amendment supports the placement of deadlines outside the text of proposed amendments as an "incident to its power to designate the mode of ratification". *Ratification of the Equal Rights Amendment*, 44 Op. O.L.C. __ (Jan. 6, 2020) (the "**OLC Opinion**") at 14, 18. The OLC reading essentially nullifies Article V's requirement that the "mode" of ratification be "the one or the other", referencing ratification by state "legislatures" or state "conventions". Authorization for Congress to select one mode from a list of exactly two modes cannot possibly grant Congress broad power to alter or add to the modes given.

The OLC also asserts that because these "modes" may appear (with binding effect) in the prefatory text, congress may also include *other* binding conditions in the prefatory text. OLC Opinion at 14. This argument is backwards. The Constitution *explicitly* authorizes Congress to include the "mode" of ratification, and perhaps a statement describing the "necessity" of a proposal, independently from an amendment's substantive text. U.S. Const Art. V ("One or the other Mode of Ratification may be proposed by the Congress"). For the OLC's logic to hold, Article V would have to contain a similarly clear authorization for Congress to impose deadlines on amendments. There is no such authorization, and the logic of the OLC Opinion therefore supports invalidating the deadline.

The textual basis for an implied power to execute Article V is even weaker because, unlike normal exercises of incidental powers, Congress acts alone pursuant when proposing constitutional amendments. The necessary and proper clause, which serves as the textual basis for implied powers, is housed in Article I and requires adherence to the presentment clauses. U.S. Const. art. 1 §8. Thus, even if the court finds that Congress *could* exercise an implied power that is "necessary and proper" to execute Article V, it should disregard the deadline affixed to the 28th Amendment for failing to obey the constitutional requirements for the use of such incidental

powers[4]. This is a fallback argument. The other arguments in this section of the brief demonstrate that a deadline would not be "proper" even if the elastic clause applied.

### b. Structure

The structure and context of Article V also support the invalidity of congressional deadlines. Since constitutional amendments can alter the federal split of sovereignty that defines the United States, the framers intended the states and federal government to have *shared* power over the amendment process. *See* THE FEDERALIST No. 43 (Alexander Hamilton) ("Article V equally enables the general and the States governments"). *See also* THE FEDERALIST No. 39 (James Madison) (Article V is neither "wholly national nor wholly federal"). Indeed, Congress was given the power to propose amendments merely because it could be the "first to perceive" and could not create "danger" because "the people would finally decide" the adoption of an amendment through ratification. 2 The Records of the Federal Convention of 1787, at 558 (Max Farrand ed., 1911). Allowing Congress to impose preconditions on state ratification is inconsistent with this finely wrought balance of power.

The importance of federalism in the amendment process is underscored by the significant redundancy the United States' position creates in Article V. But it is a "cardinal rule of statutory interpretation that no provision should be construed to be entirely redundant" *Kungys v. United States*, 485 U.S. 759, 778 (1988) (plurality opinion of Scalia, J.). If the power to specify the "mode" of ratification granted Congress plenary power to judge consensus among the people, why also grant Congress the duplicative power to choose "one or the other" between ratification by "legislatures" or "conventions"? Under the United States' view, an Article V that granted Congress the power to choose the "mode of ratification by three fourths of the states" would operate identically to the existing version of the constitution. The superfluous text is therefore precisely the text that accomplishes the federal/state balancing valued most by the framers. An interpretation that nullifies such text cannot be right.

---

[4]  The Congressional resolution purporting to extend the 28th Amendment's ratification *did* go through bicameralism and presentment. However, that resolution merely nullified application of the original deadline until June 30th, 1982. No new deadline was created. *See* 92 STAT. 3799.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The holding in *Dillon v. Gloss* 256 U.S. 368 (1921) does not bless such an extra-textual power. In *Dillon*, the court confronted the 18th Amendment to the Constitution of the United States, which expressly stated that the 18th Amendment would be "inoperative" unless ratified within seven years. U.S. Const. Amend. XVIII §3. The court held that the "*proposal*" containing the deadline was valid because Article V vested "Congress with a wide range of power in *proposing* amendments." (emphasis added) *Dillon* 256 U.S. at 373. In the context of *Dillon*, these statements speak not to Congress having an extra-textual power to impose deadlines, but rather to the express grant of power in Article V to "propose" the text of an amendment. The deadline in *Dillon* was necessary to amend the effect that Article V would otherwise have had on the operative clauses of the amendment. This is precisely why Congress included the 28th Amendment's two-year grace period as §3 of the of the amendment's text. Otherwise, Article V would have declared the amendment "valid to all intents and purposes" "when ratified", even if Congress had included such a grace period in the prefatory text of the proposal resolution. The United States does not dispute this point. *See* OLC Opinion at 22 ("Article V declares that a proposed amendment 'shall be valid to all Intents and Purposes, as Part of [the] Constitution, when ratified.' Including the two-year delay in the amendment itself could be necessary to amend the effect that Article V would otherwise have") (citations omitted). If Congress lacks the power to *suspend* ratifications that that would render an amendment "valid", it surely does not have the greater power to *nullify* those same ratifications for all time.

To the extent that *Dillon* suggested a broader claim that Congress can exercise authority not granted by the text of Article V, such musings are plainly dictum because they were not necessary to resolve the case. *See* B. Garner et al., The Law of Judicial Precedent 44 (2016). This dicta is even less persuasive because it is premised on the notion that amendments must be ratified "contemporaneously" with their proposal to ensure national consensus[5]. *Dillon* 256 U.S. at 375. The court's suggestion that Amendments are automatically time-limited was repudiated

---

[5]   The truth of this assertion is dubious. The 18th Amendment was ratified quickly, but clearly did not enjoy consensus, as demonstrated by its prompt repeal. 50 years after its proposal, the 28th Amendment enjoys more popularity than the leading candidates for President ***combined***. *Sabrina Jacobs*, Fifty Years Later, Voters Support Passing the Equal Rights Amendment, Data for Progress, June 2, 2022 (85% support) (available at https://www.dataforprogress.org/blog/2022/6/2/fifty-years-later-voters-support-passing-the-equal-rights-amendment).

by the ratification of the 27th Amendment 203 years after its proposal by the 1st Congress. The executive branch did not protest that ratification, and Congress "confirmed" its validity by a unanimous Senate vote and a 414-3 vote in the House. H. Con. Res. 320, 102nd Congress (1992).

### c. History

The decisions of the early Congresses also provide "contemporaneous and weighty evidence" of the constitution's meaning. *Bowsher v. Synar*, 478 U.S. 714 at 724-725 (1986). If a contemporaneous ratification was mandated by the constitutional text or left to the unfettered discretion of Congress, someone would have acknowledged it in one of the 21 amendments proposed prior to the 18th Amendment. Congress was aware that amendments could lie unratified for many years, as happened with the 27th amendment. While the practice of including deadlines into the unratified proposal text of amendments begin in 1960, "20th-century evidence . . . does not provide insight into the meaning of" constitutional provisions adopted in 1788[6]. *New York State Rifle & Pistol Association, Inc. v. Bruen* 597 U.S. ___ at n.28 (slip op. at 58).

The OLC and other scholars posit that other text historically included in prefatory clauses supports modern deadlines by analogy. However, no text appears to have had any independent legal effect, and certainly didn't assert congressional power to disregard state ratifications. The OLC looks to language in the Bill of Rights allowing states to ratify "all" or "part" of the twelve proposed amendments. OLC Opinion at 15. But such language clearly invokes the congressional power to propose "Amendments"—plural—to the Constitution that can be independently ratified under the plain text of Article V.

In Professor Sachs' recent article, he turns to the prefatory clauses of the 12th and 17th amendments, which state that their text (or parts of it) are to be inserted "in lieu of" the clauses previously governing Presidential and Senatorial elections[7]. Sachs claims that these clauses had independent legal significance because "anything in the original" specified clauses "was, by

---

[6] Although several amendments contain unenforceable deadlines outside their operative text, the 28th Amendment appears to be the only amendment impacted by a deadline's illegality. All other proposed amendments have either been ratified, contain no deadlines at all, or *also* contain a textual deadline. *See* U.S. House, *Constitutional Amendments Not Ratified* (2004), available at https://web.archive.org/web/20040909110249/http://www.house.gov/house/Amendnotrat.shtml.
[7]  Stephen E. Sachs, *New Light on the ERA?*, Volokh Conspiracy (Sep. 13, 2023, 8:38 a.m.), https://reason.com/volokh/2023/09/13/new-light-on-the-era/#more-8248452. *See also* 2 Stat. 306 (12th Amendment); 37 Stat. 646 (17th Amendment).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

default, overridden" while "anything outside" those clauses "was, by default, unaffected." *Sachs, supra* note 7. It is difficult to see how these changes the legal meaning of the 12th and 17[th] Amendments. Each amendment easily surmounts the presumption against implied repeal as applied to the specified clauses, as they "[cover] the whole subject of the earlier [ones] and [are] clearly intended as a substitute" *Posadas v. National City Bank*, 296 U.S. 497 (1936) (citing *United States v. Tynen*, 11 Wall. 88, 78 U. S. 92). While these declarations may have provided Congressional views on the "necessity" of the 12th and 17th amendments, they certainly did not alter the law.

While "long settled and established practice is a consideration" in the interpretation of the constitution. *The Pocket Veto Case*, 279 U.S. 655, 689 (1929)[8]. When Congress first considered adding purportedly binding deadlines outside the text of the proposed 20th amendment, it "drew a contemporaneous constitutional objection . . .." *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183, 2201 (2020). Representative Lamar Jeffers objected to Representative Emanuel Celler's proposal: "it would be of no avail, as he is offering it as a part of the proposal clause and not as a part of the proposed constitutional amendment." 75 Cong. Rec. 3856 (1932). *See also id*. at 3857 (statement of Rep. Ramseyer). The countervailing position, adopted with the proposal of the 23rd amendment, was that the inclusion of deadlines would "clutter up the constitution", and that they were therefore best placed outside the ratified text. 101 Cong. Rec. 6628 (1955). Yet this justification all but concedes that such deadlines are not "valid to all intents and purposes" as "the supreme law of the land". U.S. Const. art. V; U.S. Const. art. VI. Congress cannot simultaneously wish to exclude text from the Constitution while asserting that the omitted text trumps actual provisions of our national charter.

## 2.  States cannot rescind ratifications

South Dakota, Tennessee, Idaho, Nebraska, and Kentucky claim to have rescinded their prior ratifications of the 28th Amendment. Those actions are legal nullities because they are

---

[8] The *Pocket Veto Case*, decided in 1929, should be read in line with *Bruen* court's focus on 18th and early 19th century practice.

unauthorized by the text of Article V, inconsistent with the orderly passage of constitutional amendments, and repudiated by history.

### a. Text.

The text of Article V affirmatively grants states the power to "ratify" a proposed amendment. At the time of the founding, "ratify" meant "to confirm" or "to establish", which in turn meant "to complete" or "to perfect". SAMUEL JOHNSON, A DICTIONARY OF THE ENGLISH LANGUAGE (London, J.F. & C. Rivington et al., 10th ed. 1792), available at http://books.google.com/books?id=j-UIAAAAQAAJ. *See also* NATHAN BAILEY, THE NEW UNIVERSAL ETYMOLOGICAL ENGLISH DICTIONARY (London, T. Waller, 4th ed. 1756), available at http://books.google.com/books/?id=HXQSAAAAIAAJ. ("to confirm"). These formulations do not imply a decision that can be reversed on a whim. Instead, they signal the conclusive end of a process, here the process of ratification within a state.

Unlike provisions of the Constitution which have been read the grant states "far reaching authority" to determine the "manner" of federal functions, Article V restricts states to a "mode" of ratification chosen by another body. *Chiafalo v. Washington* 140 S. Ct. 2316 (2020); U.S. const. art. II §1; U.S. const. art. V. Granting Congress only this narrow discretion and otherwise specifying the requirements to pass an amendment demonstrates that "the Framers intended the Constitution to be the exclusive source of qualifications" for constitutional amendments. *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 800-1 (1995).

The Tenth Amendment is not to the contrary. Unlike the reserved police powers of the states, "the act of ratification by the State derives its authority from the Federal Constitution". *Hawke v. Smith*, 253 U.S. 221, 230 (1920). In fact, the limited nature of the Article V delegation supports the opposite view. As Judge Jameson stated in 1887,

> The power of a State legislature to participate in amending the Federal Constitution exists only by virtue of a special grant in the Constitution. . . . So, when the State legislature has done the act or thing which the power contemplated and authorized—when the

power ,[to ratify] has been exercised—it, ipso facto, ceases to exist

. . ..

 Leo Kanowitz and Marilyn Klinger, *Can a State Rescind Its Equal Rights Amendment Ratification: Who Decides and How*, 28 Hastings L.J. 979, 1000-1001 (1977) (citing J. JAMESON, A TREATISE ON CONSTITUTIONAL CONVENTIONS 632 (1887)).

### b.   Orderly Passage

Many scholars who have studied the amendment process agree that allowing states to rescind ratifications would create a chaotic and unserious amendment process. *See* e.g. Bernstein, R.B., The Sleeper Wakes: The History and Legacy of the 27th Amendment, 61 FORDHAM L.REV. 497, 548 (1992); Dellinger, W., The Legitimacy of Constitutional Change: Rethinking the Amendment Process, 97 HARV. L. REV. 386, 421-27 (1983); *Equal Rights Amendment Extension, Hearings on H.J. Res. 134 Before the Subcomm. On Civ. and Const. Rights of the H. Comm. On the Judiciary*, 95th Cong. 57, 138 (1978) (testimony of Prof. William Van Alstyne) ("No state ought to consider an amendment to the Constitution under the misimpression … that it may do it with some sort of celerity or spontaneity because it will always have this interval of additional years while other States are looking at it to reconsider").

Should there be a national consensus that a proposed amendment must be revoked or repealed, Article V provides a process for doing so: proposal by two thirds of each house of Congress, and ratification by three fourths of the states. This is exactly what happened with the 18th and 21st Amendments. See U.S. Const. amend. XVIII; U.S. Const. amend. XXI.

### c.   History

States have attempted to rescind ratifications of proposed amendments in the past. When the 14th Amendment was adopted, the Secretary of State had received notice that more than three fourths of the states had ratified. He also received notice that New Jersey and Ohio had purportedly rescinded their ratifications. 15 Stat. 706 (1868). The issue was subsequently turned over to Congress, which voted to declare the amendment ratified by three fourths of the states,

including Ohio and New Jersey[9]. CONG. GLOBE, 40th Cong., 2d Sess. 4266, 4295-96 (1868). Seventy years later, the lead opinion in *Coleman v. Miller* 307 U.S. 433, 450 (1939) found that the "decision by the political departments of the Government as to the validity of the adoption of the Fourteenth Amendment has been accepted". That conclusion should control this case.

Some states have suggested that the ratification process is more historically analogous to voting on bills in the legislature, where a legislator can switch their vote from "yea" to "nay" any time before passage. Brief for Intervenors-Appellees at 43, *Illinois v. Ferriero*, No. 21-5096 (D.C. Cir. Mar. 4, 2022). But a legislator's vote is not "conclusive" upon the courts in the same way that a state's enrolled or engrossed ratification is. *Leser*, 258 U.S. at 137 (1922). Even if one were to entertain analogous reasoning here, the best analogy would be to one house of Congress reconsidering its vote on a bill after sending it to the other house or to the President. Yet longstanding precedent in the house states that it is "impossible" to "reverse" or reconsider the passage of engrossed bills *even if* they have not yet been enacted into law. 5 Hind's Precedents of the House of Representatives, §5652 (1907)[10]. Accordingly, there is no power for states to rescind their ratifications by analogy to the ordinary legislative process.

### 3.  The Question is Justiciable

The political question doctrine is a "narrow exception" to the general rule that "the Judiciary has a responsibility to decide cases properly before it, even those it 'would gladly avoid.'" *Zivotofsky ex rel. Zivotofsky v. Clinton* (Zivotofsky I), 566 U.S. 189, 194–95 (2012) (quoting *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821)). The doctrine applies if a question presented in the case is affirmatively committed to one of the other branches of government, or clearly unsuitable for judicial resolution.

Determining the enforceability of a congressional enactment is nothing more than a routine exercise of the judiciary's power to say what the law is. *Marbury v. Madison*, 1 Cranch 137 (1803). Although Congress may have a plenary power to "propose" amendments under

---

[9]  The Speaker of the House was apparently also in possession of a possibly fraudulent telegram purporting to certify Georgia's ratification of the amendment. Congress bypassed that factual question.

[10] Hind does not state outright that the bill in question had not yet passed. However, the motion for reconsideration was brought (and decided) on April 29, 1850, while the statutes at large state that the bill was enacted on May 2, 1850. 9 Stat. 561.

Article V, "what is challenged here is whether Congress has chosen a constitutionally permissible means of implementing that power." *INS v. Chadha*, 462 U.S. 919, 941 (1983). The possibility that the courts may disagree with the political branches of government over the proper meaning of the Constitution is present in every constitutional case.

The Supreme Court has therefore adjudicated numerous cases relating to the Article V procedures. *E.g. Hollingsworth v. Virginia* 3 U.S. 378 (1798); *National Prohibition Cases*, 253 U.S. 350 (1920); *Leser v. Garnett*, 258 U.S. 130 (1922); *United States v. Sprague*, 282 U.S. 716 (1931). The only case raising tackling the justiciability question in the context of Article V was *Coleman*. In that case, some parties urged the court to require amendments be ratified in a "sufficiently contemporaneous" manner. *Coleman* 307 U.S. at 452 (1939). A majority of the court found "it does not follow" that "the Court should take upon itself the responsibility of deciding what constitutes a reasonable time" because such a determination would involve "appraisal of a great variety of relevant conditions, political, social and economic" outside the competence of a federal court. *Id.* at 453-454; *accord Rucho v. Common Cause* 139 S. Ct. 2484 (2019). Although four justices in Coleman would have held the entirety of Article V a political process subject to unreviewable congressional power, that view did not carry the day. See *id.* at 459 (Black, J., concurring) ("Undivided control of [the amendment] process has been given by the Article exclusively and completely to Congress."); see also *Dyer v. Blair*, 390 F. Supp. 1291, 1299–300 (N.D. Ill. 1975) (three-judge court) (Stevens, J.) (a majority of the Coleman Court "refused to accept that position").

In order to adjudicate this case, the court merely needs to confirm that there is no extra-textual "contemporaneous" ratification requirement. This pure question of law does not raise the line-drawing concerns that animated the holding in *Coleman*.

### B.  The MSSA violates the 28th Amendment

The 28th Amendment clearly prohibits the SSS from enforcing its discriminatory registration requirements. Just like the 15th Amendment's explicit textual focus on race, the 28th Amendment contains an "absolute" and "self-executing" prohibition on sex-based classifications enshrined in law. *Rice v. Cayetano*, 528 U.S. 495, 512 (2000).

Even if the 28th Amendment was read (contrary to the text) to allow bona-fide requirements that took into account biological distinctions between sexes, the military has abolished all male-only positions. Memorandum from Secretary of Defense, *supra* at 1. The final report of the National Commission on Military, National, and Public Service also concluded that no military necessity exists for restricting the draft to men alone. *See* Complaint ¶¶30-33.

Although courts normally accord a "healthy deference" to Congressional and executive policy in military affairs, no deference is owed here. *Rostker*, 453 U.S. at 66 (1981). The current legislation, proclamation, and agency regulations governing the military draft have yet to be updated to consider the 28th Amendment. In fact, the most recent applicable congressional pronouncement on the male-only draft *was the 28th Amendment itself*, which is now greater than any ordinary congressional enactment. Congress rejected a draft exemption then, and this court cannot create one now. 117 Cong. Rec. H9390 (daily ed. Oct. 12, 1971); *see also* Statement of Rep. Chisholm, *supra*. To the extent that the court wishes to consult more recent expertise from the political branches, it should look to the final report of the National Commission on Military, National, and Public Service, which found that the draft requirement could and should be extended to women. *See* Complaint ¶30.

No reasonable factfinder could determine that the discriminatory registration requirements survived the passage of the 28th amendment.

### C.  Plaintiff has Article III Standing

To meet the irreducible constitutional minimum for standing "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

To establish injury in fact, "[I]t is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). In this case, injury is even clearer because plaintiff *has* exposed himself to arrest and prosecution through his refusal to register. *See* Valame Dec. ¶6. The SSS and official defendants have made it clear that failure

to register is an action subject to felony charges. *See* Exhibit B. Although the United States has disputed the existence of standing by other plaintiffs challenging the MSSA, it appears to concede that people subject to prosecution for failure to register suffer an Article III injury. Defendants Motion to Dismiss at 13, *National Coalition For Men v. Selective Service System,* No. 4:16-cv-03362 (Southern District of Texas Oct. 6, 2017) ("Because both Mr. Lesmeister and Mr. Davis had already registered . . . neither was or currently is subject to any action to enforce the requirements of the MSSA"); *but see Nat'l Coal. for Men v. Selective Serv. Sys*., No. 4:16-cv-03362, 5 (S.D. Tex. Apr. 6, 2018) (a "continuing obligation to update SSS with changes to their information" creates Article III injury).

Plaintiff also suffers an independent injury due to status-based discrimination. Laws that discriminate based on sex carry "the baggage of sexual stereotypes." Orr v. Orr (1979) 440 U.S. 268, 283. The Constitution separately prohibits this form of discrimination because it inflicts real harm even when not tied to the "life, liberty, or property" protected by other constitutional clauses. U.S. Const. amend. V. The Supreme Court recognized this fact in *Havens Realty*, where it held that the individualized harm caused by discrimination was an injury under Article III. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982). The court reaffirmed that stigmatizing injury could create Article III standing just three years later, as long as it is individually suffered by a plaintiff. *Allen v. Wright*, 468 U.S. 737, 755 (1984) ("this sort of noneconomic injury is one of the most serious consequences of discriminatory government action and is sufficient in some circumstances to support standing."). Because the government has required Plaintiff himself to register or face penalties, he has properly proven an injury in fact.

The latter requirements of Article III standing are clearly satisfied here. Defendants created and now enforce the regulations currently requiring discriminatory registration, meaning that both injuries are traceable to their conduct. This court can redress those injuries by vacating the discriminatory regulations, enjoining their enforcement, and declaring their illegality. The Ninth Circuit has said as much in this exact context. *See Men v. Selective Serv. Sys*, No. 13-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

56690, 4 (9th Cir. 2016) ("the Selective Service is wrong to argue that the [plaintiffs] lack

standing because their alleged equality injuries would not be redressed").

## D.  Remedies

### 1.  Declaratory Judgment

The Declaratory Judgment Act allows any court of the United States to declare the rights

and other legal relations between parties in a case. 28 U.S.C. §2201. A declaratory judgement

may be issued when an Article III controversy is present, and there a party succeeds on the

merits. *See Md. Casualty Co. v. Pacific Co.*, 312 U.S. 270 (1941). Those requirements are

satisfied. *Infra.* Since plaintiff has proven illegal discrimination, the equities strongly favor this

court exercising its discretion to issue a judgement against all defendants declaring the

registration requirements unconstitutional as applied to plaintiff and on their face.

### 2.  Vacatur

"The presumptive remedy for violations of NEPA and the Administrative Procedure Act

is vacatur." *Mont. v. Haaland*, 29 F.4th 1158, 1164 (9th Cir. 2022) (citing 5 U.S.C. §706). The

court should follow that default rule here and set aside the SSS regulations that require plaintiff

to register while not requiring similarly situated women to register. Specifically, the court should

vacate 32 C.F.R. §§ 1615.3-1615.5, which incorporate the unconstitutional registration

requirement of the MSSA and require that men—and only men—register with the SSS.

While "remand without vacatur" is authorized in "limited circumstances", *Cal. Cmties.*

*Against Toxics v. EPA*, 688 F.3d 989, 994 (9th Cir. 2012) this court should decline to do so.

Firstly, the agency errors are "serious", as they enact a sex discrimination regime on every

American between ages 18 and 26 that is explicitly prohibited by the constitution. U.S. Const.

amend. XXVIII §1 . Secondly, vacating the regulations will minimize administrative disruption

by allowing the SSS to speedily consider if it will "[extend] the burden of registration to women

or [strike] down the requirement for men". *Men v. Selective Service System* No. 13-56690, 2; *see*

*also Nat'l Family Farm Coal. v. E.P.A.*, 966 F.3d 893, 929 (9th Cir. 2020) (courts should

evaluate the "disruptive consequences" of vacatur and the seriousness of an agency error).

1
2       Remand without vacatur would also violate §3 of the 28th Amendment, which made clear

3   that the amendment would "take effect" two years after the date of ratification. This explicit

4   transition period reflects the considered judgment of the people about the time required to comply

5   with the 28th Amendment. This court should not superimpose an extended judicial deadline on the

6   express constitutional text.

7           **3.  Injunctive Relief**

8   A permanent injunction should be issued when a party satisfies the traditional multi-part test.

9   *eBay* 547 U.S. at 391. Each prong is present here.

10      *Irreparable Harm*. "It is well established that the deprivation of constitutional rights

11  unquestionably constitutes irreparable injury." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th

12  Cir. 2017) (internal quotation marks and citation omitted). It therefore follows "inexorably" that

13  plaintiffs success on the merits also demonstrates irreparable harm. *Id.* at 995.

14      *Adequate Remedy at Law*. There is no adequate remedy at law that would prevent official

15  defendants from unconstitutionally enforcing the MSSA against plaintiff. The APA only waives

16  sovereign immunity as to lawsuits for prospective injunctive and declaratory relief, and thus

17  there is no possibility of damages. 5 U.S.C. §702. Only the equitable remedy of an injunction

18  will adequately redress plaintiff's injuries.

19      *The public interest*. The Ninth Circuit has held that "it is always in the public interest to

20  prevent the violation of a party's constitutional rights." *Sammartano v. First Judicial District*

21  *Court*, 303 F.3d 959 (9th Cir.2002) (citing *V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23

22  F.3d 1071, 1079 (6th Cir.1994)). Although some out-of-circuit decisions suggest that truly

23  compelling national security needs can trump constitutional rights in the preliminary injunction

24  context[11], this is not such a case. Plaintiff seeks <u>permanent</u> injunctive relief *as applied* to himself.

25  *See* Complaint ¶46.  Even if a dormant draft system is essential to national security, there is no

26  compelling interest in enforcing criminal sanctions against plaintiff specifically. This is

27  particularly true given that the regulations are in flagrant violation of the 28th Amendment.

28

---

[11]  *E.g., Defense Distributed v. U.S. Dep't of State*, 838 F.3d 451, 458 (5th Cir. 2016) (Government's interest in preventing export of weapons designs outweighed first amendment interests)

Since all preconditions for injunctive relief are met, this court should issue an injunction against all defendants[12] prohibiting them from enforcing in any manner the SSS regulations, Proclamation 4771, and the MSSA against plaintiff to the extent that they require plaintiff to register while not requiring similarly situated women to register. This narrow injunction will preserve the ability of defendants to "level up" or "level down" the draft, while also preventing plaintiff from being injured by portions of the proclamation or the MSSA that cannot be vacated by the court.

## V.  Conclusion

For the forgoing reasons, plaintiff requests summary judgment in his favor on counts 1, 2, and 3 in his complaint. Plaintiff takes no position on whether the SSS should require women to register for the draft or abolish draft registration entirely. Plaintiff's only contention is that requiring men but not women to register violates his rights under the supreme law of the land.

The undersigned has endeavored to fully comply with the local rules and Federal Rules of Civil Procedure applicable to this motion and the attachments to this motion. To the extent that these rules have not been observed, Plaintiff requests that the court waive any violations as *de minimis*.

Date: September 15th, 2023          Sign Name: _____

Print Name: Vikram Valame

---

[12] Except the President of the United States himself. *See Franklin v. Massachusetts* 505 U.S. 788 at 802 (1992).