BRIAN M. BOYNTON
   Principal Deputy Assistant Attorney General
ALEXANDER K. HAAS
   Director, Federal Programs Branch
TERRY M. HENRY
   Assistant Branch Director
ANDREW E. CARMICHAEL
MICHAEL J. GERARDI
   Senior Trial Counsel
ANDREW J. RISING
   Civil Division, Federal Programs Branch
   U.S. Department of Justice
   1100 L St., N.W.
   Washington, D.C.  20005
   Telephone: (202) 616-0680
   E-mail: michael.j.gerardi@usdoj.gov

*Counsel for Defendants*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIKRAM VALAME,<br><br>　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>JOSEPH R. BIDEN, President of the United States, *et. al.*,<br><br>　　　　　　　　Defendants. | CASE NO.  5:23-cv-3018 NC<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; NOTICE OF CROSS-MOTION TO DISMISS PLAINTIFF'S COMPLAINT, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT; AND MEMORANDUM OF SUPPORTING POINTS AND AUTHORITIES**<br><br>Date:　　　　December 13, 2023<br>Time:　　　　11:00 AM<br>Courtroom 5, 4th floor |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF CONTENTS**

NOTICE OF CROSS MOTION ................................................................................................. vii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................ 2

I.    The Military Selective Service Act .............................................................................. 2

II.    The Equal Rights Amendment ..................................................................................... 4

      A.    Procedures for Amending the Constitution ............................................... 4

      B.    Proposal of the Equal Rights Amendment ................................................ 5

III.    This Litigation ........................................................................................................... 7

STANDARD OF REVIEW ................................................................................................. 8

ARGUMENT ..................................................................................................................... 8

I.    Plaintiff's ERA Claims Should Be Rejected .............................................................. 8

II.    Plaintiff's Motion Should Be Denied, And His APA Claims Should Be Dismissed ........ 12

III.    None Of Plaintiff's Proposed Remedies Is Appropriate .................................... 13

CONCLUSION ................................................................................................................. 16

1

## <u>TABLE OF AUTHORITIES</u>

2

**CASES**

3

*Ashcroft v. Iqbal*,

4

    556 U.S. 662 (2009)............................................................................................ 8

5

*Bell Atl. Corp. v. Twombly*,

6

    550 U.S. 544 (2007)............................................................................................ 8

7

*Califano v. Yamasaki*,

8

    442 U.S. 682 (1979)............................................................................................ 14

9

*Chiafalo v. Washington*,

    591 U.S. ---,140 S. Ct. 2316 (2020) ................................................................. 11

10

*Coleman v. Miller*,

11

    307 U.S. 433 (1939)..................................................................................... 10, 11

12

*Crowley v. Bannister*,

13

    734 F.3d 967 (9th Cir. 2013) ............................................................................. 2

14

*Daly-Murphy v. Winston*,

15

    837 F.2d 348 (9th Cir. 1987) ............................................................................. 2

16

*Dames & Moore v. Regan*,

17

    453 U.S. 654 (1981)............................................................................................ 11

18

*Dillon v. Gloss*,

19

    256 U.S. 368 (1921)...................................................................................... 9, 10

20

*Donovan v. Biden*,

    603 F. Supp. 3d 975 (E.D. Wash. 2022) ........................................................ 12

21

*Equal Means Equal v. Ferriero*,

22

    3 F.4th 24 (1st Cir. 2021)................................................................................... 7

23

*Ferguson v. Idaho Dep't of Corr.*,

24

    No. 4:20-CV-00003-DCN, 2020 WL 1016447 (D. Idaho Mar. 2, 2020) ................................. 9

25

*Franklin v. Massachusetts*,

26

    505 U.S. 788 (1992)............................................................................................ 12

27

*Idaho v. Freeman*,

28

    529 F. Supp. 1107 (D. Idaho 1981) ............................................................. 5, 10

*Illinois v. Ferriero*,
  60 F.4th 704 (D.C. Cir. 2023) .................................................................................. *passim*

*Kentucky v. Graham*,
  473 U.S. 159 (1985) .................................................................................................... 12

*Luke v. Abbott*,
  954 F. Supp. 202 (C.D. Cal. 1997) ............................................................................. 12

*Monell v. New York City Dep't of Soc. Servs.*,
  436 U.S. 658 (1978) .................................................................................................... 12

*Nat'l Coal. for Men v. Selective Service Sys.*,
  355 F. Supp. 3d 568 (S.D. Tex. 2019) .......................................................................... 3

*Nat'l Coal. for Men v. Selective Service Sys.*,
  No. H-16-3362, 2019 WL 1902693 (S.D. Tex. Apr. 29, 2019) ................................... 14

*Nat'l Coal. for Men v. Selective Serv. Sys.*,
  640 F. App'x 664 (9th Cir. 2016) ............................................................................... 15

*Nat'l Coal. For Men v. Selective Serv. Sys.*,
  969 F.3d 546 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 1815 (2021) .............................. 4, 13, 14

*Nat'l Org. for Women, Inc. v. Idaho*,
  455 U.S. 918 (1982) ...................................................................................................... 5

*Nat'l Org. for Women, Inc. v. Idaho*,
  459 U.S. 809 (1982) .................................................................................................. 6, 10

*Navarro v. Block*,
  250 F.3d 729 (9th Cir. 2001) ........................................................................................ 8

*Newdow v. Roberts*,
  603 F.3d 1002 (D.C. Cir. 2010) .................................................................................. 12

*Nunez-Reyes v. Holder*,
  646 F.3d 684 (9th Cir. 2011) ...................................................................................... 13

*Parks Sch. Of Bus., Inc. v. Symington*,
  51 F.3d 1480 (9th Cir. 1995) ........................................................................................ 8

*Rostker v. Goldberg*,
  448 U.S. 1306 (1980) .................................................................................................. 14

*Rostker v. Goldberg,*
   453 U.S. 57 (1981) .................................................................................................. 2, 13

*Soffer v. Costa Mesa,*
   798 F.2d 361 (9th Cir. 1986) ...................................................................................... 12

*Taylor v. El Centro College,*
   No. 3:21-CV-0999-D, 2022 WL 102611 (N.D. Tex. Jan. 10, 2022)....................................... 8, 9

*The Pocket Veto Case,*
   279 U.S. 655 (1929) ................................................................................................. 10

*United States v. Sprague,*
   282 U.S. 716 (1931) ................................................................................................... 4

*Virginia v. Ferriero,*
   525 F. Supp. 3d 36 (D.D.C. 2021),
   *aff'd sub nom., Illinois v. Ferriero,* 60 F.4th 704 (D.C. Cir. 2023) .................................. *passim*

*White v. Hart,*
   80 U.S. 646 (1871) ................................................................................................... 12

**STATUTES**

5 U.S.C. § 706............................................................................................................ 7

50 U.S.C. §§ 3801, *et seq*............................................................................................ 2

50 U.S.C. § 3802......................................................................................................... 2

50 U.S.C. § 3809......................................................................................................... 2

50 U.S.C. § 3811......................................................................................................... 2

California Bane Civil Rights Act,
   Cal. Civ. Code § 52.1 .................................................................................................. 7

National Defense Authorization Act for Fiscal Year 2017,
   Pub. L. No. 114-328, Stat. 2000 (2016)........................................................................... 3

**RULES**

Fed. R. Civ. P. 4.......................................................................................................... 2

Fed. R. Civ. P. 12................................................................................................... 2, 8, 13

1

Fed. R. Civ. P. 56 ...................................................................................................... 8

2

**U.S. CONSTIUTION**

3

4

U.S. Const. art. V ..................................................................................................... 4

5

U.S. Const. amend. XX ............................................................................................. 4

6

U.S. Const. amend. XXI ............................................................................................ 4

7

U.S. Const. amend. XXII ........................................................................................... 4

8

U.S. Const. amend. XVIII .......................................................................................... 4

9

10

**LEGISLATIVE MATERIALS**

11

H.R.J. Res. 208, 92d Cong., 86 Stat. 1523 (1972) .................................................... 5

12

H.R.J. Res. 638, 95th Cong., 92 Stat. 3795 (1978) ................................................... 5

13

H.R. 4350, 117th Cong. §513 .................................................................................... 6

14

15

Inspired to Serve, Executive Summary, The Final Report of the National Commission on
   Military, National, and Public Service (March 2020) ............................................. 3

16

17

S.J. Res. 1, Gen. Assemb., Reg. Sess. (Va. 2020) ................................................. 6, 9

18

S.J. Res. 1, 89th Cong., 79 Stat. 1327 (1965) .......................................................... 5

19

S.J. Res. 2, 54th Leg. (S.D. 1979) ............................................................................ 5

20

S.J. Res. Const. Amend. 0004, 100th Gen. Assemb. Reg. Sess. (Ill. 2018) ............... 6, 9

21

S.J. Res. 7, 92d Cong., 85 Stat. 825 (1971) .............................................................. 5

22

23

S.J. Res. 39, 86th Cong., 74 Stat. 1057 (1960) ......................................................... 5

24

S.J. Res. 29, 87th Cong., 76 Stat. 1259 (1962) ......................................................... 5

25

S. 2792, 117th Cong. §511 ........................................................................................ 3

26

S. 4543, 117th Cong. § 521 ....................................................................................... 3

27

28

Selective Service and Draft Registration,
   Cong. Rsch. Serv. Insight, (Updated January 12, 2023) ....................................... 3

Transcript of Hearing on Final Recommendations and Report of the National Commission on Military, National, and Public Service before the United States Senate Committee on Armed Services, 117th Cong., 1st Sess. (Mar. 11, 2021) .......................................................................... 3

U.S. House Armed Services Committee, Hearing On Recommendations of the National Commission on Military, National, and Public Service, 117th Cong., 1st Sess., YouTube (May 19, 2021) ......................................................... 3

**OTHER AUTHORITIES**

Ratification of the Equal Rights Amendment, 44 Op. O.L.C., slip op. 14 (2020) ................................................ 4

Ratification of the Equal Rights Amendment, 46 Op. O.L.C., slip op. 3 (2022) .................................................. 6

*Statement from President Joe Biden on Equal Rights Amendment Centennial*, The White House (Aug. 26, 2023) ...................................................................................... 1

Stephen E. Sachs, *New Light on the ERA?*, The Volokh Conspiracy (Sept. 13, 2023) ................................................. 11

1

## <u>NOTICE OF CROSS-MOTION</u>

2

      PLEASE TAKE NOTICE that Defendants Joseph R. Biden, Jr., in his official capacity as

3

President of the United States; The United States; Ismail Ramsey, in his official capacity as U.S.

4

Attorney for the Northern District of California; The Selective Service System; Joel C.

5

Spangenberg, in his official capacity as Acting Director of the Selective Service System; Craig

6

T. Brown, in his official capacity as Acting Deputy Director of the Selective Service System;

7

Steven L. Kett, in his official capacity as Region III Director, Selective Service System; and John

8

Arbogast, in his official capacity as Selective Service State California State Director, by and

9

through undersigned counsel, hereby move for an order dismissing Plaintiff Vikram Valame's

10

Complaint, ECF No. 1, for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules

11

of Civil Procedure ("Civil Rules").  In the alternative, Defendants request summary judgment on

12

these official capacity claims pursuant to Civil Rule 56.  Defendants' motion is based on this

13

notice and the accompanying Memorandum of Points and Authorities.[*]

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[*]Plaintiff, without conferring with Defendants, requested a motion hearing date of December 13, 2023.  Defendants take no position on whether the Court should hold a hearing on these motions, and believe the cross-motions can be resolved on the papers pursuant to Local Civil Rule 7-1(b).

1

2

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

3      Since the 1940s, the Military Selective Service Act ("MSSA") has required all male

4   citizens and residents of the United States to register with the Selective Service System as part of

5   the United States' policy for preparedness in the event of a military crisis.  Over the decades

6   Congress has considered on multiple occasions whether women should be registered for the

7   draft, but a bill modifying the MSSA to include women (or repealing the MSSA altogether) has

8   never become law.  Numerous legal challenges to the male-only draft registration requirement

9   have also been rejected by many courts, including the Supreme Court.

10      Plaintiff Vikram Valame has challenged the MSSA under the Fifth Amendment of the

11   Constitution, but he acknowledges that this claim is foreclosed by Supreme Court precedent,

12   Compl., ECF No. 1, at ¶¶ 66-67.  Plaintiff has also challenged the MSSA under the Equal Rights

13   Amendment ("ERA"), which Plaintiff refers to in his complaint as the "28th Amendment" to the

14   U.S. Constitution.  The Court should not take the unprecedented steps of holding that the ERA is

15   currently in effect and then relying on the ERA as a basis for declaring the MSSA

16   unconstitutional.  It is undisputed that the ERA was not ratified by three-fourths of the States

17   within either the time frame in the proposing clause of the original ERA resolution or within the

18   extended timeline enacted by Congress some years after the resolution was passed.  The

19   questions as to whether those time limits are legally effective, and whether states that previously

20   ratified can rescind their actions, are ones most appropriately taken up by Congress.  *See, e.g.,*

21   *Statement from President Joe Biden on Equal Rights Amendment Centennial*, The White House

22   (Aug. 26, 2023), https://www.whitehouse.gov/briefing-room/statements-

23   releases/2023/08/26/statement-from-president-joe-biden-on-equal-rights-amendment-centennial.

24   As explained below, Plaintiff has no precedent supporting his legal theory, and Plaintiff's claims

25   under the ERA should be rejected.  Accordingly, Plaintiff's motion for summary judgment

26   should be denied, and Defendants' motion to dismiss or, in the alternative, for summary

27

28

1  judgment, should be granted.[1]

2  **BACKGROUND**

3  **I.   The Military Selective Service Act**

4       The MSSA, 50 U.S.C. §§ 3801, *et seq.*, requires male citizens and residents of the United

5  States between the ages of 18 and 26, with certain exceptions, to register with a federal agency

6  known as the Selective Service System.  50 U.S.C. §§ 3802(a), 3809.  Men who fail to register or

7  otherwise comply with the MSSA and its implementing regulations may be subject to certain

8  penalties and denied federal benefits.  *Id.* §§ 3811(a), 3811(f).  The MSSA does not require

9  women to register.  *See* 50 U.S.C. § 3802(a).

10      In 1980, President Carter recommended to Congress that the MSSA be extended to

11  include a requirement to register women.  *See Rostker v. Goldberg*, 453 U.S. 57, 60

12  (1981).  Congress declined after "consider[ing] the question at great length" with "extensive

13  testimony and evidence."  *Id.* at 61, 72.  The Supreme Court rejected an equal protection

14  challenge to the MSSA's male-only draft registration requirement under the Fifth Amendment's

15  Due Process Clause the next year, relying on, among other things, the fact that women could not

16  assume combat roles in the military, as well as deference to Congress's considered judgment

17  about how to run the military.  *Id.* at 78-79.

18      Congress again considered male-only registration in the context of the 2017 National

19  Defense Authorization Act.  The Senate version of that bill would have required women to

20

21  _____

[1] This motion applies to the United States, the Selective Service System, and the individuals sued
22  in their official capacities.  Defendants Arbogast and Kett were also sued in their individual
    capacities for alleged actions taken to enforce the challenged aspects of the MSSA on tort
23  theories arising under federal and state law.  Plaintiff purports to have effected individual
    capacity service against Mr. Kett, ECF No. 34, but he has yet to do so against Mr. Arbogast, as
24  required by Fed. R. Civ. P. 4(e) and 4(i)(3).  *See Daly-Murphy v. Winston*, 837 F.2d 348, 355
    (9th Cir. 1987) ("the failure to perfect individual service is fatal to [a] *Bivens* action.").  In the
25  event service does not occur, the Court has the authority to dismiss the complaint as to the
    individual capacity defendants *sua sponte*, without prejudice, after providing notice to Plaintiff.
26  Fed. R. Civ. P. 4(m); *Crowley v. Bannister*, 734 F.3d 967, 975 (9th Cir. 2013).  For both Mr. Kett
    and Mr. Arbogast, a responsive pleading will be due sixty days from completion of individual
27  capacity service, as set forth in Civil Rule 12(a)(3).

28

register,  S. 2943, 114th Cong. § 591 (as passed by Senate, June 21, 2016), but the final law instead created a commission to study the military Selective Service process to determine, among other questions, whether the process was needed at all and, if so, whether to conduct it "regardless of sex."  National Defense Authorization Act for Fiscal Year 2017, Pub. L. No. 114-328, §§ 551, 555, 130 Stat. 2000, 2130, 2135 (2016).  In its final report, issued March 25, 2020, the Commission recommended that both men and women should be required to register with the Selective Service.  *See* Inspired to Serve, Executive Summary, The Final Report of the National Commission on Military, National, and Public Service (March 2020), *available at* https://docs.house.gov/meetings/AS/AS00/20210519/112680/HHRG-117-AS00-Wstate-HeckJ-20210519-SD001.pdf.  Congress has held hearings on the Commission's report,[2] and has considered proposals to amend or repeal the MSSA,[3] but has yet to change the MSSA's registration requirements.

In *National Coalition for Men v. Selective Service System*, 355 F. Supp. 3d 568 (S.D. Tex. 2019), the district court considered a challenge to the male-only registration requirement. The district court concluded that *Rostker* did not control the outcome of the case, because "[t]he dispositive fact in *Rostker*—that women were ineligible for combat—can no longer justify the [Selective Service Act]'s gender-based discrimination," because women can serve in combat.  *Id*. at 576.  The district court then entered a declaratory judgment that the all-male registration requirement violated the Constitution.  On appeal, the U.S. Court of Appeals for the Fifth Circuit reversed the district court.  The Fifth Circuit acknowledged that the facts underpinning *Rostker* had changed but held that it could not "ignore a decision from the Supreme Court unless directed

---

[2] *See* Transcript of Hearing on Final Recommendations and Report of the National Commission on Military, National, and Public Service before the United States Senate Committee on Armed Services, 117th Cong., 1st Sess. (Mar. 11, 2021), https://perma.cc/8UXP-JXCC; U.S. House Armed Services Committee, Hearing On Recommendations of the National Commission on Military, National, and Public Service, 117th Cong., 1st Sess., YouTube (May 19, 2021), https://www.youtube.com/watch?v=N90tvUb6Fow&t=4229s (no transcript available).

[3] *See* FY2023 NDAA (S. 4543, 117th Cong. § 521), FY2022 NDAA (H.R. 4350, 117th Cong. §513 and S. 2792, 117th Cong. §511); *see also* FY2023 NDAA: Selective Service and Draft Registration, Cong. Rsch. Serv. Insight, (Updated January 12, 2023), http://crsreports.congress.gov/product/pdf/IN/IN11973.

to do so by the Court itself." *Nat'l Coal. For Men v. Selective Serv. Sys.*, 969 F.3d 546, 548 (5th Cir. 2020) (citations omitted).  The Fifth Circuit then concluded that the plaintiffs' claims were foreclosed by *Rostker* and dismissed their case.  *Id.*  The Supreme Court denied certiorari. 141 S. Ct. 1815 (2021).  In a statement respecting the denial of certiorari, Justice Sotomayor, joined by Justice Breyer and Justice Kavanaugh, acknowledged that "the role of women in the military has changed dramatically since [*Rostker*]," but explained that denial was appropriate in light of Congress's consideration of the report of the National Commission on Military, National, and Public Service ("Commission") regarding the future of the Selective Service System.  *Id.*

## II.   The Equal Rights Amendment

### A.  Procedures for Amending the Constitution

Article V of the Constitution provides that Congress may propose new amendments "whenever two thirds of both Houses shall deem it necessary."  U.S. Const. art. V.  Article V further provides that an amendment "shall be valid to all Intents and Purposes, as Part of this Constitution, when ratified by the Legislatures of three fourths of the several States, or by Conventions in three fourths thereof, as the one or the other Mode of Ratification may be proposed by the Congress."  *Id.*  The choice as to "the mode of ratification[] lies in the sole discretion of Congress."  *United States v. Sprague*, 282 U.S. 716, 730 (1931).  In the exercise of that discretion, "Congress has specified the mode of ratification in the proposing clause included within every resolution proposing a constitutional amendment."  *Ratification of the Equal Rights Amendment*, 44 Op. O.L.C., slip op. 14 (2020), https://go.usa.gov/xtJ3J ("2020 OLC Opinion").  Thus, for every Constitutional amendment ever adopted, Congress has dictated the mode of ratification (*i.e.,* by state legislatures or state conventions) in the proposing clause rather than in the text of the amendment itself.  *See id.* at 14-15, 15 n.15 (collecting examples).

Although the early resolutions proposing amendments did not limit the time for ratification, *see, e.g.*, J. Res., 1st Cong.,1 Stat.  97 (1789), Congress included seven-year deadlines in the texts of what became the Eighteenth, Twentieth, Twenty-First, and Twenty-Second Amendments.  *See* U.S. Const. amends. XVIII, § 3; XX, § 6; XXI, § 3; XXII, § 2.  When proposing the Twenty-Third Amendment in 1960, Congress included the ratification deadline in

the proposing clause rather than in the text of the proposed amendment.  *See* S.J. Res. 39, 86th Cong., 74 Stat. 1057 (1960).  Since then, Congress has placed a deadline for ratification in the proposing clause of every constitutional amendment it has approved.  *See* S.J. Res. 29, 87th Cong., 76 Stat. 1259 (1962) (Twenty-Fourth Amendment); S.J. Res. 1, 89th Cong., 79 Stat. 1327 (1965) (Twenty-Fifth Amendment); S.J. Res. 7, 92d Cong., 85 Stat. 825 (1971) (Twenty-Sixth Amendment); H.R.J. Res. 208, 92d Cong., 86 Stat.  1523 (1972) (proposed ERA); H.R.J. Res. 554, 95th Cong., 92 Stat. 3795 (1978) (proposed D.C. Congressional Representation Amendment).

## B.  Proposal of the Equal Rights Amendment

On March 23, 1972, both Houses of Congress adopted (by two-thirds majority) a joint resolution to submit the ERA to the state legislatures.  86 Stat.  1523 (1972).  As it had done with respect to several prior proposed constitutional amendments, Congress imposed a seven-year deadline for ratification.  The proposing clause stated that the amendment would become "part of the Constitution when ratified by the legislatures of three-fourths of the several States within seven years from the date of its submission by the Congress."  *Id*.

Within nine months twenty-two states ratified the ERA.  *Illinois v. Ferriero*, 60 F.4th 704, 712 (D.C. Cir. 2023).  By 1977, thirty-five states had ratified the ERA, three states short of the thirty-eight needed to meet the threshold three-fourths of the fifty states as required by Article V.  *Id.*  However, between 1973 and 1978, four states—Nebraska, Tennessee, Idaho, and Kentucky—voted to rescind their ratifications of the ERA.  *Id.*  In 1979, South Dakota passed a resolution stating that its prior ratification expired after the seven-year deadline, unless three-fourths of the states ratified by that time.  *Id*.  (citing S.J. Res. 2, 54th Leg. (S.D. 1979)).

On October 20, 1978, Congress extended the deadline for ratification by an additional three years to June 30, 1982.  *See* H.R.J. Res. 638, 95th Cong. (1978).  Some states and individuals challenged this extension, arguing that Article V prohibited Congress from extending a ratification deadline.  *See Idaho v. Freeman*, 529 F. Supp. 1107, 1153-54 (D. Idaho 1981).  The district court in the case agreed.  *Id.*  The defendants in the case petitioned for certiorari, which the Supreme Court granted.  *Nat'l Org. for Women, Inc. v. Idaho*, 455 U.S. 918 (1982).  Before

1  the Supreme Court could hear the case, the extended deadline lapsed without the ERA meeting

2  the required three-fourths for ratification.  As a result, the Supreme Court vacated the judgment

3  of the district court and remanded with instructions to dismiss the case as moot.  *Nat'l Org. for*

4  *Women, Inc. v. Idaho*, 459 U.S. 809 (1982).

5      There was no further activity by the states until 2018, when Nevada became the thirty-

6  sixth state to vote to ratify the ERA.  *See* S.J. Res. 2, 79th Leg., Reg. Sess. (Nev. 2017).  Shortly

7  thereafter, Illinois and Virginia became the thirty-seventh and thirty-eighth states to vote to ratify

8  the proposed amendment.  *See* S.J. Res. Const. Amend. 0004, 100th Gen. Assemb. Reg. Sess.

9  (Ill. 2018); S.J. Res. 1, Gen. Assemb., Reg. Sess. (Va. 2020).  When Virginia became the thirty-

10  eighth state to vote to ratify the ERA, some states urged the Archivist of the United States to

11  certify and publish the amendment as part of the Constitution.  *See Ferriero*, 60 F.4th at 713.

12  Other states sued the Archivist in the Northern District of Alabama for injunctive and declaratory

13  relief to block any such certification and publication.  *See Alabama v. Ferriero*, No. 7:10-cv-

14  2032 (N.D. Ala. Dec. 16, 2019).  Facing these competing demands, the Archivist asked the U.S.

15  Department of Justice's Office of Legal Counsel ("OLC") to determine the legal status of the

16  ERA.  The OLC then issued a formal opinion stating that the ERA "failed to secure the necessary

17  ratifications within either of Congress's deadlines."  2020 OLC Opinion at 1.  OLC has

18  subsequently clarified that "the 2020 OLC Opinion is not an obstacle either to Congress's ability

19  to act with respect to ratification of the ERA or to judicial consideration of the pertinent

20  questions." Ratification of the Equal Rights Amendment, 46 Op. O.L.C., slip op. 3 (2022) ("2022

21  OLC Opinion")

22      In 2020, Illinois, Nevada, and Virginia sued the Archivist of the United States seeking to

23  compel the Archivist to certify and publish the ERA pursuant to Article V of the Constitution.

24  *Virginia v. Ferriero*, 525 F. Supp. 3d 36 (D.D.C. 2021), *aff'd sub nom.*, *Illinois v. Ferriero*, 60

25  F.4th 704 (D.C. Cir. 2023).  The district court dismissed the case for lack of jurisdiction.  *Id*.

26  The district court first held that the states lacked standing because they did not show that the

27  Archivist's failure to certify and publish the ERA caused "a concrete injury that could be

28  remedied by ordering him to act," and that his decision to certify and publish amendments "has

1   no legal effect." *Id*. at 45.  The U.S. Court of Appeals for the D.C. Circuit affirmed dismissal of

2   the suit.  The Court found that the plaintiff states were not entitled to mandamus relief because

3   they had not established that the Archivist had a clear duty to certify and publish the ERA or that

4   their right to relief was clear and indisputable, including because the states had not established

5   that Congress lacked the authority to impose a time limit on ratification of the ERA or to place

6   that time limit in the proposing clause of the ERA.  *Ferriero*, 60 F.4th at  716-19.[4]

### III.    This Litigation

8         Plaintiff Vikram Valame is a male between the ages of 18 and 25.  Compl. ¶ 1.  He is a

9   U.S. citizen.  *Id*.  Although he states that he is also a U.S. resident, his most recent motion

10  indicates he is residing in Germany while attending college.  *See* Pl.'s Mot. for Ext., ECF No. 31,

11  at ¶ 13.  Plaintiff does not allege that he has registered for Selective Service.  The complaint

12  argues that the MSSA's male-only draft requirement is contrary to the "Equal Rights

13  Amendment," which Plaintiff asserts was ratified as the 28th Amendment of the U.S.

14  Constitution on January 15, 2020 (corresponding to Virginia's ratification of the Amendment).

15  Compl. ¶¶ 20-35.  He asks this Court to declare the MSSA and its implementing regulations

16  unconstitutional pursuant to the ERA and to enjoin their application.  *Id*. ¶¶ 36-46.  Plaintiff

17  further seeks to have the court "set aside" regulations implementing the MSSA pursuant to the

18  APA, 5 U.S.C. § 706, and enjoin application of those regulations as they apply to him because he

19  claims those regulations are contrary to the ERA.  *Id*. ¶¶ 47-52.  Plaintiff also brings personal

20  capacity claims against Steven Kett, Region III Director, Selective Service System, and John

21  Arbogast, the Selective Service System State Director for California, alleging that they have

22  violated his "constitutional rights under the 28th Amendment" and the California Bane Civil

23  Rights Act, Cal. Civ. Code § 52.1.  *Id*. ¶ 59; *see also id*. ¶¶ 53-65.  Lastly, Plaintiff realleges each

24  of these claims under the Due Process Clause of the Fifth Amendment, but concedes that these

25  claims are foreclosed by binding Supreme Court precedent.  *Id*. ¶¶ 66-67.  (As explained in

---

[4] A similar lawsuit was brought in in the District of Massachusetts by individual and organizational Plaintiffs.  The district court dismissed the case for lack of standing, and the U.S. Court of Appeals for the First Circuit affirmed.  *Equal Means Equal v. Ferriero*, 3 F.4th 24 (1st Cir. 2021).

footnote 1, *supra*, this opposition and cross-motion does not address the personal capacity claims against Mr. Kett and Mr. Arbogast.)

## STANDARD OF REVIEW

Plaintiff moves for summary judgment pursuant to Civil Rule 56.  Summary judgment is proper if a movant "shows that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  As explained below, Plaintiff is not entitled to judgment as a matter of law on his claims against MSSA, and the Court should therefore deny his motion for summary judgment.

Defendants' motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of claims alleged in the complaint.  *Parks Sch. Of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  Dismissal is proper "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although the Court should accept all allegations in the complaint as true, legal conclusions couched as factual allegations are insufficient to survive a motion to dismiss.  *Twombly*, 550 U.S. at 555.  Alternatively, because the material facts in this case are not disputed, the Court may treat the Federal Government's motion as one for summary judgment.

## ARGUMENT

### I.  Plaintiff's ERA Claims Should Be Rejected

In the main, Plaintiff argues that the MSSA's male-only draft requirement is contrary to the ERA, which he claims was ratified as the 28th Amendment to the Constitution on January 15, 2020.  Compl. ¶¶ 20-35; Pl.'s Mot. for Summ. J., ECF No. 30, 7–17 ("Pl's MSJ").  No precedent supports Plaintiff's claim, a number of decisions in other jurisdictions are to the contrary, and Congress has not otherwise taken up the question of whether the ERA is part of the Constitution.  Numerous courts have held that the ERA does not yet provide the basis for a federal claim.  In *Taylor v. El Centro College*, for example, the district court considered a college graduate's claim

that his school had violated, *inter alia*, the ERA by denying him access to the library "based on his race and gender." No. 3:21-CV-0999-D, 2022 WL 102611, at *1 (N.D. Tex. Jan. 10, 2022). The court summarily rejected this argument, holding that "[plaintiff]'s claim under the Equal Rights Amendment fails because there is no such amendment to the United States Constitution." *Id*. at *8. *See also Ferguson v. Idaho Dep't of Corr.*, No. 4:20-CV-00003-DCN, 2020 WL 1016447, at *1 n.1 (D. Idaho Mar. 2, 2020) (holding that the Equal Rights Amendment is not part of the United States Constitution); *Ferriero*, 60 F.4th at 716-19 (Archivist did not have clear duty to certify and publish the ERA because the deadline for ratification imposed by Congress was properly imposed in the proposing clause for the Amendment, and the deadline had lapsed). Here, too, Plaintiff's claims should be dismissed—the ERA was not ratified by three-fourths of the states prior to the expiration of its ratification deadline, even as extended, and Congress has not taken up the question of whether the ERA was properly ratified.

Congress has twice set deadlines for ratification of the ERA: first when it originally proposed the amendment to the states, and again in a subsequent joint resolution. *See supra* at 5. But of the 38 ratification actions that Plaintiff relies on to support his entitlement to relief, Compl. ¶ 27, three were taken after both deadlines set by Congress had passed. *See* S.J. Res. 2, 79th Leg., Reg. Sess. (Nev. 2017); S.J. Res. Const. Amend. 0004, 100th Gen. Assemb. Reg. Sess. (Ill. 2018); S.J. Res. 1, Gen. Assemb., Reg. Sess. (Va. 2020). "To prevail, then, Plaintiff[] must show: (1) that th[ose] three ratifications count; and (2) that the rescissions of five other states do not." *Ferriero*, 525 F. Supp. 3d at 55. Plaintiff can cite no precedent supporting resolution of these issues in his favor, however; indeed, cases have concluded to the contrary. Congress can decide to take up the question of the timeliness and sufficiency of the ERA's ratification, but it has not yet weighed in.

As an initial matter, the Supreme Court long ago recognized "the power of Congress . . . to fix a definite period for the ratification" of proposed amendments, *Dillon v. Gloss*, 256 U.S. 368, 375-76 (1921), and it is indisputable that Nevada, Illinois, and Virginia (the thirty-sixth, thirty-seventh, and thirty-eighth states) only ratified the ERA after the expiration of Congress' deadline. *See id*. at 376 (finding "no doubt" as to Congress's power to set such a time limit "as

an incident of its power to designate the mode of ratification"); *see also Coleman v. Miller*, 307 U.S. 433, 452 (1939);  *Ferriero*, 60 F.4th at 716-19 (citing *Dillon* and *Coleman*).

The Supreme Court's 1982 decision that the controversy regarding Congress's extension of the ERA's deadline became moot when the extended deadline expired provides further evidence of the validity of the ERA's ratification deadline.  *See supra* at 5–6.  After the district court held that Congress lacked the power to extend the initial deadline set in the proposing clause, *Freeman*, 529 F. Supp. at 1153, the federal government and others sought immediate review in the Supreme Court.  The Court granted certiorari before judgment, but the June 1982 deadline expired before the case could be argued.  The Solicitor General urged the Court to dismiss the case as moot because "the Amendment has failed of adoption no matter what the resolution of the legal issues presented."  Mem. for the Adm'r of Gen. Servs. Suggesting Mootness at 3, *Nat'l Org. for Women, Inc. v. Idaho*, Nos. 81-1282 *et al*. (July 9, 1982).   Citing that filing, the Court vacated the lower court's decision and remanded with instructions "to dismiss the complaints as moot."  *Nat'l Org. for Women*, 459 U.S. at 809.  As the district court in *Virginia v. Ferriero* recognized, "[i]f the deadline was ineffective, a live controversy would have remained because additional states' ratifications could have still pushed the ERA past the three-fourths threshold."  525 F. Supp. 3d at 59.

Plaintiff argues that the ERA's deadline "is invalid," asserting that the text, structure, and context of Article V, as well as the absence of time limits in early amendments to the Constitution, demonstrate that "no other requirements apply to the proposal of amendments" outside those in the Constitution, including time limits.  *See* Pl.'s MSJ at 7–12.  Alternatively, Plaintiff argues that to the extent time limits are permissible, Congress did not properly exert its authority to impose one with respect to the ERA.  *Id.*  But Plaintiff's theory would require the Court to ignore every judicial decision that has considered the validity of ratification time limits, as explained above.  Nor can his theory be squared with Congress's actions, as Congress has proposed a time limit for every constitutional amendment over the last 100 years, and has placed deadlines for ratification in the proposing clause of amendments for the past sixty years, just as it did for the ERA.  *See supra* at 4–5; *The Pocket Veto Case*, 279 U.S. 655, 689 (1929) ("Long

settled and established practice is a consideration of great weight in a proper interpretation of constitutional provisions of this character."), *quoted in Chiafalo v. Washington*, 591 U.S. ---,140 S. Ct. 2316, 2326 (2020); *see also Dames & Moore v. Regan*, 453 U.S. 654, 684 (1981) (relying on historical practice of less than 40 years).  Indeed, recent scholarship Plaintiff cites in his brief demonstrates that Congress has a history of providing legally binding guidance in the text of the resolutions proposing constitutional amendments, dating back to the Twelfth Amendment. *See* Stephen E. Sachs, *New Light on the ERA?*, The Volokh Conspiracy (Sept. 13, 2023), https://reason.com/volokh/2023/09/13/new-light-on-the-era/.

Plaintiff disputes the relevance of the modern practice of imposing time limits on ratification of amendments but does not identify any historical or contemporary evidence that would show such limits are actually prohibited by the Constitution.  The fact that early amendments *did not* include time limits does not imply that anyone believed such limits *could not* be applied, and nothing in the text or structure of Article V suggests otherwise.  Accordingly, because "Congress set deadlines for ratifying the ERA that expired long ago," the final three ratifications alleged by Plaintiff "came too late to count" for purposes of ratification.  *Ferriero*, 525 F. Supp. 3d at 40.

Moreover, in order to find that the ERA has been ratified by the required number of states, this Court would also need to find invalid the actions several states have taken over the years to rescind their prior ratifications.[5]  *See supra* at 5–6.  Plaintiff's brief argues that states cannot rescind ratifications, and that not all questions related to the Article V process are non-justiciable.  Pl.'s MSJ 12–16.  But a majority of the Supreme Court concluded in *Coleman* that, "in accordance with th[e] historic precedent" of the Fourteenth Amendment's ratification process, "the question of the efficacy of ratifications by state legislatures, in the light of previous rejection or attempted withdrawal, should be regarded as a political question pertaining to the political departments."  *Coleman*, 307 U.S. at 450; *id.* at 458 (Black, J., concurring) (expressing view of four justices that "Congress has sole and complete control over the amending process,

---

[5] It was not necessary for the court to reach the rescission issue in *Virginia v. Ferriero* because of its resolution of the time-limit issue.  525 F. Supp. 3d at 46.

subject to no judicial review," including question of "whether a State may reverse its action once taken upon a proposed amendment"); *see also White v. Hart*, 80 U.S. 646, 649 (1871) (A state's "den[ial] [of] the validity of her ratification of [a] constitutional amendment[]" presents a case that is "clearly one in which the judicial is bound to follow the action of the political department of the government, and is concluded by it.").

As the President has recently urged, congressional engagement remains an appropriate course for addressing the timeliness and sufficiency of the ERA's ratification. The D.C. Circuit essentially recognized as much in its recent decision holding that the Archivist of the United States does not have clear duty to certify and publish the ERA where the deadline for ratification imposed by Congress had lapsed. *Ferriero*, 60 F.4th at 716-19. Accordingly, Plaintiff's references to the ERA fail to state a claim.

## II.   Plaintiff's Motion Should Be Denied, And His APA Claims Should Be Dismissed

Claims 1, 2, and 3 of Plaintiff's complaint all raise causes of action under the APA.[6] Claim 1 seeks a declaratory judgment "finding enforcement of the MSSA against Plaintiff unlawful under the 28th Amendment to the Constitution of the United States." Compl. ¶¶ 36–39.

---

[6] In addition to naming Selective Service and its Director as defendants, Plaintiff has named as defendants President Biden, the U.S. Attorney for this judicial district, and several other officers of the Selective Service System who are subordinate to the Director. Even if Plaintiff had viable APA claims (which, as explained herein, he does not), complete relief on those claims could be accorded to Plaintiff by Selective Service and its Director. "Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). Thus, "when both an officer and the [] government entity are named in a lawsuit and the officer is named in official capacity only, the officer is a redundant defendant and may be dismissed." *Luke v. Abbott*, 954 F. Supp. 202, 203 (C.D. Cal. 1997) (citing *Monell*, 436 U.S. at 690, n.55); *see also Soffer v. Costa Mesa*, 798 F.2d 361, 363 (9th Cir. 1986).

For additional reasons the President should also be dismissed. Plaintiff recognizes that *Franklin v. Massachusetts*, 505 U.S. 788, 800 (1992), precludes injunctive relief against the President, *see* Compl. at Prayer for Relief ¶ B, but it also precludes his claims of declaratory relief against the President. *See Newdow v. Roberts*, 603 F.3d 1002, 1013 (D.C. Cir. 2010). Similarly, his APA claims cannot be brought against the President because the President "is not subject to the requirements of the Administrative Procedure Act." *Donovan v. Biden*, 603 F. Supp. 3d 975, 983 (E.D. Wash. 2022), *aff'd part, dismissing appeal in part & remanding sub nom.*, *Donovan v. Vance*, 70 F.4th 1167 (9th Cir. 2023).

Claim 2 seeks "an injunction against official and agency defendants . . . prohibiting enforcement of the male-only draft registration policy as applied to Plaintiff." Compl. ¶¶ 40–46. Claim 3 seeks vacatur of the MSSA's implementing regulations issued in July of 1980 which define the persons required to register with Selective Service. Compl. ¶¶ 47–52. The gravamen of all three claims is that Defendants are "violat[ing] Plaintiff's rights under the 28th Amendment to the constitution of the United States." Compl. ¶ 38. As explained above, Plaintiff's references to the ERA fail to establish that he is entitled to judgment as a matter of law on his various challenges to the MSSA, and as such, his motion for summary judgment should be denied as to these claims. Moreover, because Plaintiff has failed to state a claim upon which relief can be granted in federal court, these claims in his complaint must be dismissed pursuant to Civil Rule 12(b)(6).

Plaintiff's purported "Fifth Amendment Analogues" to his 28th Amendment claims fare no better, as he expressly concedes. *See* Compl. ¶ 66 ("realleg[ing] claims 1-5 substituting references to the 5th Amendment for references to the 28th Amendment.") In *Rostker v. Goldberg*, 453 U.S. 57 (1981), the Supreme Court upheld the constitutionality of the MSSA against claims that it violates the Fifth Amendment. *See supra* 2–4; *see also Nat'l Coal. for Men*, 969 F.3d at 548. Plaintiff acknowledges that these claims are "foreclosed by binding precedent under *Rostker*." Compl. ¶ 67 (emphasis added); Pl.'s MSJ at 2 n.1. Accordingly, the Court should deny Plaintiff's motion for summary judgment as to these claims, and it should dismiss claims 6, 7, and 8 pursuant to Civil Rule 12(b)(6).[7] *See, e.g.*, *Nunez-Reyes v. Holder*, 646 F.3d 684, 692 (9th Cir. 2011) ("we are bound to follow a controlling Supreme Court precedent until it is explicitly overruled by that Court.").

## III.   None Of Plaintiff's Proposed Remedies Is Appropriate

Plaintiff proposes a variety of potential remedies as redress for his claims. Pl.'s MSJ at 19–21. Because he has not established an entitlement to any relief, the Court need not reach these issues. Nonetheless, a few responses to Plaintiff's remedial arguments are warranted.

Any relief entered with respect to Selective Service must take pains to avoid interference

---

[7] Alternatively, a grant of summary judgment in Defendants' favor on claims 1, 2, 3, 6, 7, and 8 pursuant to Civil Rule 56 would also be appropriate.

1   with Congress's prerogatives to set policy in this area.  Even judges who have been sympathetic

2   to critiques of the MSSA's constitutionality have recognized this reality.  For instance, in the

3   *Rostker* litigation, Justice Brennan ordered a stay of a district court order enjoining draft

4   registration, even though he eventually dissented from the Supreme Court's decision to uphold

5   the male-only registration requirement. *Rostker v. Goldberg*, 448 U.S. 1306, 1310 (1980)

6   (Brennan, J., in chambers).  More recently, in *National Coalition for Men v. Selective Service*

7   *System*, No. H-16-3362, 2019 WL 1902693 (S.D. Tex. Apr. 29, 2019), the district court declined

8   to issue an injunction to plaintiffs despite concluding that the draft was unconstitutional and

9   entering a declaratory judgment to that effect.  (That declaratory judgment was later reversed by

10  the Fifth Circuit, *see Nat'l Coal. for Men*, 969 F.3d at 548.)  The district court concluded, after

11  considering the four traditional injunction factors, that "judicial deference requires the court to

12  deny injunctive relief despite the ongoing constitutional violations" because of the draft's

13  "significant foreign policy, as well as national security, implications," which "[t]he legislative

14  branch is best equipped—and constitutionally empowered—to reform . . . in light of these

15  important policy considerations."  *Nat'l Coal. for Men*, 2019 WL 1902693 at *2.

16      This Court should take a similarly cautious approach to remedies in this case should it

17  deem any relief to be appropriate.  Any remedy entered must not be "more burdensome [to the

18  defendant] than necessary to redress" Plaintiff's injury.  *Califano v. Yamasaki*, 442 U.S. 682, 702

19  (1979). [8]  A declaratory judgment or injunction giving relief to Plaintiff alone from the potential

20  sanctions associated with failure to register for the draft would fully redress his purported

21  injuries without a significant intrusion on Congress's prerogatives.  By contrast, a vacatur of

22  Selective Service's implementing regulations, or a nationwide injunction requiring Defendants to

23  either register all women between the ages of 18 and 25 or suspend registration entirely, would

24  go far beyond what is necessary to provide relief to Plaintiff and seize the prerogative for

25  changing draft registration from the politically accountable branches of government.

26

27  ---

28  [8] Defendants understand Plaintiff to be requesting relief against the MSSA only as it applies to Plaintiff, and not on behalf of anyone else.  Compl., Prayer for Relief, at A (requesting Court to declare the MSSA unconstitutional "insofar as they apply to Plaintiff"); *id.* at B (same as to injunctive relief); *id.* at C (same as to vacatur of implementing regulations).

1    Plaintiff suggests that vacatur of Selective Service's regulations would "allow[]

2  [Selective Service] to speedily consider if it will '[extend] the burden of registration to women or

3  [strike] down the requirement for men.'"  Pl.'s MSJ at 18 (quoting *Nat'l Coal. for Men v.*

4  *Selective Serv. Sys.*, 640 F. App'x 664, 666 (9th Cir. 2016).  But Defendants currently lack the

5  authority to make such a policy determination.  If Selective Service's implementing regulations

6  are vacated on the basis that the MSSA is unconstitutional, the agency will not be able to resume

7  registration until Congress provides instructions for doing so.  Vacatur, therefore, is effectively a

8  decision to "strike down the requirement for men" with immediate effect that would intrude on

9  Congress's Article I authority.  *Id.* (quotation omitted).

10    Of course, the Court need not answer thorny remedial questions to resolve this case.  As

11  explained above, Plaintiff's claims lack merit.  Accordingly, no form of relief is appropriate, and

12  dismissal of the complaint (or summary judgment in Defendants' favor) as to the official

13  capacity claims is appropriate at this time.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **CONCLUSION**

2        For the foregoing reasons, the Court should deny Plaintiff's motion for summary

3   judgment, grant Defendants' motion, and either dismiss the complaint as to all Defendants,

4   except as to Kett and Arbogast in their individual capacities, or enter judgment in favor of

5   Defendants on the official capacity claims.

6   Dated: September 29, 2023                    Respectfully submitted,

7                                                BRIAN M. BOYNTON
8                                                Principal Deputy Assistant Attorney General

9                                                ALEXANDER K. HAAS
10                                               Director, Federal Programs Branch

11                                               TERRY M. HENRY
12                                               Assistant Branch Director

13                                               */s/Michael J. Gerardi*
                                                 MICHAEL J. GERARDI
14                                               ANDREW E. CARMICHAEL
15                                                  Senior Trial Counsel
                                                 ANDREW J. RISING
16                                                  Trial Attorney
                                                 Civil Division, Federal Programs Branch
17                                               U.S. Department of Justice
                                                 1100 L St., N.W.
18                                               Washington, D.C.  20005
                                                 Telephone: (202) 616-0680
19                                               E-mail: michael.j.gerardi@usdoj.gov

20                                               *Counsel for Defendants*

21

22

23

24

25

26

27

28