1   Vikram Valame

2   4039 2nd Street Palo Alto, California 94306

3   208-994-3067

4   vik.valame@gmail.com

5   Pro Se *Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

|  |  |
|---|---|
| Vikram Valame | ) Case Number: 5:23-cv-03018-NC |
| Plaintiff, | ) |
| vs. | ) **PLAINTIFF'S OPPOSITION TO** |
| | ) **DEFENDANTS' JOINT MOTION TO** |
| Joseph Robinette Biden, President of the United States, et al., | ) **DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF PLAINTIFF'S** |
| | ) **MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | ) Date: December 13, 2023 |
| | ) Time: 1:00 p.m. |
| | ) Place: Courtroom 5, 4th floor |
| | ) |
| | ) Hon. Nathanael Cousins |
| | ) |
| | ) |
| | ) |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

I.   Introduction ..................................................................... 1

II.   The Deadline ................................................................... 1

A.   Standard of Review ............................................................. 1

1.   The Necessary and Proper Clause Cannot Support the Deadline ..................... 1

2.   The Court Should Narrowly Construe Self-Executing Incidental Powers ............. 3

3.   The Government's Cannot Shift the Burden of Persuasion to Plaintiff ............. 4

B.   Dillon Is Inapplicable ......................................................... 5

1.   The Deadline in Dillon Was Ratified by the States ............................... 6

2.   *Dillon*'s Discussion of Congressional Deadlines was dicta. ..................... 7

3.   Alternatively, *Dillon*'s rationale was overruled by the 27th Amendment ......... 8

4.   §3 of the 28th Amendment Proves the Prefatory Deadline Is Non-Binding ........... 10

C.   The Cases Cited by Defendants are Neither Persuasive nor Binding ............... 10

D.   The Deadline is Invalid ....................................................... 12

1.   Text ......................................................................... 12

2.   History ...................................................................... 15

III.   The Recissions are not Political Questions ................................... 17

IV.   Scope of Relief ............................................................... 19

V.   Miscellaneous ................................................................. 20

VI.   Conclusion .................................................................... 21

# TABLE OF AUTHORITIES

### CASES

257 U.S. 619 (1921) ............................................................................................................ 14

505 U.S. 214, 221 (1992) .................................................................................................... 11

*Alliance for Hippocratic Medicine v. FDA*, Case No. 23-10362 (5th Cir. 2023) ................. 20

*Am. Fed'n of Gov't Emps. Nat'l Council, 118-ICE v. Fed. Labor Relations Auth.*, 926 F.3d 814, 819 n.3 (D.C. Cir. 2019) ................................................................................................................................. 11

*Baker v. Carr,* 369 U.S. 186 (1962) .................................................................................... 18

*Breedlove v. Suttles*, 302 U.S. 277 (1937) ............................................................................ 9

*Chambers v. Nasco, Inc.*, 501 U.S. 32, 43 (1991) ................................................................. 3

*Chiafalo v. Washington*, 140 S. Ct. 2316, 2326 (2020) ...................................................... 12

*Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821) ................................................... 17

*Colautti v. Franklin*, 439 U.S. 379, 392-93 n. 10, (1979) .................................................. 13

*Coleman v. Miller*, 307 U.S. 433, 452 (1939) ............................................................... 8, 17

*Dames & Moore v. Regan*, 453 U.S. 654, 684 (1981) ........................................................ 16

*Dillon v. Gloss* 256 U.S. 368 (1921) ............................................................................. passim

*District of Columbia et al. v. Heller*, 554 U.S. 570, 635 (2008) ........................................ 20

*Dyer v. Blair*, 390 F. Supp. 1291 at 1302 (N.D. Ill. 1975) ............................................... 17

*E. J. v. United States*, Case No. 13-cv-01923-NC, 7 n.2 (N.D. Cal. Nov. 14, 2013) ........... 5

*Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1140 (2018) ................................... 12

*Gray v. Johnson,* 234 F. Supp. 743, (S.D. Miss. 1964) ........................................................ 9

*Hollingsworth v. Virginia*, 3 U.S. (3 Dall.) 378 (1798) ........................................................ 2

*Illinois v. Ferriero* 60 F.4th 704 (D.C. Cir. 2023) ......................................................... 3, 10

*INS v. Chadha*, 462 U.S. 919, 952 (1983) ........................................................................... 2

*Japan Whaling Ass'n v. Am. Cetacean Soc.*, 478 U.S. 221, 230 (1986) ............................. 17

*Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972) .............................................................. 16

*Marbury v. Madison*, 5 U.S. 137, 178 (1803) .............................................................. 1, 14

*Marsh v. Chambers*, 463 U. S. 783, 790 (1983) ................................................................ 12

*McCulloch v. Maryland*, 4 Wheat. 316, 411, 4 L.Ed. 579 (1819)...................2, 5, 13

*McGrain v. Daugherty*, 273 U.S. 135, 174-75 (1927) .................................................3

*Medellín v. Texas*, 552 U.S. 491, 532 (2008) ..............................................................4

*Mont. v. Haaland*, 29 F.4th 1158 (9th Cir. 2022) .....................................................20

*Nat'l Org. for Women, Inc. v. Idaho*, 455 U.S. 918 (1982) .......................................11

*Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 559 (2012) ..............................2

*Nat'l Labor Relations Bd. v. Canning*, 573 U.S. 513, 537 (2014) ...............................5

*New York State Rifle & Pistol Assn., Inc. v. Bruen* 597 U. S. ____ (2022) (slip op., at 61, n31) ...............................16

No. 3:21-CV-0999-D, 2022 WL 102611, at *1 (N.D. Tex. Jan. 10, 2022)....................10

No. 4:20-CV-00003-DCN, 2020 WL 61016447, at *1 n.1 (D. Idaho Mar. 2, 2020)........10

Orr v. Orr (1979) 440 U.S. 268...................................................................................21

*Pearson v. Callahan*, 555 U.S. 223, 242-43 (2009)....................................................11

*Printz v. United States*, 521 U.S. 898, 923 (1997).................................................1, 5

*Raines v. Byrd*, 521 U.S. 811 (1997) .......................................................................18

*Rizzo v. Goode*, 423 U.S. 362, 372 (1976) ...............................................................11

*Rostker v. Goldberg*, 448 U.S. 1306, 1310 (1980) (Brennan, J., in chambers) .........19

*Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) .......................................................13

*Torcaso v. Watkins,* 367 U.S. 488, 492 n.6 (1961) ..................................................15

*Trump v. Mazars U.S., LLP*, 140 S. Ct. 2019, 2035 (2020).......................................4

*Trump v. Thompson* 595 U. S. ____ (2022)...............................................................7

*Tyler v. Hennepin County,* Case No. 21-166 (2023 ..................................................15

*United States ex rel. Polansky v. Executive Health Resources, Inc.* 599 U.S. 419, 450 ..........12

*United States ex rel. Widenmann v. Colby*, 265 F. 998, 999-1000 (D.C.Cir. 1920) ......14

*United States v. Hudson*, 7 Cranch 32, 34 (1812) .......................................................3

*United States v. Morrison*, 529 U. S. 598, 607 (2000).................................................1

*United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950) ............................................11

*United States v. Sprague*, 282 U.S. 716 (1931) ......................................................6, 8

*United States v. Woods,* 571 U.S. 31 (2013)..............................................................13

*Virginia v. Ferriero*, 525 F. Supp. 3d 36, 57 (D.D.C. 2021) .......................................8

*Valame v. Biden*, Case No. 5:23-cv-03018
Plaintiff's Combined Response and Reply
iii

*Webster v. Reproductive Health Servs.*, 492 U.S. 490 (1989) ................................................13

*White v. Hart,* 80 U.S. 646, 649 (1871) ......................................................................................18

*Youngstown Co. v. Sawyer, 343 U.S. 579, 637-38* (1952) ..........................................................4

*Zivotofsky ex rel. Zivotofsky v. Clinton* (Zivotofsky I), 566 U.S. 189, 194–95 (2012)...........17, 18


STATUTES

1 Stat. 97 (1789) ...........................................................................................................................9

1 U.S.C. §106(b) ..........................................................................................................................2

50 U.S.C. §3802(a) .....................................................................................................................21

65 Stat. 710; 97 Cong. Rec. 13784, 1951 ....................................................................................3

92 Stat. 3799 .................................................................................................................................3

Act of April 20, 1818, ch. 80, § 2, 3 Stat. 439 ............................................................................3

H.R.J. Res. 208, 92d Cong., 86 Stat.  1523 (1972)....................................................................15

H.R.J. Res. 554, 95th Cong., 92 Stat. 3795 (1978)....................................................................16


OTHER AUTHORITIES

44 Op. O.L.C. (slip op., at 22) (Jan. 6, 2020) ...........................................................................15

Arnauld, Antoine and Pierre Nicole, *Logic or the Art of Thinking* (1662), translated by Thomas Spencer Banes,
     Edinburgh: Simpkin, Marshall And Co, 1850.........................................................................14

*Consumer Financial Protection Bureau v. Community Financial Services Association.* Case No. 22-448 Tr. Of Oral
     Argument 37:04-38:06.............................................................................................................4

*Illinois v. Ferriero* Case No. 21-5096, Tr. of Oral Argument at 47:51-48:20 ..........................19

Jimmy Carter, U.S. President, Speech at a Ceremony Commemorating the Extension of the Ratification Deadline of
     the Equal Rights Amendment: Remarks on ...........................................................................3

Jonathan S. Masur and Lisa Larrimore Ouellette, Deference Mistakes, 82 U. Chi. L. Rev. 643, 645 (2015) ............11

SAMUEL JOHNSON, A DICTIONARY OF THE ENGLISH LANGUAGE (London, J.F. & C. Rivington et al.,
     10th ed. 1792) ........................................................................................................................13

Stephen E. Sachs, *New Light on the ERA?*, The Volokh Conspiracy (Sept. 13, 2023)................16

United States Senate, *Constitution of the United States* .............................................................15

<u>RULES</u>

F.R.C.P. 65(d)(2) ..................................................................................................................21

<u>TREATISES</u>

B. Garner et al., The Law of Judicial Precedent 44 (2016) .................................................7

<u>CONSTITUTIONAL PROVISIONS</u>

., U.S. Const. pmbl ..............................................................................................................7

H.J. Res 184, 68th Cong. (1924)........................................................................................15

U.S. Const. Amend. XVIII ...................................................................................................6

U.S. Const. Amend. XVIII §1 .............................................................................................10

U.S. Const. Amend. XVIII-XXII..........................................................................................15

U.S. Const. Amend. XX §5 .................................................................................................10

U.S. Const. Amend. XXIII-XVI...........................................................................................15

U.S. Const. Amend. XXVIII §3.......................................................................................10, 15

U.S. Const. Art. I §8 cl. 18 ...................................................................................................2

U.S. Const. Art. V............................................................................................................6, 14

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      Introduction

The United States appears to concede that Plaintiff has Article III standing, and that—if the 28th Amendment was properly ratified—the MSSA's registration requirement is unconstitutional. Defendants' Motion to Dismiss, ECF No. 38, 22 ("Defendants' MTD"). The only questions remaining in this case are therefore (1) whether the deadline contained in the prefatory text of the congressional resolution proposing the 28th amendment is valid (2) whether the validity of state recissions of the 28th amendment is a political question reserved for Congress alone and (3) whether states are empowered to rescind ratifications of constitutional amendments. The answer is the same for all three: "no". This court should deny defendants' motion to dismiss and grant Plaintiff's motion for summary judgment.

### II.      The Deadline

#### A.   Standard of Review

Every exercise of power by the federal government "must be based on one or more of its powers enumerated in the Constitution." *United States v. Morrison*, 529 U. S. 598, 607 (2000). An action by any federal actor unauthorized by the text of the constitution "is entirely void" *Marbury v. Madison*, 5 U.S. 137, 178 (1803). There is no provision in the constitution which expressly authorizes two-thirds of both Houses to include a deadline as a condition on ratification. The United States therefore relies on a power "incident" to the expressly granted powers to propose an amendment and set a mode of ratification. Defendants' MTD at 17-18. The court should be hesitant to recognize such a power.

#### 1.   The Necessary and Proper Clause Cannot Support the Deadline

This case presents a choice between two standards of review. First is the comparatively generous test arising under "the last, best hope of those who defend ultra vires congressional action, the Necessary and Proper Clause" *Printz v. United States*, 521 U.S. 898, 923 (1997). That

Clause gives Congress authority to "legislate on that vast mass of incidental powers which must be involved in the constitution" *McCulloch v. Maryland*, 4 Wheat. 316, 411, 4 L.Ed. 579 (1819). Courts "have been very deferential to Congress's determination" that a given policy is "necessary" to implement an enumerated power. *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 559 (2012). At the same time, laws that "that undermine the structure of government established by the Constitution" are not "proper" under the clause, and thus fall no matter their "necessity" to enabling a particular outcome. *Ibid*.

While Plaintiff contends that the deadline attached to the 28th Amendment is both unnecessary and improper, this court need not tackle thorny questions about elastic legislative authority. The necessary and proper clause simply does not apply to Congress when it acts alone under Article V.  The plain text of the necessary and proper clause authorizes Congress "to make all **Laws** which shall be necessary and proper" in furtherance of enumerated powers. U.S. Const. Art. I §8 cl. 18 (emphasis added).

The resolution proposing the 28th Amendment was passed only by Congress and never presented to the President, in line with uncontestable founding-era precedent. *Hollingsworth v. Virginia*, 3 U.S. (3 Dall.) 378 (1798). However, "Neither the House of Representatives nor the Senate . . . either of them, or both of them acting together" can accomplish what "could have been achieved, if at all, only by legislation" *INS v. Chadha*, 462 U.S. 919, 952 (1983). Indeed, *INS v. Chadha* expressly distinguished the proposal of constitutional amendments from ordinary lawmaking because "a constitutional amendment must command the votes of two-thirds of each House" and "three-fourths of the states must ratify any amendment". *Id.* at n. 21. Just as a single house of Congress could not exercise the authority to make laws "Necessary and Proper" to execute the naturalization power, the House and Senate also lack the power to enact a "Law" executing the provisions of Article V without presentment to the president.

This view is consistent with unbroken congressional practice dating back to the founding. If two-thirds of each house of Congress could make "Laws" incidental to the Article V power without the need for presentment, then one would expect Congress to have exercised it in relation to one of the many enacted laws administering the ratification process. Yet, in practice, presentment has always occurred. One example is 1 U.S.C. §106(b), which requires an official to

ministerially certify the adoption of a constitutional amendment. *See Illinois v. Ferriero* 60 F.4th 704 (D.C. Cir. 2023). Although clearly intended to further the Article V powers of Congress, this provision was presented to President Truman for his signature in accordance with the Presentment Clause. 65 Stat. 710; 97 Cong. Rec. 13784, 1951. The President signed that bill alongside dozens of others. *Id.* at 13786. President Truman continued a practice dating back to the Presidency of James Monroe, who signed a bill in 1818 requiring the Secretary of State to certify the adoption of amendments. See Act of April 20, 1818, ch. 80, § 2, 3 Stat. 439. Even the purported deadline extension for the 28th amendment was presented to President Carter after passage by Congress for his signature[1]. 92 Stat. 3799. This court should abide by the text of the Necessary and Proper Clause and two hundred years of practice to confirm that broad incidental authority to execute Article V must be exercised by Congress and the President acting together.

### 2.   The Court Should Narrowly Construe Self-Executing Incidental Powers

The Supreme Court has been cautious in recognizing implied powers that any branch can exercise without statutory authority. When recognizing the legislative factfinding power, the Supreme Court took pains to emphasize that "the power of inquiry" was "an essential and appropriate auxiliary to the legislative function" because without it "[a] legislative body cannot legislate wisely or effectively". *McGrain v. Daugherty*, 273 U.S. 135, 174-75 (1927). When recognizing inherent judicial power over judgments, the Supreme Court likewise extended inherent power only to "powers 'which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.'" *Chambers v. Nasco, Inc*., 501 U.S. 32, 43 (1991) (citing *United States v. Hudson*, 7 Cranch 32, 34 (1812)). Finally, inherent, indefeasible executive

---

[1] The deadline extension resolution cannot independently invoke the Necessary and Proper Clause to support the deadline. The text merely nullifies "any provision of House Joint Resolution 208 of the Ninety-second Congress" preventing passage of the amendment "not later than June 30th, 1982". 92 Stat. 3799. Since no provision of the original resolution ever validly barred ratification, the resolution extending the deadline had no additional effect. It would be very odd to read Congress as having imposed a deadline on the sovereign states by negative implication in a resolution intended to make passage of the 28th amendment easier. Finally, President Carter Expressly disclaimed giving legal effect to his signature. Jimmy Carter, U.S. President, Speech at a Ceremony Commemorating the Extension of the Ratification Deadline of the Equal Rights Amendment: Remarks on Signing H.J. Res. 638, 2 Pub. Papers 1800 (Oct. 20, 1978).

authority exists "only by disabling the Congress from acting upon the subject", a power that "must be scrutinized with caution" to maintain the constitutional order. *Youngstown Co. v. Sawyer, 343 U.S. 579, 637-38* (1952) (Jackson J., Concurring).

Each self-executing implied power has been recognized because it is *essential*, not merely convenient. When determining whether a power is essential to orderly government, the Court has drawn heavily on founding-era use of the challenged practice. *See e.g. Medellín v. Texas*, 552 U.S. 491, 532 (2008) (rejecting "unprecedented" proclamation by President Bush in light of centuries of treaty practice); *Trump v. Mazars U.S., LLP*, 140 S. Ct. 2019, 2035 (2020) (adopting "[a] balanced approach" to the implicit congressional power to investigate presidential records in light of historical practice).

Historical practice is *not* sufficient when relied upon only rarely and under protest. For example, Justice Frankfurter in *Youngstown* rejected reliance on seizures from World War I for three reasons. Firstly, the Justice found that they had been contemporaneously challenged; secondly, that they at least arguably arose from express authorization; thirdly, that the few examples relief upon by the government could not compare to the actions over "period of 80 years and in 252 instances, and by Presidents learned and unlearned in the law" to regulate federal property in advance of Congressional legislation. *Youngstown Co. v. Sawyer,* 343 U.S. 579, 611-613 (1952) (Jackson J., Concurring). The burden rests on the government to identify a deeply rooted historical tradition supporting an implied power and demonstrate why that implied power is so essential that it must be vested in Congress alone, rather then the usual procedures of bicameralism and presentment.

### 3.  The Government's Cannot Shift the Burden of Persuasion to Plaintiff

The government chastises plaintiff, without citation to authority, for failing to affirmatively demonstrate that deadlines are "actually prohibited" by the constitution[2]. Defendants' MTD at 19. This statement both misreads Plaintiff's motion and conflicts with binding precedent on implicit powers. Where, as here, "there is no constitutional text speaking to

---

[2] Justice Jackson aired a similar position in more detail at oral argument in *Consumer Financial Protection Bureau v. Community Financial Services Association.* Case No. 22-448 Tr. Of Oral Argument 37:04-38:06.

this precise question, the answer to the CLEOs' challenge must be sought in historical understanding and practice, in the structure of the Constitution", and judicial precedent. *Printz v. United States*, 521 U.S. 898, 905 (1997). The court in *Printz* was confronted with the question of whether Congress could compel state executive officials to enforce its laws. The Supreme Court analyzed whether a related of the founding-era practice requiring *judges* to enforce federal laws could sustain a power to compel state executives.

In a statement seemingly tailor made to answer the United States' argument, the court found that "the numerousness of these [judicial] statutes, contrasted with the utter lack of statutes imposing obligations on the States' executive (notwithstanding the attractiveness of that course to Congress), suggests an assumed *absence* of such power." *Printz v. United States*, 521 U.S. 898, 908 (1997) (emphasis in original). Even Justice Breyer, who filed a dissenting opinion in *Pritz*, agreed that one can infer a constitutional prohibition from the unprecedented nature of an act. *See Nat'l Labor Relations Bd. v. Canning*, 573 U.S. 513, 537 (2014) (finding appointments "presumptively unconstitutional" when made during a recess shorter than 10 days because "we have not found a single example of a recess appointment made during an intra-session recess that was shorter than 10 days. Nor has the Solicitor General.").

The inference of unconstitutionality drawn by these cases is even clearer because neither the Necessary and Proper Clause nor the Recess Appointments Clause provide express textual support for the government. The United States must produce compelling historical evidence which reflects the "practice of government" during a constitutionally relevant period. *McCulloch v. Maryland*. 4 Wheat. 316, 401 (1819).

## B.  Dillon Is Inapplicable

The United States relies heavily on *Dillon v. Gloss* 256 U.S. 368 (1921). Curiously, the United States does not respond to *any* of the arguments distinguishing *Dillon* made in Plaintiff's Motion for Summary Judgment. *Compare* Plaintiff's Motion for Summary Judgment at 10-11 (making four arguments against the application of *Dillon*) to Defendants' MTD at 17 (single quote from *Dillon* with no analysis). This Court has already found that when the United States makes arguments for the first time in its reply, they have been waived. *E. J. v. United States*, Case No. 13-cv-01923-NC, 7 n.2 (N.D. Cal. Nov. 14, 2013). It should follow that course here.

Even if the United States escapes waiver or forfeiture on the issue, its citation to Dillon is inapposite.

### 1. The Deadline in *Dillon* Was Ratified by the States

The deadline at issue in *Dillon* was contained in the *text* of the 18th Amendment, making it "valid to all intents and purposes, as part of [the] Constitution" by the time *Dillon* was decided. U.S. Const. Amend. XVIII; U.S. Const. Art. V. Article V expressly authorizes Congress to propose any amendment it deems necessary[3], which fits neatly into the *Dillon* court's focus on Congressional power over the *content* of proposed Amendments. *See Dillon* 256 U.S. at 373-4 (relying on the negative implication from the equal suffrage clause and "a provision long since expired"—limitations on the content of amendments). The deadline in *Dillon* was thus upheld because it fell within the power of Congress to propose as part of the content of an amendment, and within the power of the states to ratify.

Only this reading of *Dillon* is harmonious with *United States v. Sprague*, 282 U.S. 716 (1931). In *Sprague*, the Supreme Court held that "Article V is clear in statement and in meaning, contains no ambiguity, and calls for no resort to rules of construction. . . . It provides two methods for proposing amendments." *Id.* at 730 (1931). The court then went on to expressly reject the claim "that amendments may be of different kinds", thus justifying changed ratification procedures depending on the "purpose of the proposed amendment". *Id.* at 731. "This can not be done". *Ibid.* The court went so far as to expressly contrast "the grant of power to Congress" to select either of the two modes of ratification and the reserved power of the people to alter Article V by "amendment" to change the scope of that discretion. *Id.* at 733.

If *Dillon* were read to include arbitrary deadline-setting in the grant of power to Congress, *Sprague*'s discussion of the limited-but-plenary choice of the mode of ratification would be senseless. Congress would have the power to make an endless array of value judgments far exceeding the narrow delegation contemplated in *Sprague*. The only tenable reading of *Dillon*

---

[3] Except for an Amendment that would deprive states of equal suffrage in the Senate.

relies on the fact that the deadline of the 18th Amendment was ratified by the people, who are empowered to make whatever value judgments they wish. *See e.g.,* U.S. Const. pmbl.

The upshot is that the deadline contained in the proposing clause of the 28th Amendment is not enforceable. The United States appears to accept the distinction between the prefatory texts of resolutions, not part of the constitutional text, and deadlines contained in the text of amendments, which are ratified as part of the constitution. Defendants' MTD at 18. Since the deadline contained in the proposing clause was not ratified by the people, and falls outside the limited grant of authority to Congress, it is an *ultra vires* act.

### 2. *Dillon*'s Discussion of Congressional Deadlines was dicta.

The Court in *Dillon* was not confronted with the question of whether Congress acting alone could enforce deadlines on an amendment. The argument for appellants in the case makes clear that Mr. Dillon challenged both the Congressional power to include a deadline in the amendment and the concurrent power of state legislatures to ratify the same. *Dillon*, 256 U.S. 369-370 (1921). Deciding the scope of Congressional power acting alone was entirely unnecessary to the result reached by the court.

It is hornbook law that precedent consists only of "the parts of a decision that focus on the legal questions actually presented to and decided by the court." B. Garner et al., The Law of Judicial Precedent 44 (2016). As the Supreme Court recently explained, statements which "necessarily made no difference to the court's decision . . . must therefore be regarded as nonbinding dicta." *Trump v. Thompson* 595 U. S. ____ (2022) (slip op., at 1) (per curiam).

Statements by the court about the authority of Congress alone to "fix a definite period for the ratification of proposed amendments" clearly fall into the latter category. Defendants' MTD at 17 (internal quotations omitted). Even if the court had *expressly denied* that statement, the case would have come out the same way because of the court's prior holding that congressional power over the content of amendments was limited only by the express provisions of Article V.

Further decisions of the Court also demonstrate that *Dillon* does not constitute binding precedent on the issue of Congressional deadlines. In *Sprague*, the court agreed that any discussion of the "mode" of ratification in *Dillon* was "not in the strict sense necessary to the decision", in contrast to the *National Prohibition Cases*, which were. *Sprague*, 282 U.S. at 732

(1931). In *Coleman v. Miller*, the court stated that the holding of *Dillon* was an approval of "Congress in providing in the proposed Eighteenth Amendment that it should be inoperative unless ratified within seven years." *Coleman v. Miller*, 307 U.S. 433, 452 (1939). Because the Child Labor Amendment contained no deadline in either the proposing clause or the text of the amendment, the Court noted that it did not have to decide any questions about the scope of *Dillon*.

The United States will undoubtably point out that the controlling opinion in *Coleman* contains the following phrase: "We have **held** that the Congress in proposing an amendment may fix a reasonable time for ratification." *Coleman* 307 U.S. at 452 (emphasis added). However, this language was itself dicta, and dicta which doesn't speak to the question presented in this case.

On the first point, the issue in *Coleman* was whether courts had jurisdiction to determine if a "reasonable" amount of time had elapsed after the proposal of an amendment. *Ibid.* The resolution of that jurisdictional question would have been the same even if the court had determined Congress lacked the authority to impose deadlines.

Secondly, the language used by the court in *Coleman*, even if authoritative, cited to the congressional power "in proposing an amendment". *Ibid.* Plaintiff does not despite that *Dillon* blessed a deadline in the proposed text of an amendment. The United States must prove that Congress can, without ratification, impose mandatory deadlines. The Court in *Coleman* had no occasion to bless such a distinct scheme.

Even under the extraordinarily high standard of mandamus, the D.C. district court found that "[w]hether the distinction matters is a question of first impression", though the court went on to find that plaintiffs had not met the exacting standard of review. *Virginia v. Ferriero*, 525 F. Supp. 3d 36, 57 (D.D.C. 2021). This court should engage in that analysis of first impression *de novo*.

### 3.   Alternatively, *Dillon*'s rationale was overruled by the 27th Amendment

To the extent that *Dillon* spoke to a broad Congressional power to impose deadlines without ratification by the people, the court relied on "the fair inference or implication from Article V . . . that the ratification must be within some reasonable time after the proposal." *Dillon*, 256 U.S. at 375 (1921). The court reached its holding because otherwise 'amendments

proposed long ago — two in 1789" could still be ratified, something the court thought was "untenable". *Ibid*. The court then held that any Congressional power to impose deadlines existed only to fix a "definite period for ratification . . . so that all may know what it is and speculation on what is a reasonable time may be avoided. . .." *Id*. at 376.

The initial logical leap that justified the court's chain of reasoning—that old amendments from 1789 could no longer be passed—was repudiated by the 27th Amendment. Since no "fair inference or implication" now exists from Article V, the only justification for Congressional power over the amendment process falls flat.

The United States may argue that Congress declined to impose a ratification deadline on the 27th Amendment. 1 Stat. 97 (1789). That is irrelevant. The analysis (really, dicta) in *Dillon* purported to apply an implicit reasonableness requirement on the ratification of *all* amendments. The court blessed Congressional deadline setting only in furtherance of this reasonableness requirement, flagging that it is "not questioned that seven years, the period fixed in this instance, was reasonable, if power existed to fix a definite time". *Dillon*, 256 U.S. at 375 (1921). The court clearly viewed the power to set fix a "definite" time as merely the power to liquidate an already existing deadline. Since we now know that no such implicit deadline exists, there is nothing for Congress to liquidate through the setting of a deadline.

If it deigns to respond, the United States may argue that this Court has no authority to declare *Dillon* moribund, even if the 27th amendment undermined its holding. But lower courts have always recognized that the people of the United States can overrule decisions of the Supreme Court with immediate effect. *See e.g. Gray v. Johnson,* 234 F. Supp. 743, (S.D. Miss. 1964) (finding that the 24th amendment invalidated Mississippi's poll tax despite *Breedlove v. Suttles*, 302 U.S. 277 (1937)). Although the 27th amendment does not directly amend Article V to overrule *Dillon*, its constitutional status nevertheless repudiates the rationale relied upon by the court[4].

---

[4] Defendants may desire to defend the ruling in *Dillon* while abandoning its rationale. "They are entitled to that desire. But they surely cannot claim the mantle of stare decisis while pursuing it." *Students for Fair Admissions v. Harvard* Case No. 20-1199 (slip op., at 36).

### 4. §3 of the 28th Amendment Proves the Prefatory Deadline Is Non-Binding

Plaintiff respectfully refers the court to lines 10-20 on page 10 of his Motion for Summary Judgment. For the sake of completeness, Plaintiff notes that similar provisions exist elsewhere in the constitution. U.S. Const. Amend. XVIII §1; U.S. Const. Amend. XX §5.

### C. The Cases Cited by Defendants are Neither Persuasive nor Binding

The United States makes a valiant effort to cite every decision to date that has touched on the validity of the 28th Amendment. However, every single decision cited by the United States was either dismissed on jurisdictional grounds or arose before the 28th Amendment took effect. Such non-binding decisions cannot be cited even as persuasive authority.

*Taylor v. El Centro College* disposed of a 28th Amendment claim on January 10th. 2022. Since the 28th Amendment was ratified in late January[5], it had not taken effect by the date of the court's decision or at the time of the complained upon conduct. *See* U.S. Const. Amend. XXVIII §3; No. 3:21-CV-0999-D, 2022 WL 102611, at *1 (N.D. Tex. Jan. 10, 2022). The court's summary disposition of the *pro se* plaintiff's claim under a provision that had not even taken effect should not be read as a reasoned interpretation of the many Article V questions at issue in this case.

*Ferguson v. Idaho Dep't of Corr*, which disposed of the 28th Amendment claim in a footnote nearly two years before the provision took effect is unhelpful for essentially the same reasons. No. 4:20-CV-00003-DCN, 2020 WL 61016447, at *1 n.1 (D. Idaho Mar. 2, 2020).

*Illinois v. Ferriero* did engage in some analysis of Article V, but ultimately chose to dismiss the lawsuit on the jurisdictional ground that plaintiffs had failed to demonstrate "a clear and indisputable right to relief." 60 F.4th 704, 713 (D.C. Cir. 2023). The D.C. circuit filled the entire opinion with references to the high threshold faced by the plaintiffs. *Id.* at 710, 713, 714, 715, 716, 717, 719. As the supreme court has recognized, the dismissal of claims subject to the "clearly established" standards of mandamus and qualified immunity does not foreclose courts from granting relief in cases where those defenses do not apply. *Pearson v. Callahan*, 555 U.S.

---

[5] Oddly, sources report both January 15th and January 27th as ratification date. Since *Taylor* was decided on the 10th, the distinction is not material.

223, 242-43 (2009). In citing this decision, the United States is making a "deference mistake". *See* Jonathan S. Masur and Lisa Larrimore Ouellette, Deference Mistakes, 82 U. Chi. L. Rev. 643, 645 (2015).

Defendants' speculation about the reasons for dismissal in *Nat'l Org. for Women, Inc. v. Idaho*, 455 U.S. 918 (1982) should not be considered. The Supreme Court vacated the judgment below in that case under *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950), a doctrine "specifically aimed at preventing a decision subsequently mooted 'from spawning any legal consequences,'" *Am. Fed'n of Gov't Emps. Nat'l Council, 118-ICE v. Fed. Labor Relations Auth.*, 926 F.3d 814, 819 n.3 (D.C. Cir. 2019) (citing *Munsingwear)*. Relying on a dismissal for mootness as precedent would conflict not only with *Munsingwear*, but also *Wisconsin Dept. of Revenue v. Wrigley Co.*, which found that a dismissal of a granted petition for certiorari on mootness grounds "did not . . . have any legal significance". 505 U.S. 214, 221 (1992).

*Nat'l Org. for Women* is also unhelpful because the dismissal was entirely unreasoned. The Supreme Court may have noted a suggestion of mootness from the Solicitor General, but it never explained why the case was moot. The Court may have believed that the deadline's expiry meant Idaho could no longer show the imminent injury required for Article III standing. E.g., *Rizzo v. Goode*, 423 U.S. 362, 372 (1976). It may also have concluded that since Colorado's challenge was framed specifically as a challenge to the deadline extension, the complaint at issue was moot even if there was a theoretical possibility of further state ratifications[6]. Given that much of the record in that case, including the petition for certiorari is not accessible in the public domain, Plaintiff can do no more than offer these unfalsifiable alternative explanations. This court should not decide the important legal questions presented in this case based on such guesswork.

---

[6] The United States points to *Virginia v. Ferriero*, which stated "[i]f the deadline was ineffective, a live controversy would have remained because additional states' ratifications could have still pushed the ERA past the three-fourths threshold." 525 F. Supp. 3d at 59. Even if the Court accepted that speculation, the deadline's expiry could have made ratifications so remote a possibility that Idaho's concrete injury disappeared.

### D.  The Deadline is Invalid

In addition to their arguments about the standard of review and the applicability of precedent, defendants assert that the history of Article V vitiates Plaintiff's claims. Defendants' MTD at 18-19. However, the historical evidence cited by defendants is insufficient to overcome the text and broader tradition of Article V.

### 1.  Text

Defendants recite the text of Article V, but do not offer any substantive analysis of its meaning.[7] This omission is fatal to Defendants' motion. While the Motion for Summary Judgment explains the Plaintiff's textual in detail, this section of the brief will focus on the purely textual indicators which demonstrate that Article V <u>unambiguously</u> does not authorize the deadline at issue in this case. If plaintiff succeeds, this Court does not need to wade into a historical debate or concern itself with analogical reasoning based on historical practice.

Although "a regular course of practice can liquidate & settle the meaning of disputed or indeterminate terms & phrases", the meaning of relevant "terms and phrases" must be genuinely ambiguous before extra-textual interpretative tools come into play. *Chiafalo v. Washington*, 140 S. Ct. 2316, 2326 (2020) (internal quotations removed); *accord United States ex rel. Polansky v. Executive Health Resources, Inc.* 599 U.S. 419, 450 (Thomas, J., dissenting) ("'Standing alone,' however, 'historical patterns cannot justify contemporary violations of constitutional guarantees,'". (Citing *Marsh v. Chambers*, 463 U. S. 783, 790 (1983))).

The plain text of Article V specifically prohibits Congress from adding conditions to state ratifications as part of the "Mode of Ratification". The full text of the relevant clause provides "the one or the other Mode of Ratification may be proposed by the Congress", referring to the choice between state legislatures and state conventions. Any ordinary speaker of English, if asked to choose "A or B, the one or the other" understands that they made not choose "C", "D", or "7". Indeed, even asking someone to choose "A or B" delivers the same message. Caselaw confirms common sense. *See Encino Motorcars, LLC v. Navarro,* 138 S. Ct. 1134, 1140 (2018)

---

[7] The United States cannot cure this deficiency in its reply brief. *See supra* at pg. 5.

(finding that "service advisors" must—and did—fall into one of several categories connected by the word "or"); *United States v. Woods,* 571 U.S. 31 (2013) (finding that fraudulent valuation must—and did—fall into one of two categories connected by the word "or").

Describing the purported deadline-setting power as "incidental" does not cure this deficiency. Any incidental power in this area must be narrowly construed, *supra* at pg. 1-5, and must be an essential auxiliary to the text. But the power asserted by the United States occupies the same field as the text: imposing mandatory prerequisites on the ratification of constitutional amendments. By creating constitutional conditions out of whole cloth, Congress attempts to wield a "great substantive and independent power", which cannot be "implied as incidental to other powers, or used as a means of executing them." *McCulloch v. Maryland*, 17 U.S. 316, 4 Wheat. 316, 411, 4 L. Ed. 579 (1819).

Defendants may argue that Article V merely imposes minimum conditions on ratification, and that Congress may impose additional ratification conditions so long as any amendment is ratified by three fourths of state legislatures or conventions. As a matter of linguistics, this is an untenable equivalent to answering the command "chose A or B" with "A and C". Since Article V expressly defines what a Mode of Ratification is, that definition is generally exclusive and does not include other, unstated parameters. *Colautti v. Franklin*, 439 U.S. 379, 392-93 n. 10, (1979), overruled on other grounds by *Webster v. Reproductive Health Servs.*, 492 U.S. 490 (1989).

The language of Article V also directly prohibits such incidental power through at least two specific provisions. First is the inclusion of "the" (twice) in the phrase "the one or the other Mode of Ratification". "The consistent use of the definite article in reference to" something "indicates that there is generally only one. . . ." *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004). This connotation of the word "the" was similar in 1789. *See* SAMUEL JOHNSON, A DICTIONARY OF THE ENGLISH LANGUAGE (London, J.F. & C. Rivington et al., 10th ed. 1792), available at http://books.google.com/books?id=j-UIAAAAQAAJ ("article noting a particular thing"). "The one" "Mode of Ratification" (repeated twice) thus clearly refers to exactly two Modes of Ratification.

Defendants' position, however, necessarily implies that Congress can unilaterally attach an *infinite* spectrum of ratification conditions to proposed Amendments based on its judgment of

social, economic, and political conditions. But the place, if any, for enacting policy choices lies in the substantive content of amendments, not the carefully limited power to select a mode of ratification[8].

Secondly, the text of Article V provides that Amendments "shall be valid to all intents and purposes, as part of this Constitution, when ratified by the legislatures of three fourths of the several states". U.S. Const. Art. V. The statement is a conditional statement, with the antecedent "when ratified by the legislatures of three fourths of the several states" and the consequent "shall be valid". It was well established at the time of the founding that a conditional was false if the antecedent was true and the consequent false. Arnauld, Antoine and Pierre Nicole, *Logic or the Art of Thinking* (1662), translated by Thomas Spencer Banes, Edinburgh: Simpkin, Marshall And Co, 1850. Accessible at https://ia800202.us.archive.org/10/items/artofthinking00arnauoft/artofthinking00arnauoft.pdf. Pg. 131.

Courts have confirmed the literal meaning of this provision, finding that a constitutional amendment becomes valid immediately upon the final ratification by a state. *United States ex rel. Widenmann v. Colby*, 265 F. 998, 999-1000 (D.C.Cir. 1920), aff'd, 257 U.S. 619 (1921). The problem for the United States is that its position requires this court to find that an amendment is **not** "valid to all intents and purposes" even though the constitutional antecedent of ratification by three fourths of the states is concededly true. Any Congressional act that purports to make a constitutional provision a falsity is void. *Marbury*, 5 U.S. at 178.

Finally, the text of Article V clearly supports the distinction between deadlines contained in the ratified text of amendments, and unratified text in the prefatory clauses. Defendants' agree that the prefatory text of an amendment only exists to describe the necessity of the amendment and select a mode of ratification. Defendants' MTD at 12-13. Article V makes clear that only "Amendments", and not the "Most of Ratification" is enacted into the constitution when an

---

[8] The United States appears to assert that Professor Sachs' work authorizes a broad Congressional power to provide "legally binding guidance in the text o resolutions". Defendants' MTD at 19. Such a position is historically unfounded, *infra.*, and obliterates the textual distinction between the substantive power of the People to amend Article V, and the strictly procedural powers of Congress.

amendment is ratified. *Supra* at 12. Neither Congress, nor the Executive, nor the Supreme Court have ever recognized the text of proposing clauses as having constitutional status. *See e.g., Torcaso v. Watkins,* 367 U.S. 488, 492 n.6 (1961) (laying out the entire first amendment, without the proposing clause); United States Senate, *Constitution of the United States,* https://www.senate.gov/about/origins-foundations/senate-and-constitution/constitution.htm (Last Accessed 10/13/2023)[9].

This is why the two-year suspension of the 28th amendment is constitutional, U.S. Const. Amend. XXVIII §3, and why the *Dillon* court's analysis of the 18th Amendment's deadline does not control this case.

### 2. History

Even if historical practice could overcome unambiguous constitutional text, the pieces of evidence cited by Defendants are too few and come too late to carry the day.

Defendants rely on the inclusion of deadlines "for every constitutional amendment over the last 100 years… ." Defendants' MTD at 18; *but see* H.J. Res 184, 68th Cong. (1924) (Child Labor Amendment containing no deadline). However, the first set of amendments relied on by Defendants contained their deadlines in the ratified text of the amendments. U.S. Const. Amend. XVIII-XXII. Although Article V commanded that they be treated as part of the constitution, those amendments then overrode Article V and nullified their own legal operation. *See* 44 Op. O.L.C. (slip op., at 22) (Jan. 6, 2020). If any constitutional inference is to be drawn from these enacted provisions, it is the negative implication; a substantive constitutional change was *required* to alter the effect Article V would have otherwise had.

The second set of amendments relied on by the United States cover a 12-year span of history, from 1960-1972. U.S. Const. Amend. XXIII-XVI; H.R.J. Res. 208, 92d Cong., 86 Stat. 1523 (1972) (28th Amendment). This "short lived" scheme should be disregarded in favor of the "overwhelming consensus" found in the other 28 proposed constitutional amendments. *See Tyler v. Hennepin County,* Case No. 21-166 (2023) (slip op., at 8); *accord New York State Rifle &*

---

[9] This analysis also accords with the OLC's conclusion that deadlines were included in proposing clauses to avoid "cluttering up" the constitutional text. Motion for Summary Judgment at 12.

*Pistol Assn., Inc. v. Bruen* 597 U. S. ____ (2022) (slip op., at 61, n31). None of these proposals were ever reviewed by the courts, and Defendants concede that their validity was disputed in the halls of Congress. Motion for Summary Judgment at 12 (citing Rep. Jeffers and Rep. Ramseyer).

The final proposed amendment at issue is the D.C. Congressional Representation Amendment. H.R.J. Res. 554, 95th Cong., 92 Stat. 3795 (1978). Although Defendants count that proposal in the category of amendments with deadlines in the proposing clause, Defendants' MTD at 13, this proposal included a deadline in §4 of the text *and* in the proposing clause of the resolution. Congress thus affirmatively retreated from prior assertions of authority to include binding deadlines absent language in the text of amendments.

The court thus does not need to address Defendants' arguments that a long period of historical practice has "liquidated" the original intent of Article V. Even the most lenient case cited by the government required more than 30 years of Congressional acquiescence in the foreign policy arena. *Dames & Moore v. Regan*, 453 U.S. 654, 684 (1981). Twelve years of practice since disclaimed is just not enough.

Even if the relevant tradition existed for longer than 12 years, this court should not extend the capricious liquidation analysis employed by *Regan* to the context of constitutional amendments. The sweeping constitutional authorities enjoyed by the President and Congress in the foreign affairs context cannot be easily transposed into the domestic context. *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972) illustrates this point, drawing a sharp line between foreign nationals asserting claims that could be summarily dismissed, and the First Amendment interests of domestic professors. Additionally, "[c]rucial to" the courts decision in *Regan* was "the conclusion that Congress has implicitly approved the practice of claim settlement by executive agreement" through the enactment of several pieces of legislation and unenacted practice. 453 U.S. 654, 680 (1981). There is no superior authority that can "acquiesce" to Congress overstepping its bounds in the proposal of constitutional amendments.

The only historical evidence that could possibly bear on the question of deadlines comes from the prefatory text of the 12th and 17th amendments cited by Professor Sachs. *See* Stephen E. Sachs, *New Light on the ERA?*, The Volokh Conspiracy (Sept. 13, 2023), https://reason.com/volokh/2023/09/13/new-light-on-the-era/. However, as noted in the Motion for

Summary Judgment, that text was clearly declaratory of the amendment's clear status as an implied repeal. Motion for Summary Judgment at 11-12. Defendants have failed to provide a single example of anyone—anywhere—treating that text as having legal significance, and it is difficult to imagine how any such case could arise. It certainly bears no relation to the 28th amendment, where the unratified text purports to deny important rights to 330 million Americans.

### III.    The Recissions are not Political Questions

The Political Question Doctrine operates as a "narrow exception" to the Article III rule that "the Judiciary has a responsibility to decide cases properly before it, even those it 'would gladly avoid.'" *Zivotofsky ex rel. Zivotofsky v. Clinton* (Zivotofsky I), 566 U.S. 189, 194–95 (2012) (quoting *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821)). The doctrine generally removes from judicial consideration "those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress." *Japan Whaling Ass'n v. Am. Cetacean Soc.*, 478 U.S. 221, 230 (1986).

The United States does not attempt to demonstrate that the question of whether state recissions are constitutional is a policy or value judgment. Instead, it relies on a single line from *Coleman* deferring to a congressional judgment made with the passage of the 14th amendment that states could not deny the validity of their own ratifications. Context is important. Plaintiffs in *Coleman* were attempting to deny the validity of their state's ratification, an action that, if upheld, would directly conflict with a prior Congressional judgment. *Coleman* 307 U.S. at 450; Motion for Summary Judgment at 14-15. Defendants' citation to the concurrence in *Coleman* declaring all Article V questions nonjusticiable cannot bind this court, as it failed to carry a majority.

*Coleman* also heavily relied on the fact that Plaintiffs were essentially asking the court to adjudicate the "a great variety of relevant conditions, political, social, and economic" in deciding the constitutional questions presented. 307 U.S. at 453. *See also Dyer v. Blair,* 390 F. Supp. 1291 at 1302 (N.D. Ill. 1975) ("A question that might be answered in different ways for different amendments must surely be controlled by political standards"). The question of whether states can *ever* rescind ratifications of an amendment calls for no more than applying "familiar principles of constitutional interpretation" to "textual, structural, and historical evidence." *See*

*Zivotofsky I*, 566 U.S. at 201.

To the extent that *Coleman*'s text could be read more broadly, the Supreme Court has since narrowed it. The "holding in Coleman stands (at most, see n. 8, infra) for the proposition that legislators . . . have standing to sue . . . on the ground that their votes have been completely nullified." *Raines v. Byrd*, 521 U.S. 811 (1997). The Supreme Court has thus disclaimed attempts to count up votes of the Justices in that case to reach any proposition besides that of narrow legislator standing[10].

*White v. Hart*, 80 U.S. 646, 649 (1871) is even less helpful to defendants. In that case, the question of whether the 1868 Constitution of Georgia was validly adopted was raised as a defense, just as Defendants do here. *Id.* at 649. But instead of dismissing the entire case on political question grounds, the decided court the question based on its interpretation of the reconstruction acts and rendered judgment in favor of the plaintiff. *Id.* at 654.

This court should therefore apply the ordinary six-factor test articulated in *Baker v. Carr,* 369 U.S. 186 (1962). Resolution of that question is easy. There is no "textually demonstrable constitutional commitment" to Congress to decide every question relating to Article V of the Constitution. *Id.* at 217. If anything, the balance struck between the states and Congress should preclude Congress from having any control over the process. Since the question presented is purely legal, there are no "judicially unmanageable" or "initial policy determinations" that require decision by the court. *Ibid.* Because this court would merely be exercising its power to say what the law is, without defying any congressional commands, there is no "lack of respect", "unusual need for unquestioning adherence to a decision already made", or "potentiality of embarrassment" from deciding the issue. *Ibid.*

Finally, this court should be extremely skeptical of the justiciability arguments raised by the United States. Before the D.C. Circuit, counsel for the United States said:

> "there are plenty of plaintiffs, presumably, who would have
>
> standing to tee up these fascinating and important questions about

---

[10] Coleman also relied on the widely discredited concept of Congressional "promulgation" of an amendment, a theory expressly rejected by the Defendants. *See Virginia v. Ferriero* 525 F. Supp 3d 36 at note 8 (D.D.C. 2021).

1    whether the ERA is in fact part of the constitution. An individual
2    who has been injured in a concrete way by state action that the
3    individual thinks is not in conformity with the ERA can sue that
4    state actor, and seek as part of that to enforce the ERA. That case
5    would certainly need to involve a determination of whether the
6    ERA is in fact in force.

7    *Illinois v. Ferriero* Case No. 21-5096, Tr. of Oral Argument at 47:51-48:20. Now that the
8    United States has secured the dismissal of one lawsuit on the grounds that only individual
9    plaintiffs with standing can sue, it cannot be heard to disclaim that avenue for relief.
10   Gamesmanship should not be rewarded.

11   This court should thus hold that Plaintiff's claims are justiciable, and hold that states
12   cannot rescind ratifications for the reasons stated in Plaintiff's Motion for Summary Judgment.

13   **IV.    Scope of Relief**

14   Defendants ask this court to take a "cautious approach" to the relief it awards Plaintiff.
15   Defendants' MTD at 22. Defendants appear to concede that a declaratory judgment finding the
16   MSSA unconstitutional as applied to plaintiff is unobjectionable. Since Plaintiff is not requesting
17   declaratory relief any broader, the court should at an absolute minimum enter such a decree.

18   Defendants then argue that the Court must be "sensitive" to Congressional authority over
19   military affairs. Defendants do not explain why injunctive relief which applies only to Plaintiff
20   will materially harm Congressional policy in this area. The cases cited by defendants involved
21   attempts to enjoin draft registration nationwide before the conclusion of the appellate process.
22   *Rostker v. Goldberg*, 448 U.S. 1306, 1310 (1980) (Brennan, J., in chambers) ("the United States
23   is barred from instituting registration without time-consuming congressional action, even in the
24   face of a clear and present threat to national security"). Plaintiff does not believe that his
25   individual absence from the Selective Service will trigger a clear and present threat to national
26   security, and the complaint in this case makes clear that only individualized injunctive relief is
27   requested. Since defendants do not contest any of the factors for permanent injunctive relief
28   beyond the public interest, this Court should issue a narrow injunction shielding plaintiff from
this unconstitutional law.

Finally, defendants argue that a vacatur of the regulations would go "far beyond" what is necessary to provide relief in this case. However, defendants simply do not grapple with the precedents cited in Plaintiff's Motion for Summary Judgment holding that vacatur is the presumptive remedy for a violation of the APA. *Mont. v. Haaland*, 29 F.4th 1158, 1164 (9th Cir. 2022). Moreover, the purported consequences of vacatur asserted by the United States are not sufficient to justify the remedy of remand without vacatur.

Defendants first claim that vacating the registration requirements would transgress the prerogative of the politically accountable branches of government. But the last word by any "politically accountable" branch of government on the MSSA took place on January 15th, 2020, when the 28th Amendment was ratified. The 28th Amendment "is the very product of an interest-balancing by the people . . . And whatever else it leaves to future evaluation, it surely elevates above all other interests the right" to be free from discrimination on the basis of sex. *District of Columbia et al. v. Heller*, 554 U.S. 570, 635 (2008). The 28th amendment gave Congress all the time it needed to adapt the draft and any other discriminatory programs to its provisions via the two year grace period in §3 of the amendment. That time having elapsed, this court cannot balance away the interests protected by the amendment.

Defendants also state that they lack the legal authority to meaningfully revise the draft without authorization from Congress. Although Congressional recalcitrance cannot nullify Plaintiff's right to relief, this court could stay the vacatur for a period of time (or, more likely, pending appeal). *See Alliance for Hippocratic Medicine v. FDA*, Case No. 23-10362 (5th Cir. 2023) ("we must take into consideration the fact that the district court's stay order will likely not go into effect for" some time.). This gives Congress ample time to exercise its collective wisdom and amend the MSSA.

## V.    Miscellaneous

Defendants raise several ancillary matters that this court must address. Firstly, Plaintiff and the United States have conferred via email on potential hearing dates. The United Sates believes that this case can be decided on the papers, but will work with Plaintiff and the Court should a hearing be requested. Plaintiff believes that a hearing is necessary in this case due to the

importance and complexity of the questions presented. December 13th is the best date for the Plaintiff, but Plaintiff is able and willing to accommodate changes.

Secondly, Defendants state that their motion does not address the individual capacity claims against Mr. Arbogast and Mr. Kett. Defendants' MTD at n.1. However, if the Court grants defendants motion to dismiss on the grounds that the 28th Amendment was not validly ratified, Plaintiff's claims against Mr. Kett and Mr. Arbogast will inevitably fail. Plaintiff thus respectfully requests that the court either dismiss the entire action or certify its order for immediate appeal if it concludes that there is no 28th Amendment to the Constitution. Plaintiff does not intend to waive any appellate or other rights whatsoever with this request.

Finally, defendants argue that every official defendant except the Director of the SSS and the SSS itself should be dismissed from the case. Defendants' MTD at n.6. Since the United States appears to concede that every defendant except the President will be bound by an injunction entered in this case as an officer or employee of the United States, Plaintiff views dismissal as unnecessary. *See* F.R.C.P. 65(d)(2). The real-world scope of injunctive relief will be immaterial as long as the United States is a named defendant. If the Court does dismiss additional defendants in light of Defendants' concession, Plaintiff requests that the dismissal be without prejudice to recovery of costs.

With respect to the President of the United States, relief is necessary to the extent the MSSA accords the President's Proclamation independent legal authority to mandate Plaintiff register for the draft.  50 U.S.C. §3802(a). Thus, absent declaratory relief against the President, Plaintiff's Article III injury caused by "the baggage of sexual stereotypes" will not be completely remedied. *Orr v. Orr* (1979) 440 U.S. 268, 283.[11]

## VI.    Conclusion

This Court should grant Plaintiff's Motion for Summary Judgment and deny Defendants' Motion to dismiss.

---

[11] Plaintiff concedes that the President is not subject to the APA. Plaintiff is proceeding under an equitable cause of action to shield himself against *ultra vires* acts. Plaintiff's Complaint at ¶ 16.

1

2

3     Date: October 13th, 2023          Sign Name: _____

4                                       Print Name: Vikram Valame

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28