1  BRIAN M. BOYNTON
     Principal Deputy Assistant Attorney General
2  ALEXANDER K. HAAS
     Director, Federal Programs Branch
3  TERRY M. HENRY
     Assistant Branch Director
4  ANDREW E. CARMICHAEL
5  MICHAEL J. GERARDI
     Senior Trial Counsel
6  ANDREW J. RISING
     Civil Division, Federal Programs Branch
7  U.S. Department of Justice
   1100 L St., N.W.
8  Washington, D.C.  20005
   Telephone: (202) 514-0265
9  E-mail: andrew.j.rising@usdoj.gov
10

11 *Counsel for Defendants*

12

13              **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
14

15 VIKRAM VALAME,

16                  Plaintiff,          CASE NO.  5:23-cv-3018 NC

17            v.                        **DEFENDANTS' REPLY IN SUPPORT
                                        OF CROSS-MOTION TO DISMISS
18 JOSEPH R. BIDEN, President of the United   PLAINTIFF'S COMPLAINT, OR, IN
   States, *et. al*.,                   THE ALTERNATIVE, FOR
19                                      SUMMARY JUDGMENT**

20                  Defendants.
                                        Date:          December 13, 2023
21                                      Time:          11:00 AM
                                        Courtroom 5, 4th floor
22

23

24

25

26

27

28

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

ARGUMENT........................................................................................................................1

I.      Plaintiff's Request for Extraordinary Relief Imposes a High Burden That He Fails
        to Meet. ....................................................................................................................1

II.     Plaintiff's Structural Arguments Are Misplaced............................................................2

III.    Plaintiff's Attempts to Diminish Adverse Precedent and History are Unavailing.............3

        A.      Defendants have not waived their ability to raise jurisdictional issues or
                their ability to respond to Plaintiff's attempt to distinguish *Dillon*. .......................4

        B.      Plaintiff's attempts to distinguish or diminish Supreme Court precedent
                and Congressional practice fail.............................................................................5

IV.     Defendants' Arguments are Supported by the Weight of Historical Practice. ..................9

V.      Plaintiff Fails to Justify His Request for Vacatur ..........................................................11

CONCLUSION....................................................................................................................13

1

## TABLE OF AUTHORITIES

**CASES**

*Brown v. Maryland,*
   25 U.S. (12 Wheat.) 419 (1827)........................................................................1, 2

*Califano v. Yamasaki,*
   442 U.S. 682 (1979)..............................................................................................12

*Chiafalo v. Washington,*
   591 U.S. ---,140 S. Ct. 2316 (2020)......................................................................7

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013)..............................................................................................12

*Coleman v. Miller,*
   307 U.S. 433 (1939)........................................................................................*passim*

*Cubbage v. Talbots, Inc.,*
   No. C09-911BHS, 2010 WL 2710628 (W.D. Wash. July 7, 2010)........................4

*Dillon v. Gloss,*
   256 U.S. 368 (1921)........................................................................................*passim*

*Ferguson v. Idaho Department of Correction,*
   No. 4:20-cv-00003-DCN, 2020 WL 1016447 (D. Idaho Mar. 2, 2020) ...................8

*Fletcher v. Peck,*
   10 U.S. (6 Cranch) 87 (1810) ...............................................................................1

*Franklin v. Massachusetts,*
   505 U.S. 788 (1992)..............................................................................................12

*Gill v. Whitford,*
   138 S. Ct. 1916 (2018)..........................................................................................12

*Hollingsworth v. Virginia,*
   3 U.S. (3 Dall.) 378 (1798)....................................................................................7

*Illinois v. Ferriero,*
   60 F.4th 704 (D.C. Cir. 2023)...........................................................................*passim*

*Louisiana v. Becerra,*
   20 F.4th 260 (5th Cir. 2021) .........................................................................11, 12

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992)...............................................................................................4

*McCalla v. Royal MacCabees Life Ins. Co.*,
   369 F.3d 1128 (9th Cir. 2004) ................................................................................8

*National Organization. for Women, Inc. v. Idaho*,
   459 U.S. 809 (1982) ...............................................................................................8

*Nat'l Coal. for Men v. Selective Serv. Sys.*,
   969 F.3d 546 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 1815 (2021) ...................9, 11

*Nat'l Coal. for Men v. Selective Serv. Sys.*,
   No. H-16-3362, 2019 WL 1902693 (S.D. Tex. Apr. 29, 2019), *rev'd*,
   969 F.3d 546 (5th Cir. 2020) .................................................................................11

*Newdow v. Roberts*,
   603 F.3d 1002 (D.C. Cir. 2010) ............................................................................12

*Nunez-Reyes v. Holder*,
   646 F.3d 684 (9th Cir. 2011) ..................................................................................9

*Rostker v. Goldberg*,
   453 U.S. 57 (1981) ..................................................................................................1

*State Oil Co. v. Khan*,
   522 U.S. 3 (1997) ....................................................................................................9

*Taylor v. El Centro College*,
   No. 3:21-cv-0999-D, 2022 WL 102611 (N.D. Tex. Jan. 10, 2022) .........................8

*The Pocket Veto Case*,
   279 U.S. 655 (1929) ...............................................................................................7

*Trump v. Hawaii*,
   138 S. Ct. 2392 (2018) ..........................................................................................12

*United Pub. Workers of Am. (C.I.O.) v. Mitchell*,
   330 U.S. 75 (1947) ..................................................................................................5

*United States v. Sprague*,
   282 U.S. 716 (1931) ...............................................................................................7

*United States v. Texas*,
   143 S. Ct. 1964 (2023) ..........................................................................................12

*United States v. Weiland*,
   420 F.3d 1062 (9th Cir. 2005) ................................................................................9

*Valame v. Biden*, Case No. 5:23-cv-03018
Defendants' Reply in Support of Cross-Motion
iii

*Virginia v. Ferriero*,
   525 F. Supp. 3d 36 (D.D.C. 2021), *aff'd sub nom. Illinois v. Ferriero*,
   60 F.4th 704 (D.C. Cir. 2023) ............................................................2, 11

*Zepeda v. INS*,
   753 F.2d 719 (9th Cir. 1983) .........................................................11, 12

**UNITED STATES CONSTITUTION**

U.S. Const. art. V ...................................................................................3

U.S. Const. amend. XVIII, § 3 ...........................................................3, 10

U.S. Const. amend. XX, § 6 ...............................................................3, 10

U.S. Const. amend. XXI, § 3 ..............................................................3, 10

U.S. Const. amend. XXII, § 2 .............................................................3, 10

**RULES**

Fed. R. Civ. P. 12 ...................................................................................4

**OTHER AUTHORITIES**

101 Cong. Rec. 6628 (1955) ...................................................................6

H.R.J. Res. 208, 92d Cong.,
   86 Stat. 1523 (1972) ......................................................................3, 10

H.R.J. Res. 554, 95th Cong.,
   92 Stat. 3795 (1978) ......................................................................3, 10

Ratification of the Equal Rights Amendment, 44 Op. O.L.C. (2020),
   https://go.usa.gov/xtJ3J ..........................................................6, 10, 11

S.J. Res. 1, 89th Cong.,
   79 Stat. 1327 (1965) ......................................................................3, 10

S.J. Res. 1, Gen. Assemb., Reg. Sess. (Va. 2020) ....................................5

S.J. Res. 2, 79th Leg., Reg. Sess. (Nev. 2017) .........................................5

S.J. Res. 7, 92d Cong.,
   85 Stat. 825 (1971) ........................................................................3, 10

S.J. Res. 29, 87th Cong.,
   76 Stat. 1259 (1962) ......................................................................3, 10

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

S.J. Res. 39, 86th Cong.,
  74 Stat. 1057 (1960).........................................................................................................3, 10

S.J. Res. Const. Amend. 0004, 100th Gen. Assemb., Reg. Sess. (Ill. 2018)...............................5

Stephen E. Sachs, *New Light on the ERA?*, The Volokh Conspiracy (Sept. 13, 2023, 8:38 a.m.),
  https://reason.com/volokh/2023/09/13/new-light-on-the-era/............................................3, 11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INTRODUCTION

Plaintiff asks the Court to give operative effect to a proposed constitutional amendment by resolving issues most appropriately left to Congress; to adopt his framework for application of that proposed amendment in the first instance; and then to apply the proposed amendment using his framework to strike down a federal statute that the Supreme Court has previously upheld under the Fifth Amendment, *see Rostker v. Goldberg*, 453 U.S. 57 (1981). A ruling for Plaintiff would require the Court at a minimum to disregard Supreme Court precedent, consistent congressional practice, and the persuasive rulings of every other court to have considered this issue. *See* Defendants' cross-motion to dismiss, or in the alternative, for summary judgment ("Defs.' Mot.") at 8-12, ECF No. 38.

It is undisputed that the Equal Rights Amendment ("ERA") was not, in fact, ratified by a sufficient number of States during the time periods established by Congress. The Supreme Court has long recognized such deadlines to be valid, and Congress has yet to take up the question of the timeliness and sufficiency of the ERA's ratification. Accordingly, Plaintiff's motion for summary judgment, ECF No. 30 ("Pl.'s MSJ") should be denied, and Defendants' motion to dismiss, or for summary judgment, should be granted.

## ARGUMENT

### I.    Plaintiff's Request for Extraordinary Relief Imposes a High Burden That He Fails to Meet.

Traditionally, congressional actions are afforded a presumption of constitutionality. *See Brown v. Maryland*, 25 U.S. (12 Wheat.) 419, 436 (1827) ("the presumption is in favour of every legislative act, and that the whole burthen of proof lies on him who denies its constitutionality"); *Fletcher v. Peck*, 10 U.S. (6 Cranch) 87, 128 (1810) (a court may declare an act of a legislature unconstitutional only when "[t]he opposition between the constitution and the law [is] such that the judge feels a clear and strong conviction of their incompatibility with each other"). Plaintiff thus carries the burden of showing that the longstanding congressional practice of including ratification instructions in resolutions proposing constitutional amendments is unconstitutional. Plaintiff's arguments to the contrary imply that the Court must start from the presumption that

the ERA is already an operative part of the Constitution, thereby forcing the Government to prove that it is not.  *See* Pl.'s Opp. at 1-5, ECF No. 39.  This is incorrect.  As the party who seeks to invoke the power of a "28th Amendment" that no court or branch of government has ever recognized, Plaintiff bears the burden in this case.  *See, e.g., Virginia v. Ferriero*, 525 F. Supp. 3d 36 (D.D.C. 2021) (placing burden on plaintiffs, not defendants), *aff'd sub nom. Illinois v. Ferriero*, 60 F.4th 704, 709 (D.C. Cir. 2023); *cf. Brown*, 25 U.S. at 436.

Plaintiff fails to meet his high burden here because no authority supports his argument for a judicial declaration enshrining the ERA as the "28th Amendment" of the United States Constitution.  Defendants, by contrast, have marshaled centuries of congressional practice and case law supporting Congress's authority to set a deadline for ratification of proposed constitutional amendments like the ERA.  *See* Defs.' Mot. at 8-12.  Plaintiff's attempt to diminish or distinguish portions of that authority at the margin is neither persuasive nor sufficient to overcome Defendants' arguments.

**II.    Plaintiff's Structural Arguments Are Misplaced.**

Plaintiff's arguments as to the limits of Congress's powers under the Necessary and Proper Clause and Article I of the Constitution are immaterial to this case.  *See* Pl.'s Opp. at 1-5. As the Supreme Court made clear in *Coleman v. Miller*, "Article V of the Constitution . . . alone conferred the power to amend and determined the manner in which that power could be exercised."  307 U.S. 433, 438 (1939); *see also Dillon v. Gloss*, 256 U.S. 368, 371 (1921) ("The power to amend the Constitution and the mode of exerting it are dealt with in Article [V]"). Because Article V expressly provides Congress with the power to "propose amendments to th[e] Constitution," "whenever two thirds of both Houses shall deem it necessary," U.S. Const. art. V, and because, as discussed in Defendants' opening brief, that Article V power gives Congress the authority to attach ratification instructions as conditions to amendments that it proposes, there is no reason for the Court to look to Article I for an implied grant of power to Congress to do so. *See* Defs.' Mot. at 4-5 (citing the long history of congressional exercise of its Article V power to propose amendments containing ratification deadlines—both within the text of the amendment and within the proposing resolution).

Plaintiff's opposition brief also ignores that Article V imposes its own structural safeguards on Congress's exercise of its power to propose amendments and attendant ratification deadlines.  For instance, Article V requires that Congress achieve a supermajority of two-thirds of both the House and Senate to send an amendment to the States for ratification—an even higher standard than needed to pass a law pursuant to the Necessary and Proper Cause of Article I—and it imposes limits on the types of amendments that Congress can use its power to "propose."  *See* U.S. Const. art. V.

But at the same time, Plaintiff's argument would deprive Congress of an authority that it has long exercised pursuant to Article V: the power to include ratification instructions, including a deadline for ratification, as conditions of the States' ratification of proposed amendments.  This is a power Congress has exercised for every amendment proposed in modern history.  *See* U.S. Const. amends. XVIII, § 3; XX, § 6; XXI, § 3; XXII, § 2; S.J. Res. 39, 86th Cong., 74 Stat. 1057 (1960) (Twenty-Third Amendment); S.J. Res. 29, 87th Cong., 76 Stat. 1259 (1962) (Twenty-Fourth Amendment); S.J. Res. 1, 89th Cong., 79 Stat. 1327 (1965) (Twenty-Fifth Amendment); S.J. Res. 7, 92d Cong., 85 Stat. 825 (1971) (Twenty-Sixth Amendment); H.R.J. Res. 208, 92d Cong., 86 Stat. 1523 (1972) (proposed ERA); H.R.J. Res. 554, 95th Cong., 92 Stat. 3795 (1978) (proposed D.C. Congressional Representation Amendment).  *See also* Stephen E. Sachs, *New Light on the ERA?*, The Volokh Conspiracy (Sept. 13, 2023, 8:38 a.m.), https://reason.com/volokh/2023/09/13/new-light-on-the-era/ (cited in Pl.'s MSJ at 11) ("The idea of putting legally operative language in the joint resolution wasn't an invention of the twentieth century, but a long tradition stretching back to 1803 and before."); *Coleman*, 307 U.S. at 459 (Black, J., concurring) (expressing view of four justices that "Congress has sole and complete control over the amending process, subject to no judicial review.").

## III.   Plaintiff's Attempts to Diminish Adverse Precedent and History are Unavailing.

Plaintiff's attempts to diminish or distinguish numerous authorities cited by Defendants fare no better, particularly where he cites no case law—persuasive or controlling—ever finding the ERA to be in effect.  Indeed, Plaintiff identifies no instance in which a court has taken *any* of the extraordinary steps he proposes here.  Moreover, Defendants are unaware of any case in

which a court has seen fit to use its judicial power to add a new amendment to the Constitution, much less proceed to interpret that amendment for the first time and then use it to strike down a federal statute previously blessed by the Supreme Court, as Plaintiff seeks.

## A. Defendants have not waived their ability to raise jurisdictional issues or their ability to respond to Plaintiff's attempt to distinguish *Dillon*.

Plaintiff first claims that Defendants have "waived" the ability to contest his argument that *Dillon*, 256 U.S. 368, is distinguishable because Defendants did not anticipatorily rebut his attempt to distinguish the case in their own opening brief.  Pl.'s Opp. at 5.  This misstates the concept of waiver and amounts to an erroneous argument that the Court *must* accept a plaintiff's interpretation of a Supreme Court case if the Government does not anticipatorily rebut that characterization in its dispositive motion.  *See Cubbage v. Talbots, Inc.*, No. C09-911BHS, 2010 WL 2710628, at *3 n.1 (W.D. Wash. July 7, 2010) ("Defendants are not required to anticipate the [plaintiff's] defense to the motion for summary judgment.  The reply properly presented matters related to the response.").  Moreover, as Plaintiff notes, the Government *did* raise *Dillon* in its own brief, *see* Pl.'s Opp. at 5 (citing Defs.' Mot. at 17),[1] and his arguments as to waiver should therefore be disregarded.

The same is true regarding Plaintiff's assertion that the Government has "concede[d]" standing and "that—if the 28th Amendment was properly ratified—the MSSA's registration requirement is unconstitutional."  Pl.'s Opp. at 1.  Although the Government is not raising standing arguments in this motion, it has not "conceded" standing, nor could it; it is the Court's duty to assure itself of standing.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (standing is an "irreducible constitutional minimum," without which a court does not have jurisdiction to decide the case on the merits); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").  Likewise, Defendants have not taken a position on the application of the ERA to the Military Selective Service Act ("MSSA") because the ERA does not, at present, provide a basis

---

[1] Plaintiff elsewhere faults Defendants for "rel[ying] heavily on *Dillon*," Pl.'s Opp. at 5, effectively disproving his own waiver claim.

1    for a federal claim.  *See* Defs.' Mot. at 8.  The Court similarly should not opine on this issue.  *See*

2    *United Pub. Workers of Am. (C.I.O.) v. Mitchell*, 330 U.S. 75, 89 (1947) ("[a]s is well known[,]

3    the federal courts established pursuant to Article III of the Constitution do not render advisory

4    opinions.").

5         **B.  Plaintiff's attempts to distinguish or diminish Supreme Court precedent and**

6             **Congressional practice fail.**

7         As explained in Defendants' opening brief, "the Supreme Court long ago recognized 'the

8    power of Congress . . . to fix a definite period for the ratification' of proposed amendments."  *See*

9    Defs.' Mot. at 9-10 (quoting *Dillon*, 256 U.S. at 375-76).  With respect to the ERA, it is

10   undisputed that Nevada, Illinois, and Virginia (the thirty-sixth, thirty-seventh, and thirty-eighth

11   states) voted to ratify the ERA only *after* the expiration of Congress's deadline.  *See* S.J. Res. 2,

12   79th Leg., Reg. Sess. (Nev. 2017); S.J. Res. Const. Amend. 0004, 100th Gen. Assemb., Reg.

13   Sess. (Ill. 2018); S.J. Res. 1, Gen. Assemb., Reg. Sess. (Va. 2020); *see also Dillon*, 256 U.S. at

14   376 (finding "no doubt" as to Congress's power to set such a time limit "as an incident of its

15   power to designate the mode of ratification").  Nothing in *Dillon*, or in any other case Plaintiff

16   cites, suggests the opposite to the Government's view of Congress's authority, while subsequent

17   case law of the Supreme Court and other circuits supports the Government's position.  *See*

18   *Coleman*, 307 U.S. at 452; *Ferriero*, 60 F.4th at 716-19 (citing *Dillon* and *Coleman*).

19        ***The Weight of History and Precedent Supports Defendants' Position***.  Plaintiff's

20   primary effort to distinguish *Dillon* rests on the theory that deadlines "contained in the *text* of the

21   [] Amendment" are permissible while those found in the text of congressional resolutions

22   proposing constitutional amendments are not.  Pl.'s Opp. at 6-7.  But as the D.C. Circuit

23   explained in *Illinois v. Ferriero*, that argument is hardly compelling.  *See* 60 F.4th at 719

24   ("according to the States . . . [*Dillon*]'s reasoning is confined to deadlines placed in the text of

25   the amendment, rather than in language '*separate*' from the text.  We also find this argument to

26   fall short of the clear and indisputable standard.").  Moreover, Plaintiff's argument amounts to a

27   circularity—he asserts that, under *Dillon*, the ratification deadlines at issue were effective

28   because they were eventually ratified, and that such deadlines were ratified within their

respective time limits because they were effective.  *See* Pl.'s Opp. at 6-7 ("The only tenable reading of *Dillon* relies on the fact that the deadline of the 18th Amendment was ratified by the people").  This argument is self-refuting; if what makes a ratification deadline enforceable is the fact that it was subsequently ratified, but such ratification does not achieve the force of law until the 38th State affirms, then under Plaintiff's theory the deadline would be superfluous; it would only take effect *after* its purpose had already been served.  This cannot be the case.  Rather, Congress's power to impose a deadline for ratification stems from Article V and applies regardless of whether Congress chooses to place its deadline in the proposing clause or within the proposed amendment text itself.  *See* Defs.' Mot. at 9-12.

The weakness of Plaintiff's circular argument is further exposed by the fact that Congress has for centuries included legally operative ratification instructions in the text of proposing resolutions, often rather than in the proposed amendment text itself, so as to avoid "clutter[ing] up the Constitution." 101 Cong. Rec. 6628 (1955) (statement of Sen. Estes Kefauver).  *See* Ratification of the Equal Rights Amendment, 44 Op. O.L.C., slip op. 15 (2020), https://go.usa.gov/xtJ3J ("2020 OLC Opinion").  Plaintiff cites no authority suggesting that Congress is prohibited from using its power to "propose" amendments to place the "mode" of ratification in the proposing clause of an amendment rather than its text.  That much is undeniable, *see Ferriero*, 60 F.4th at 719 (observing that "Congress has placed the mode of ratification (ratification by legislature or ratification by convention) in the proposing clause of every constitutional amendment in the nation's history"), and even Plaintiff does not argue that Congress's specification of that aspect of the "mode" of ratification in the proposing clause invalidates any of those amendments.  That is because Congress's decision to place ratification instructions as a condition of adopting an amendment in the proposing resolution rather than the text of the amendment is immaterial to the question of the condition's validity—if this were not the case, then every amendment in United States history (each of which specified the mode of ratification, *i.e.,* via legislature or via constitutional convention, in its proposing clause) would be inoperative.  *Id.*; 2020 OLC Opinion at 15 (collecting proposing resolutions); *see also Hollingsworth v. Virginia*, 3 U.S. (3 Dall.) 378, 381 n.* (1798) (proposed constitutional

1    amendments are not "ordinary cases of legislation.").

2        In other words, because deadlines contained within the text of a proposed Amendment

3    are binding during the ratification process, *see Dillon*, 256 U.S. at 375-76; Pl.'s Opp. at 6-7,

4    those same deadlines are equally effective when placed in Congress's proposing resolutions, just

5    as Congress's choice to specify the "mode" of ratification (by legislature or convention) in the

6    proposing resolution of every amendment in United States history was valid, too.  *See The*

7    *Pocket Veto Case*, 279 U.S. 655, 689 (1929) ("Long settled and established practice is a

8    consideration of great weight in a proper interpretation of constitutional provisions of this

9    character."), quoted in *Chiafalo v. Washington*, 591 U.S. ---,140 S. Ct. 2316, 2326 (2020); *see*

10   *also Coleman*, 307 U.S. at 451-53.

11       ***Plaintiff's Characterization of* Dillon *as Dicta is Immaterial***.  Plaintiff cannot and does

12   not dispute that the Court in *Dillon* recognized that the inclusion of a ratification deadline was

13   consistent with Article V.  No controlling or persuasive authority has held otherwise since.

14   Plaintiff instead attempts to characterize *Dillon*'s detailed analysis as mere *dicta*, Pl.'s Opp. at 7-

15   8, despite the fact that the Supreme Court itself, in *Coleman*, conclusively resolved the

16   precedential value of *Dillon*'s conclusion.  307 U.S. at 452  ("We have held that the Congress in

17   proposing an amendment may fix a reasonable time for ratification.").  Rarely does the Supreme

18   Court itself provide such decisive instructions to trial courts as to the intended weight of its

19   decisions.  This Court may safely rest its inquiry there.

20       But even assuming, *arguendo*, that *Dillon*'s analysis of ratification deadlines was not as

21   conclusive as the Supreme Court itself has instructed, Defendants' argument for summary

22   judgment or dismissal does not depend on characterizing *Dillon* as controlling.  *See* Defs.' Mot.

23   at 9 (observing simply that "the Supreme Court long ago recognized 'the power of Congress . . .

24   to fix a definite period for the ratification' of proposed amendments") (quoting *Dillon*, 256 U.S.

25   at 375-76).  Rather, "it is evident that [A]rticle [V] was carefully examined" in *Dillon*, "and that

26   the Court's statements with respect to the power of Congress in proposing the mode of

27   ratification were not idly or lightly made." *United States v. Sprague*, 282 U.S. 716, 732-33

28   (1931).  Under such circumstances, the Ninth Circuit has held that "[w]e do not treat considered

1  *dicta* from the Supreme Court lightly. . . .  Rather, we treat such *dicta* with due deference, as it
2  serves as a prophecy of what that Court might hold."  *McCalla v. Royal MacCabees Life Ins.*
3  *Co.*, 369 F.3d 1128, 1132 (9th Cir. 2004) (internal citations omitted).  For the same reason, the
4  D.C. Circuit rejected in the ERA context the same argument that Plaintiff raises, and held that it
5  "c[ould] not ignore the language and reasoning of *Dillon* and *Coleman*" despite the arguments to
6  the contrary raised by plaintiffs there.  *Ferriero*, 60 F.4th at 719.

7           Plaintiff's attempt to quibble with Defendants' other citations to persuasive authority,
8  such as *Taylor v. El Centro College*, No. 3:21-cv-0999-D, 2022 WL 102611, at *1 (N.D. Tex.
9  Jan. 10, 2022) (holding that "holding that "[plaintiff]'s claim under the Equal Rights Amendment
10  fails because there is no such amendment to the United States Constitution"), and *Ferguson v.*
11  *Idaho Department of Correction*, No. 4:20-cv-00003-DCN, 2020 WL 1016447, at *1 n.1 (D.
12  Idaho Mar. 2, 2020) (holding that ERA is not part of the United States Constitution), is similarly
13  unpersuasive, particularly absent citation to a *single* case supporting his own position that the
14  ERA was timely ratified.  *See* Pl.'s Opp. at 10-11.  He urges this Court to believe that those
15  courts actually implicitly determined that the ERA had been timely ratified, but nevertheless
16  refused to consider plaintiffs' arguments simply because the amendment was not yet *effective*.
17  *Id*.  This reading lacks support in the cases themselves and omits the fact that the court in
18  *Ferguson* expressly rejected this view, explaining in a footnote that the ERA "was not ratified,"
19  rather than simply resting on the fact that its effective date had not yet arrived, as Plaintiff
20  claims.  *Ferguson*, 2020 WL 1016447, at *1 n.1.  And as to *National Organization. for Women,*
21  *Inc. v. Idaho*, 459 U.S. 809 (1982) (citing the Government's argument that "the Amendment has
22  failed of adoption no matter what the resolution of the legal issues presented" and dismissing
23  ERA case as moot), Plaintiff's alternative explanation that "the deadline's expiry could have
24  made ratifications so remote a possibility that Idaho's concrete injury disappeared" belies his
25  argument: ratifications were unlikely precisely because the amendment had expired.  Pl.'s Opp.
26  at 11.

27           ***The 27th Amendment Did Not "Overrule* Dillon**.  Plaintiff argues in the alternative that
28  the Supreme Court's repeated recognition of the validity of ratification deadlines has since been

implicitly "overruled" by changed circumstances—specifically, by ratification of the 27th Amendment (which had no ratification deadline, unlike the ERA) in 1992. Pl.'s Opp. at 8-9. This argument lacks support. First, no Court has ever adopted Plaintiff's interpretation of the ratification of the 27th Amendment as undermining *Dillon* or *Coleman*. To the contrary, the D.C. Circuit's decision in *Ferriero* implies the opposite. *Ferriero* explicitly recognized the continued validity of *Dillon* and *Coleman* when considering the same issues at play in this case, as recently as February 2023—well *after* the ratification of the 27th Amendment. *See Ferriero*, 60 F.4th at 717-18 (recognizing that "*Coleman*, like *Dillon*, supports the view that Congress has the power to set a ratification deadline," and reaching that conclusion well after ratification of the 27th Amendment).

In any event, "it is the Supreme 'Court's prerogative alone to overrule one of its precedents,'" as Plaintiff has conceded with respect to his foreclosed Fifth Amendment claims. *See* Pl.'s MSJ at 2 n.1 (quoting *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997)). The same principle holds true with respect to the continued validity of *Dillon* and *Coleman*, and this Court remains bound to respect Supreme Court precedent "until it is explicitly overruled by that Court." *Nunez-Reyes v. Holder*, 646 F.3d 684, 692 (9th Cir. 2011) (quoting *United States v. Weiland*, 420 F.3d 1062, 1079 n.16 (9th Cir. 2005)). The Fifth Circuit recently reached the same conclusion in the all-male draft context, reversing the district court's finding that the factual circumstances underpinning *Rostker* had changed sufficiently to invalidate that decision, because trial courts cannot "ignore a decision from the Supreme Court unless directed to do so by the Court itself." *Nat'l Coal. for Men v. Selective Serv. Sys.*, 969 F.3d 546, 549 (5th Cir. 2020) (citation omitted), *cert. denied*, 141 S. Ct. 1815 (2021).

## IV.  Defendants' Arguments are Supported by the Weight of Historical Practice.

Plaintiff adopts a cabined reading of text and history in an effort to overcome the fact that his unique interpretation of Article V has never been adopted by a court, and has in fact been expressly rejected as recently as February 2023. *See Ferriero*, 60 F.4th at 717-19 (rejecting Plaintiff's argument, Pl.'s Opp. at 12-15, that Congress's power to "propose" amendments and their "mode of ratification" refers solely to the process of ratification either via a constitutional

convention or a legislative vote, and that ratification deadlines must be limited to the text of the amendment alone).  As demonstrated above, Congress has used its Article V proposal power to "place[] the mode of ratification (ratification by legislature or ratification by convention) in the proposing clause of every constitutional amendment in the nation's history," *Ferriero*, 60 F.4th at 719, along with other legally operative text, *see* 2020 OLC Opinion at 15 ("[t]he proposing clause for the Bill of Rights not only specified the mode of ratification but also contained a procedural instruction authorizing the state legislatures either to ratify 'all' twelve proposed articles or to ratify 'any of' them individually" (citation omitted)), and Plaintiff does not and cannot contend that this inclusion of operative text in the proposing clause renders those Amendments invalid.  *See supra* 5-7.

In light of this uninterrupted history of including binding language in proposing resolutions, there is similarly no way to confine the validity of Congress's practice of prescribing ratification deadlines to those instances where Congress does so in the text of the amendment itself alone.  Accordingly, there are no meaningful grounds to distinguish between the longstanding congressional practice of listing such deadlines in the amendment text for some amendments, as was the case for the Eighteenth, Twentieth, Twenty-First, and Twenty-Second Amendments, and its choice to do so in the proposing resolutions of others, as it did for the Twenty-Third Amendment and every constitutional amendment it has approved thereafter.  *See* Defs.' Mot. at 4-5; U.S. Const. amends. XVIII, § 3; XX, § 6; XXI, § 3; XXII, § 2; S.J. Res. 39, 86th Cong., 74 Stat. 1057 (1960) (Twenty-Third Amendment) S.J. Res. 29, 87th Cong., 76 Stat. 1259 (1962) (Twenty-Fourth Amendment); S.J. Res. 1, 89th Cong., 79 Stat. 1327 (1965) (Twenty-Fifth Amendment); S.J. Res. 7, 92d Cong., 85 Stat. 825 (1971) (Twenty-Sixth Amendment); H.R.J. Res. 208, 92d Cong., 86 Stat. 1523 (1972) (proposed ERA); H.R.J. Res. 554, 95th Cong., 92 Stat. 3795 (1978) (proposed D.C. Representation Amendment).

What Plaintiff attempts to characterize as a "short lived scheme," Pl.'s Opp. at 15, is in fact, then, an uninterrupted chain of historical evidence stretching back over 100 years.  *See Ferriero*, 60 F.4th at 719 (likewise declining to diminish this history by adopting unsupported distinctions urged by plaintiffs there); Sachs, *New Light on the ERA?* (cited in Pl.'s MSJ at 11)

("The idea of putting legally operative language in the joint resolution wasn't an invention of the twentieth century, but a long tradition stretching back to 1803 and before."). This Court should not break with over a century of congressional, judicial, and executive understanding by finding that ratification deadlines adopted by a supermajority of Congress are in fact invalid, particularly where Congress has not otherwise taken up the question of whether the ERA is part of the Constitution. *See Ferriero*, 60 F.4th at 719, *Dillon*, 256 U.S. at 375-76; *Coleman*, 307 U.S. at 451-53; 2020 OLC Opinion at 1.[2]

**V.     Plaintiff Fails to Justify His Request for Vacatur**

Plaintiff concedes that even if the Court were to take the unprecedented steps necessary to declare the existence of a new constitutional amendment and then use it to invalidate the MSSA, a declaratory judgment or injunction relieving Plaintiff alone from the potential sanctions associated with failure to register for the draft would fully redress his purported injuries. *See* Pl.'s Opp'n at 19; *id.* at 20 (further conceding the propriety of staying relief "pending appeal."). *See also Nat'l Coal. for Men v. Selective Serv. Sys.*, No. H-16-3362, 2019 WL 1902693 (S.D. Tex. Apr. 29, 2019) (declining to issue injunction despite concluding that the draft was unconstitutional and entering a declaratory judgment to that effect), *rev'd*, 969 F.3d 546, 548 (5th Cir. 2020) (reversing the declaratory judgment as well). Because Plaintiff has not established an entitlement to *any* relief, and because even if he had, a declaratory judgment giving relief to Plaintiff alone would be sufficient to redress his injuries, the Court need not reach the question of vacatur of Selective Service's regulations.

In any event, vacatur of challenged agency regulations is not "required or even the norm." *Louisiana v. Becerra*, 20 F.4th 260, 263 (5th Cir. 2021). *See also Zepeda v. INS*, 753 F.2d 719, 727, 729 n.1 (9th Cir. 1983) ("injunction[s] must be limited to apply only to the

---

[2] Like the trial court in *Virginia v. Ferriero*, 525 F. Supp. 3d 36 (D.D.C. 2021), this Court need not reach the issue of whether Nebraska, Tennessee, Idaho, Kentucky, and South Dakota validly rescinded their prior votes to ratify of the ERA in order to grant Defendants' motion to dismiss or for summary judgment, because Congress's well-established power to set a deadline on ratification itself forecloses Plaintiff's claims. *See id.* at 46. But in order to find that the ERA *has* been ratified by the required number of States, as Plaintiff claims, this Court would need to invalidate these States' recissions without any precedent to guide its decision. *See* Defs.' Mot. at 11-12.

individual plaintiffs unless the district judge certifies a class of plaintiffs," because "[plaintiffs] are not entitled to relief for people whom they do not represent. If this elementary principle were not true, there would be no need for class actions.").  Members of the Supreme Court have also sharply questioned the propriety of universal vacatur.  *See Trump v. Hawaii*, 138 S. Ct. 2392, 2425 (2018) (Thomas, J., concurring) (universal remedies are "inconsistent with longstanding limits on equitable relief and the power of Article III courts"); *United States v. Texas*, 143 S. Ct. 1964, 1985 (2023) (Gorsuch, J., concurring in the judgment) (universal vacatur requires "truly extraordinary circumstances").

Any relief must therefore be limited to Mr. Valame, the sole Plaintiff in this case.  *See, e.g., Gill v. Whitford*, 138 S. Ct. 1916, 1930 (2018) ("[A] plaintiff's remedy must be 'limited to the inadequacy that produced [his] injury.'") (citation omitted); *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) (relief must "be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs").  Where "party-specific relief can adequately protect the plaintiff's interests," entering "broader relief is an abuse of discretion." *Texas*, 143 S. Ct. at 1980, 1986.  This Court should not "make a binding judgment for the entire country," where "many [] that have not brought suit may well have accepted and even endorsed [the regulations]." *Louisiana*, 20 F.4th at 263.  Of course, the Court need not answer these questions to resolve this case.  As explained above, Plaintiff's claims lack merit.  Accordingly, no relief is warranted, and dismissal or summary judgment in Defendants' favor is appropriate at this time.[3]

---

[3] Plaintiff concedes that his entitlement to injunctive relief against President Biden is foreclosed, *see Franklin v. Massachusetts*, 505 U.S. 788, 800 (1992), and that the President is not subject to the APA.  *See* Pl.'s Opp. at 21.  His right to declaratory relief against the President is also precluded.  *See Newdow v. Roberts*, 603 F.3d 1002, 1013 (D.C. Cir. 2010).  Nevertheless, Plaintiff argues that he should be able to obtain declaratory relief based on the speculative chain of possibilities, asserting that the President may one day issue a proclamation pursuant to the MSSA that in turn causes a future injury to Mr. Valame through its hypothetical contents by imposing "the baggage of sexual stereotypes." Pl.'s Opp. at 21.  This injury is not certainly impending, and therefore can provide no grounds for relief.  *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("threatened injury must be certainly impending . . . allegations of possible future injury are not sufficient." (cleaned up)).

## CONCLUSION

For the foregoing reasons and those contained in Defendants' motion to dismiss or for summary judgment, the Court should deny Plaintiff's motion for summary judgment, grant Defendants' motion, and either dismiss the complaint or enter judgment in favor of Defendants on the official capacity claims.


Dated: November 8, 2023                    Respectfully submitted,

                                           BRIAN M. BOYNTON
                                           Principal Deputy Assistant Attorney General

                                           ALEXANDER K. HAAS
                                           Director, Federal Programs Branch

                                           TERRY M. HENRY
                                           Assistant Branch Director

                                           */s/ Andrew J. Rising*
                                           MICHAEL J. GERARDI
                                           ANDREW E. CARMICHAEL
                                              Senior Trial Counsel
                                           ANDREW J. RISING
                                              Trial Attorney
                                           Civil Division, Federal Programs Branch
                                           U.S. Department of Justice
                                           1100 L St., N.W.
                                           Washington, D.C.  20005
                                           Telephone: (202) 514-0265
                                           E-mail: andrew.j.rising@usdoj.gov

                                           *Counsel for Defendants*