Vikram Valame

4039 2nd Street Palo Alto, California 94306

208-994-3067

vik.valame@gmail.com

Pro Se *Plaintiff*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

|  |  |
|---|---|
| Vikram Valame, | Case Number: 5:23-cv-03018-NC |
| Plaintiff, |  |
| vs. | **Supplemental Brief in Support of Plaintiff's Motion for Summary Judgment** |
| Joseph Robinette Biden, President of the United States, et al., |  |
|  | Hon. Nathanael Cousins |
| Defendants. |  |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................ii

**SUPPLEMENTAL BRIEF** ..................................................................................................1

**I.**     **Article III Standing: Legal Framework** ...........................................................1

**II.**    **Injury In Fact** ........................................................................................................1

   A.  **Threat of Investigation or Enforcement** ............................................................2

     a.  **The Threat of Investigation or Enforcement Exists and is Concrete Injury** .............2

     b.  **The Threat of Investigation or Enforcement is Particularized** ...................................4

   B.  **Discriminatory Competition for Government Benefits** ........................................5

   C.  **Invidious Sex Discrimination** ............................................................................6

     a.  **Invidious Discrimination is Concrete Injury** ..................................................7

     b.  **Plaintiff is Subject to Particularized Discrimination** ........................................8

**III.**   **Traceability** ...........................................................................................................9

**IV.**    **Redressability** .......................................................................................................9

**V.**     **Prudential Standing** .........................................................................................10

**VI.**    **Conclusion** ..........................................................................................................12

# TABLE OF AUTHORITIES

CASES

*Allen v. Wright*, 468 U.S. 737, 755 (1984) ............................................................................6, 8, 9

*Arizona v. Yellen*, 34 F.4th 841, 850 (9th Cir. 2022) ..........................................................................2

*Ayotte v. Planned Parenthood of Northern New Eng.*, 546 U.S. 320, 330 (2006) ......................................................10

*Baker v. Carr,* 369 U.S. 186, 207 (1962) ..........................................................................................7

*Barr v. American Assn. of Political Consultants, Inc.,* 140 S. Ct. 2335, 2355 (2020) ....................................................10

*Bennett v. Spear*, 520 U.S. 154, 175-176 (1997) ..............................................................................11

*Bittner v. United States*, 143 S. Ct. 713, 720 (2023) ..............................................................................8

*Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644, 653 (9th Cir. 2021) ....................................................................3, 6

*Collins v. Yellen*, 141 S. Ct. 1761, 1779 (2021) ..................................................................................9

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2017) ...........................................................4

*Davis v. Guam*, 785 F.3d 1311, 1315 (9th Cir. 2015) ......................................................................7, 9

*Elgin v. Dept. of Treasury*, 567 U.S. 1 (2012) ....................................................................................5

*Evers v. Dwyer*, 358 U. S. 202, 204 (1958) .......................................................................................6

*FEC v. Cruz*, 142 S. Ct. 1638, 1647 (2022) ..................................................................................1, 6

*Gratz v. Bollinger*, 539 U.S. 244, 262 (2003) ...................................................................................6

*Heckler v. Mathews*, 465 U.S. 728, 737 (1984) ..............................................................................7, 10

*Jones v. L. A. Cent. Plaza, LLC*, 74 F.4th 1053, 1056 (9th Cir. 2023) ...............................................................1

*Kyle-Labell v. Selective Serv. Sys.* 364 F. Supp. 3d 394 (D.N.J. 2019) ...........................................................7

*Laufer v. Arpan LLC,* 29 F.4th 1268, 1285 (11th Cir. 2022) .....................................................................8, 9

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014) ..........................................10

*Libertarian Nat'l Comm., Inc. v. Fed. Election Comm'n*, 924 F.3d 533, 538 (D.C. Cir. 2019) ..........................6

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-560 (1992) ....................................................................1, 2, 4

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225 (2012) ..........................11

*Meland v. Weber*, 2 F.4th 838, 849 n.7 (9th Cir. 2021) ........................................................................11

*Men v. Selective Serv. Sys. & Lawrence G. Romo*, No. 13-56690, 3 (9th Cir. 2016) ..........................................9

*National Coalition for Men v. Selective Service System*, 4:16-cv-03362, Dkt. 44, (CAND 2016) ..............................7

*Northeastern Fla. Chapter of the Associated Gen. Contractors of America v. Jacksonville*, 508 U.S. 656, 666 (1993)
.................................................................................................................................2

*Organized Vill. of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956, 966 n.10 (9th Cir. 2015)............................2

*Orr v. Orr* 440 U.S. 268, 283 (1979).................................................................................................2

*Pershing Park Villas Homeowners Ass'n v. United Pac. Ins. Co.*, 219 F.3d 895, 899 (9th Cir.2000)........11

*Regents of Univ. of California v. Bakke*, 438 U.S. 265, 280 n.14 (1978) (Powell, J.) ..................................6

*Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1161 (9th Cir. 2007) .........................................................3

*Sanchez v. L. A. Dep't of Transp.,* 39 F.4th 548, 554 (9th Cir. 2022)......................................................8

*Shaw v. Hunt*, 517 U.S. 899, 904 (1996) ................................................................................................8, 9

*Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1548 n.7 (2016)..........................................................................5

*Steel Co. v. Citizens for Better Environment*, 523 U. S. 83, 103 (1998)...................................................1

*Steffel v. Thompson*, 415 U.S., 452 at 459 (1974).....................................................................................2

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)...............................................................2, 3

*Thompson v. N. Am. Stainless*, 562 U.S. 170, 176 (2011) .........................................................................5

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021)......................................................................8

*United States v. Virginia*, 518 U.S. 515 at 533 (1996) ..............................................................................7

*Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.* 454 U.S. 472 (1982)....4

*Warth v. Seldin,* 422 U.S. 490, 500 (1975)................................................................................................1

*Wayte v. United States*, 470 U.S. 598, 612–613 (1985).............................................................................4

STATUTES

5 U.S.C. §3328 ...........................................................................................................................................5

5 U.S.C. §702 .............................................................................................................................................9

5 U.S.C. §706(2)(B) .................................................................................................................................11

50 U.S.C. §3801 .........................................................................................................................................1

50 U.S.C. §3802(a).....................................................................................................................................9

OTHER AUTHORITIES

Brief in Opposition at 20, National Coalition for Men v. Selective Service System, No. 20-928 (April 14, 2021)......7

Gerald E. Shenk, "Work or fight: Selective Service and Manhood in the Progressive Era" (1992)...........7

Gregory Korte, For a Million U.S. Men, Failing to Register For the Draft has Serious, Long-term consequences, USA Today, April 3, 2019, https://www.usatoday.com/story/news/nation/2019/04/02/failing-register-draft-women-court-consequences-men/3205425002/ ..................................................................................4, 5

Reply in Support of Motion to Dismiss at 13, *National Coalition For Men v. Selective Service System,* No. 4:16-cv-03362 (Southern District of Texas July. 15, 2013) ................................................................................................3

RULES

F.R.C.P. 12(g)(2) ...........................................................................................................................12

Federal Rule of Evidence 408(a) ....................................................................................................3

REGULATIONS

32 C.F.R. Subtitle B, Chapter XVI, § 1615.4 ..................................................................................9

CONSTITUTIONAL PROVISIONS

U.S. Const Amend. V .....................................................................................................................7

U.S. Const. Amend XXVIII §1.............................................................................................2, 7, 11

**SUPPLEMENTAL BRIEF**

Pursuant to the Court's order of December 13 (ECF 49), Plaintiff submits the following supplemental brief as well as the attached First Amended Complaint (the "**FAC**") and Supplemental Declaration of Vikram Valame in support of Plaintiff's Motion for Summary Judgment (ECF 30). This brief will discuss only whether Plaintiff has Article III Standing and Prudential Standing to raise his claims.

I.  **Legal Framework**

To establish subject-matter jurisdiction under Article III of the constitution, a party invoking the power of a federal court must demonstrate (1) an "injury in fact" that is (2) traceable to the defendants, and (3) redressable by a favorable judicial ruling. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-560 (1992).

Due to the summary judgment posture of this case, Plaintiff must "establish that there [is] no genuine dispute as to any material fact regarding his Article III standing" *Jones v. L. A. Cent. Plaza, LLC*, 74 F.4th 1053, 1056 (9th Cir. 2023) (internal quotation marks omitted).

While this Court must examine Plaintiff's factual claims under the Rule 56 standard, "[f]or standing purposes, we accept as valid the merits" of a party's "legal claims". *FEC v. Cruz*, 142 S. Ct. 1638, 1647 (2022). Thus, this court must assume that Plaintiff is correct about the status of the 28th Amendment and that the Military Selective Service Act (50 U.S.C. §3801 *et seq.*) (the "**MSSA**") "unconstitutionally burdens" Plaintiff. *Ibid*, *see also Warth v. Seldin,* 422 U.S. 490, 500 (1975) ("[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal.").

II.  **Injury In Fact**

Injury in fact is the "[f]irst and foremost" of standing's three elements. *Steel Co. v. Citizens for Better Environment*, 523 U. S. 83, 103 (1998). To establish an injury in fact, a party invoking federal jurisdiction must plead and prove an invasion of a legally protected interest that is (a)

concrete, (b) particularized, and (c) "actual or imminent, not conjectural or hypothetical". *Lujan*, 504 U.S. at 559-60.

In this case, there are three injuries identified in the amended complaint that flow from the MSSA and its implementing regulations due to Plaintiff's willful refusal to register for the draft. FAC at ¶23. Firstly, Plaintiff is harmed by Defendants' threats to enforce the registration and reporting requirements of the MSSA. FAC at ¶24, 25, 34, 36. Secondly, the government has erected "a barrier that makes it more difficult for" men "to obtain a benefit than it is for" women by conditioning Executive Branch jobs that Plaintiff is applying for on his Selective Service registration. *Northeastern Fla. Chapter of the Associated Gen. Contractors of America v. Jacksonville*, 508 U.S. 656, 666 (1993); FAC ¶40-51. Finally, the government subjects Plaintiff to the "baggage of sexual stereotypes" and denies him the "equality of rights under the law" specifically guaranteed by the 28th Amendment. *Orr v. Orr* 440 U.S. 268, 283 (1979); U.S. Const. Amend XXVIII §1; FAC at ¶38. Such a deprivation causes tangible emotional injury, FAC at ¶39, and constitutes concrete and particularized injury event absent specific tangible harms.

Plaintiff's injuries all stem from the MSSA, and as long as one of them satisfies the requirements of Article III, the court "need not consider other possible bases for Article III standing" *Organized Vill. of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956, 966 n.10 (9th Cir. 2015).

    **A. Threat of Investigation or Enforcement**

        **a. The Threat of Investigation or Enforcement Exists and is Concrete Injury**

The Supreme Court has consistently held that "the threatened enforcement of a law creates an Article III injury." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (collecting cases). However, a threat of prosecution must be realistic, not "chimerical." *Steffel v. Thompson*, 415 U.S., 452 at 459 (1974). To determine whether a threat exists, the court should consider (1) whether Plaintiff has alleged a concrete plan to violate the law, (2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and (3) the history of enforcement. *Arizona v. Yellen*, 34 F.4th 841, 850 (9th Cir. 2022).

Plaintiff satisfies the first factor; he has "done more than announce an intention" to violate the law and has indeed actually violated it through a knowing and willful failure to register. *Ibid*; Supplemental Valame Declaration ¶3. Plaintiff has additionally manifested a

concrete plan to not obey the reporting requirements of the MSSA's implementing regulations. FAC at ¶24-25; Supplemental Valame Declaration ¶4. If a mere "intention" to engage in "arguably" proscribed conduct suffices, Plaintiff's actual acts that *certainly* violate the MSSA satisfy this factor *a fortiori*. *See Susan B. Anthony List*, 573 U.S. at 161 (prior statements subject to challenged law demonstrated likelihood of enforcement).

The second factor also tips in favor of Plaintiff for three reasons. Firstly, the government's "refusal to disavow enforcement" of the MSSA against Plaintiff is "strong evidence that" the government intends to enforce the challenged laws and regulations. *Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644, 653 (9th Cir. 2021). In this case, the government has not only failed to disavow enforcement of the MSSA but has also affirmatively refused Plaintiff's request to stay enforcement against Plaintiff specifically pending the outcome of this litigation. FAC at ¶37; Supplemental Valame Declaration ¶5-6[1].

Secondly, in other proceedings, the government has expressly contrasted registrants who face no enforcement action from non-registrants who do. *See* Reply in Support of Motion to Dismiss at 13, *National Coalition For Men v. Selective Service System,* No. 4:16-cv-03362 (Southern District of Texas July. 15, 2013) ("the fact that Lesmeister has already complied with the law is fatal to his claim to standing" but "[h]e was free to decline to register and challenge the statute at that point").

Thirdly, the government has consistently and publicly claimed intent to enforce the MSSA. *See* MSJ Exhibit B at 3 (threatening "investigation and prosecution" for non-registrants and abettors); MSJ Exhibit C at 3 (sending threatening letters using public school address records). The Government website for defendant U.S. Attorney Ismail Ramsey conspicuously states that every employee in his office must be registered with the Selective Service if covered by the MSSA. MSJ Exhibit D at 5. The Selective Service has reaffirmed that penalties for failure

---

[1] The government notes that Rule 408 prevents introduction of certain communications made during settlement discussions "either to prove or disprove the validity or amount of a disputed claim". Federal Rule of Evidence 408(a). However, Plaintiff introduces this evidence to satisfy the "jurisdictional requirements of an action for declaratory relief", not to establish the validity of his claims under the 5th or 28th Amendment. *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1161 (9th Cir. 2007). Rule 408 thus does not apply.

Plaintiff's Motion for Summary Judgment            3            Case No. 5:23-cv-03018-NC

to register are essential to the success of the program: "If there were no penalties for failing to register, the rates would plummet, and fairness and equity would go out the window."[2]

The third factor—history of enforcement—does not outweigh the first two factors. Although Plaintiff has been unable to locate records of criminal convictions after 1986, ample other evidence of enforcement exists. The Selective Service has indicated that it issues tens of thousands of status information letters each year, both "favorable and unfavorable". Exhibit E at 3. These status letters are a prerequisite to appealing an adverse agency decision enforcing the MSSA and demonstrate that the MSSA is not a moribund statute. Additionally, the government has a much richer history of enforcement against individuals—like Plaintiff—who have informed the government of their refusal to register by certified mail. *See*, e.g., *Wayte v. United States*, 470 U.S. 598, 612–613 (1985) (defendant wrote letters to the government that "provided strong, perhaps conclusive evidence" of criminal failure to register). This specific threat is even more credible because of the government's refusal to disavow enforcement while litigation is pending.

### b. The Threat of Investigation or Enforcement is Particularized

For an injury to be "particularized", it "must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560. Here, Plaintiff is complaining that he "personally has suffered some actual or threatened injury" of enforcement as opposed to a grievance about enforcement or threatened enforcement of the MSSA against third parties. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.* 454 U.S. 472 (1982). Thus, Plaintiff has particularized injury even if the Court relies on evidence of enforcement against others to determine his injuries are credible. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2017) ("though insufficient by themselves to grant standing" past wrongs are "evidence bearing on whether there is a real" threat of injury).

At the December 13th hearing on the parties' cross-motions for summary judgment, the Court expressed skepticism that Plaintiff could assert a widely shared injury, especially without class action allegations. However, particularized injury still exists when where the harms alleged

---

[2] Gregory Korte, For a Million U.S. Men, Failing to Register For the Draft has Serious, Long-term consequences, USA Today, April 3, 2019, https://www.usatoday.com/story/news/nation/2019/04/02/failing-register-draft-women-court-consequences-men/3205425002/

| Plaintiff's Motion for Summary Judgment | 4 | Case No. 5:23-cv-03018-NC |

by Plaintiff are shared by many men.³ The Supreme Court's analysis in *Spokeo* speaks directly to the question: "The fact that an injury may be suffered by a large number of people does not of itself make that injury a nonjusticiable generalized grievance. The victims' injuries from a mass tort, for example, are widely shared, to be sure, but each individual suffers a particularized harm." *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1548 n.7 (2016). Requiring class allegations would be tantamount to determining that the MSSA cannot be challenged by *anyone*, as the existence of class allegations "adds nothing to the question of standing" by itself. *Id*, at 1547 n.6.

### B. Discriminatory Competition for Government Benefits

Even if the Court finds that the threatened enforcement of the MSSA against Plaintiff as a citizen is unlikely, the challenged provisions still inflict concrete and particularized injury on Plaintiff as an applicant for federal service.

Plaintiff has applied for two paid student intern positions within the executive branch. FAC at ¶42-43; Supplemental Valame Declaration ¶8, 10. Although he meets the minimum qualifications for a student internship, Plaintiff is "ineligible" for executive branch service because of his "knowing and willful" refusal to register. 5 U.S.C. §3328; FAC at ¶41, 49; Supplemental Valame Declaration ¶11, 14.

Lost employment opportunities "undoubtedly" constitute an injury-in-fact, as Plaintiff is being concretely deprived of government benefits attached to his particularized job applications. *Thompson v. N. Am. Stainless*, 562 U.S. 170, 176 (2011). Although Plaintiff has not been denied employment yet, the risk of enforcement is far more than "realistic". The government has fired many employees for failure to register. Korte, *supra* note 2. Defendants have actively defended those firings in administrative proceedings and lawsuits going all the way to the Supreme Court. *See Elgin v. Dept. of Treasury*, 567 U.S. 1 (2012). The NRC application form and the websites of both agencies Plaintiff applied to indicate that registration is mandatory for all male applicants subject to the MSSA, indicating an intent to enforce the employment bar. FAC at ¶44, 46; Supplemental Valame Declaration ¶11, 15. Defendants refusal to disavow enforcement of the

---

³ And women. *See Kyle-Labell v. Selective Serv. Sys.* 364 F. Supp. 3d 394 (D.N.J. 2019)

Plaintiff's Motion for Summary Judgment        5        Case No. 5:23-cv-03018-NC

challenged provisions as applied to Plaintiff's job applications provides further "strong evidence" of intended enforcement. *Cal. Trucking Ass'n*, at 653.[4]

Plaintiff's injury would exist even if the MSSA is not the "but-for" cause of the government's refusal to hire him. The Supreme Court has held that if a Plaintiff has an "intent" to seek some benefit from the government, the denial of an equal "opportunity to compete" constitutes Article III injury. *Gratz v. Bollinger*, 539 U.S. 244, 262 (2003) (collecting cases). "[E]ven if [Plaintiff] had been unable to prove that he would have been admitted in the absence of the special program, it would not follow that he lacked standing" but only that "relief" on the merits may be altered. *Regents of Univ. of California v. Bakke*, 438 U.S. 265, 280 n.14 (1978) (Powell, J.).

Plaintiff's injury is also not the kind of "self-inflicted" harm that "does not amount to an 'injury' cognizable under Article III," *Libertarian Nat'l Comm., Inc. v. Fed. Election Comm'n*, 924 F.3d 533, 538 (D.C. Cir. 2019). Plaintiff did not apply to the student internships to manufacture standing. FAC at ¶48; Supplemental Valame Declaration ¶16. Even if he had, the Supreme Court has squarely held that "injury resulting from the application or threatened application of an unlawful enactment remains fairly traceable to such application, even if the injury could be described in some sense as willingly incurred." *FEC v. Cruz*, 142 S. Ct. 1638, 1645 (2022); *see also Evers v. Dwyer*, 358 U. S. 202, 204 (1958) (per curiam) (that the plaintiff subjected himself to discrimination "for the purpose of instituting th[e] litigation" did not defeat his standing).

**C. Invidious Sex Discrimination**

The MSSA inflicts cognizable harm by inflicting upon Plaintiff the "stigmatizing injury" that is "is one of the most serious consequences of discriminatory government action and is sufficient in some circumstances to support standing" *Allen v. Wright*, 468 U.S. 737, 755 (1984). For at least a hundred years the Selective Service has framed "obedience" as "an essential element of manhood" in reflection of a supposedly universal principle that "[t]hat men govern,

---

[4] Even if the Government decides to voluntarily cease compliance with the MSSA and accept Plaintiff's job applications, the existence of the MSSA and the statutory employment bar make it far from "absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur" *Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167 at 190 (2000).

and that only men go to war." Gerald E. Shenk, "Work or fight: Selective Service and Manhood in the Progressive Era" (1992) pp. 2, 351[5]. The Selective Service's reliance on these "overbroad generalizations about the different talents, capacities, or preferences of males and females" gives rise to the exact equal protection injury that animates the 5th and 28th Amendments (even if the practice is constitutional on the merits). *United States v. Virginia*, 518 U.S. 515 at 533 (1996); *see also* Brief in Opposition at 20, National Coalition for Men v. Selective Service System, No. 20-928 (April 14, 2021) (conceding that "petitioners might be able to assert a similar stigmatic harm here" if they could show a "present, ongoing inequality").

### a. Invidious Discrimination is Concrete Injury

The Supreme Court has made clear that the right to be free of gender discrimination is "not a substantive right to any particular" benefit and thus a Plaintiff's Article III standing "does not depend on his ability to obtain increased" benefits. *Heckler v. Mathews*, 465 U.S. 728, 737 (1984); *see also Baker v. Carr,* 369 U.S. 186, 207 (1962) ("constitutionally unjustifiable inequality" alone creates standing for individual voters).

The Ninth Circuit has applied this precedent even where the allegedly stigmatizing act occurs only once and has no "tangible" effect on a Plaintiff. *Davis v. Guam*, 785 F.3d 1311, 1315 (9th Cir. 2015). Since Plaintiff's "continuing obligation" to register under the MSSA is even more odious than the scheme struck down in *Guam*—a non-coercive classification to administer a symbolic referendum—concrete injury necessarily exists here. Indeed, both district courts that have considered the question in the Selective Service context have found that the registration requirement imposes cognizable stigmatic injury. *See Kyle-Labell v. Selective Serv. Sys.* 364 F. Supp. 3d 394 (D.N.J. 2019); *National Coalition for Men v. Selective Service System*, 4:16-cv-03362, Dkt. 44, (CAND 2016).

Plaintiff is in an even stronger position than prior plaintiffs in *Kyle-Laball* and *NCFM* because he alleges injury under the 28th Amendment, which specifically guarantees "equality of rights under law" without requiring a deprivation of the "life, liberty, or property" protected by the Fifth Amendment. *Compare* U.S. Const Amend. XXVIII *with* U.S. Const Amend. V.

---

[5] *available at* https://www.proquest.com/docview/304009616

Requiring that deprivation impact some other interest in order to be cognizable would contradict the rule of interpretation that when an instrument "includes particular language in one section" but "omits it from a neighbor, we normally understand that difference in language to convey a difference in meaning." *Bittner v. United States*, 143 S. Ct. 713, 720 (2023). Because the 28th Amendment applies to any deprivation of equality based on sex and "traditional harms may also include harms specified by the Constitution itself", if Plaintiff alleges a particularized violation of the 28th Amendment, he has also alleged a concrete injury. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021); *see also Sanchez v. L. A. Dep't of Transp.,* 39 F.4th 548, 554 (9th Cir. 2022) (finding that alleged 4th Amendment injury was concrete despite lack of enforcement or monetary harm)*; Laufer v. Arpan LLC,* 29 F.4th 1268, 1285 (11th Cir. 2022) (Newsom J., Concurring) (explaining that the Court's citation to 1st amendment cases "*Pleasant Grove* and *Lukumi*" appears "to stand in for decisions concerning constitutional harms more generally.").[6]

Finally, to the extent the court finds that discrimination is not *per se* concrete injury, the emotional injuries suffered by plaintiff flowing from defendants' discrimination establishes personal concrete harm of its own. FAC at ¶39; Supplemental Valame Declaration ¶17. *Laufer v. Arpan LLC*, 29 F.4th 1268, 1274-1275 (11th Cir. 2022).

### b. Plaintiff is Subject to Particularized Discrimination

Although invidious discrimination is always a concrete injury, Plaintiff must show that he "personally has been subjected to a" suspect "classification" in order to satisfy the particularity requirement of Article III. *Shaw v. Hunt*, 517 U.S. 899, 904 (1996). This standard prohibits claims that "would extend nationwide to all members of the particular . . . groups against which the Government was alleged to be discriminating" preventing—for example—"a black person in Hawaii" from challenging "the grant of a tax exemption to a racially discriminatory school in Maine" on the theory that all black people are injured by such discrimination. *Allen*, 468 U.S. at 756.

Plaintiff fits comfortably within the bounds of Article III particularity because he himself is one of the "male citizen[s] of the United States . . . between the ages of eighteen and twenty-six" faced with a discriminatory obligation to "present himself for registration" with the

---

[6] Of course, once the Court has found standing, it must examine whether the 28th Amendment provides a basis for a federal claim. That is a question on the merits.

Selective Service. 50 U.S.C. §3802(a). The MSSA subjects *Plaintiff* personally to a "classification" in a manner not shared by "all members of the particular group" being discriminated against. *Allen*, 468 U.S. at 756. Since Plaintiff is himself subject to this discriminatory classification, the fact that many other men can raise the same claim is of no moment. *See Shaw*, 517 U.S. at 904 (every voter in House district 12 had standing); *Guam*, 785 F.3d at 1314-15 (every non-native voter in Guam).

An even more straightforward analysis applies to the psychological arms caused by discrimination against Plaintiff. The "frustration" and "anxiety" alleged in the complaint and supporting declaration are personal to the Plaintiff and no one else. *Laufer* 29 F.4th at 1275.

### III.    Traceability

"For purposes of traceability, the relevant inquiry is whether the plaintiffs' injury can be traced to allegedly unlawful conduct of the defendant," *Collins v. Yellen*, 141 S. Ct. 1761, 1779 (2021) (internal quotation marks omitted). The Selective Service officials and agency defendants have clearly contributed to Plaintiff's injuries by issuing sex-discriminatory regulations that trigger the enforcement and employment bar provisions of the MSSA while subjecting Plaintiff to sexual stereotyping. *See* 32 C.F.R.  Subtitle B, Chapter XVI, § 1615.4. Defendants conceded that the Selective Service and its director take full responsibility for the registration requirements. Defendants' Cross-Motion to Dismiss, 12 n.6.

The U.S. attorney for the Northern District of California also enforces the MSSA, as explained on his website for job applicants and in his capacity as a prosecutor. MSJ Exhibit C.

Finally, the United States Federal Government is a named defendant in this case, as permitted by the APA. 5 U.S.C. §702. The agencies and officials of the Federal Government are certainly involved in the enforcement of the MSSA in the criminal, civil, or administrative contexts, and an injunction may run against the Federal Government as a whole, meaning that Plaintiff need not trace harm to any specific named official defendant at this juncture. *Ibid*.

### IV.    Redressability

The Ninth Circuit has expressly held that Plaintiff's injuries are redressable "either by extending the burden of registration to women or by striking down the requirement for men" *Men v. Selective Serv. Sys. & Lawrence G. Romo*, No. 13-56690, 3 (9th Cir. 2016) (nonprecedential). A registration requirement that no longer applied to Plaintiff or that applied in

a nondiscriminatory manner would no longer violate the 28th Amendment on its face, and relief ordering such a change would thus redress his equality-based injuries. *Heckler* 465 U.S. at 737.

Any argument that Plaintiffs injuries are not redressed by extending the registration requirement to women fails for the same reason that Plaintiff's injuries do "not depend on his ability to obtain increased" benefits. *Id* at 737-738. The remedy is a "mandate of equal treatment, a result that can be accomplished by withdrawal of benefits from the favored class". *Id* at 740. *See also Barr v. American Assn. of Political Consultants, Inc.,* 140 S. Ct. 2335, 2355 (2020) ("Invalidating and severing" an "exception fully addresses" equal-treatment injury.").

The government may also contend that Congress has not authorized the registration of women, and that the Selective Service is powerless to register women absent a new enactment. Defendants' Cross-Motion to Dismiss, 15. But, assuming Plaintiff's legal arguments are correct, the current statutory scheme is unconstitutional. Therefore, "the touchstone for any decision about remedy is legislative intent" about what to do given the constitutional infirmity in the originally enacted law, not what is presently authorized by an unconstitutional law. *Ayotte v. Planned Parenthood of Northern New Eng.*, 546 U.S. 320, 330 (2006). While the ultimate question of *what* remedy to provide may be difficult to answer, the Supreme Court's equal-treatment jurisprudence makes clear that *some* remedy will be provided to redress plaintiff's equality-based injuries, either by extending registration to women or striking the system down either as it applies to plaintiff through an injunction or more generally through vacatur. That is all Article III requires.

V. **Prudential Standing**

To the extent that the Court wished to receive briefing on "prudential standing", Plaintiff offers the following remarks.

Prudential standing likely does not exist. In *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014), the Supreme Court explained that the question was not what "prudence" required in the abstract, but rather "whether a legislatively conferred cause of action encompasses a particular plaintiff's claim". Since Plaintiff is suing under the APA, this test is not "especially demanding," and "forecloses suit only when a plaintiff's 'interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be

assumed that" a cause of action exists. *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225 (2012).

When evaluating this "zone of interests" test, the court looks to "the particular provision of law upon which the plaintiff relies" for the substance of his claim. *Bennett v. Spear*, 520 U.S. 154, 175-176 (1997). The court does not have to look very hard, because the provision relied on by Plaintiff is the 28th Amendment, which obviously protects his asserted interests in sex-equality. U.S. Const. Amend. XXVIII §1. The APA thus commands this court to "set aside" the MSSA's enforcement and implementing regulations as "contrary to constitutional right". 5 U.S.C. §706(2)(B).

To the extent that the United States may assert that other prudential doctrines counsel against this court exercising jurisdiction over plaintiff's constitutional claims, its arguments run into a "federal court's virtually unflagging obligation to hear and decide cases within its jurisdiction," *Meland v. Weber*, 2 F.4th 838, 849 n.7 (9th Cir. 2021). Doctrines like "prudential mootness" and abstention have no role to play in this case where the issue of the MSSA's constitutionality is directly before the court. *Ibid* (refusing to apply prudential mootness in the Ninth Circuit). The abstention doctrines recognized by the Supreme Court as overcoming this unflagging obligation usually require parallel proceedings or strong federalism interests to be invoked. Nothing of the sort exists here.[7]

Finally, "a party waives objections to nonconstitutional standing not *properly* raised before the district court" *Pershing Park Villas Homeowners Ass'n v. United Pac. Ins. Co.*, 219 F.3d 895, 899 (9th Cir.2000) (emphasis added). Lack of prudential standing was a defense "available to the [Government] but omitted from its earlier" motion to dismiss. F.R.C.P.

---

[7] Three Justices have expressed their view that "deference to Congress" on military issues "cautions against granting review while Congress actively weighs" the sex-discriminatory draft registration requirement. *National Coalition for Men v. Selective Serv. Sys.* 141 S. Ct. 1815 (2021) (Sotomayor J., respecting the denial of certiorari). While deference to Congress may have shaped the Supreme Court's discretionary docket, it cannot relieve this court of its mandatory obligation to say what the law is. In any event, congress's failure to pass a law in the past 30 months also demonstrates that deference is no longer warranted.

12(g)(2). The government has therefore waived, or at least forfeited, prudential standing as a ground to dismiss Plaintiff's complaint.

VI.    **Conclusion**

This Court should find that the undisputed facts in this case prove that Plaintiff has Article III standing and prudential standing to raise his claims under the 5th and 28th Amendments.

Date: December 19th, 2023        Sign Name: _____

Print Name: Vikram Valame