BRIAN M. BOYNTON
    Principal Deputy Assistant Attorney General
ALEXANDER K. HAAS
    Director, Federal Programs Branch
TERRY M. HENRY
    Assistant Branch Director
ANDREW E. CARMICHAEL
MICHAEL J. GERARDI
    Senior Trial Counsel
ANDREW J. RISING
    Civil Division, Federal Programs Branch
    U.S. Department of Justice
    1100 L St., N.W.
    Washington, D.C.  20005
    Telephone: (202) 514-0265
    E-mail: andrew.j.rising@usdoj.gov

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIKRAM VALAME,<br><br>      Plaintiff,<br><br>   v.<br><br>JOSEPH R. BIDEN, President of the United States, *et. al.*,<br><br>      Defendants. | CASE NO.  5:23-cv-3018 NC<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFF'S AMENDED COMPLAINT AND SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

ARGUMENT .......................................................................................................1

I.     Article III Standing...........................................................................................1

     A.    Present Injury ...................................................................................3

     B.    Future Injury ...................................................................................3

     C.    Stigmatic Injury ...............................................................................6

II.    Prudential Considerations ................................................................................8

CONCLUSION....................................................................................................10

1

## <u>TABLE OF AUTHORITIES</u>

2

**<u>Cases</u>**

3
*Alamo v. Clay,*
4   137 F.3d 1366 (D.C. Cir. 1998) .................................................................................7

5
*Allen v. Wright,*
6   468 U.S. 737 (1984) .................................................................................................6

7
*Bennett v. Spear,*
8   520 U.S. 154 (1997) .................................................................................................8

9
*Biszko v. RIHT Fin. Corp.,*
    758 F.2d 769 (1st Cir. 1985) .....................................................................................6

10
*Brown v. Hotel & Rest. Emps. & Bartenders Int'l Union Loc. 54,*
11   468 U.S. 491 (1984) .................................................................................................3

12
*Caldwell v. Caldwell,*
    545 F.3d 1126 (9th Cir. 2008) ..................................................................................7
13
*California Trucking Association v. Bonta,*
14   996 F.3d 644 (9th Cir. 2021) .................................................................................4, 5

15
*Clapper v. Amnesty Int'l USA,*
16   568 U.S. 398 (2013) .............................................................................................3, 6

17
*Davis v. Fed. Election Comm'n,*
    554 U.S. 724 (2008) .................................................................................................3
18
*Dep't of Navy v. Egan,*
19   484 U.S. 518, 530 (1988) .........................................................................................8

20
*Diamond v. Charles,*
21   476 U.S. 54 (1986) .................................................................................................7

22
*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
23   528 U.S. 167 (2000) .................................................................................................2

24
*Gonzalez v. U.S. Immigration and Customs Enf't,*
    975 F.3d 788 (9th Cir. 2020) ....................................................................................3
25
*Gov't Employees Ins. Co. v. Dizol,*
26   133 F.3d 1220 (9th Cir. 1998) ..................................................................................3

27
*Heckler v. Mathews,*
28   465 U.S. 728 (1984) .................................................................................................6

*Kerchner v. Obama,*
   612 F.3d 204 (3d Cir. 2010) ...................................................................................7

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
   511 U.S. 375 (1994) ...............................................................................................2

*Lance v. Coffman,*
   549 U.S. 437 (2007) ...............................................................................................7

*Lee v. Oregon,*
   107 F.3d 1382 (9th Cir. 1997) ...............................................................................3

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992) ...............................................................................................2

*Massachusetts v. EPA,*
   549 U.S. 497 (2007) ...............................................................................................1

*Montana Env't Info. Ctr. v. Stone-Manning,*
   766 F.3d 1184 (9th Cir. 2014) ...............................................................................3

*Munns v. Kerry,*
   782 F.3d 402 (9th Cir. 2015) .................................................................................4

*NAACP v. Horne,*
   626 F. App'x 200 (9th Cir. 2015) .........................................................................7

*NAACP v. Horne,*
   No. CV 13-01079, 2013 WL 5519514 (D. Ariz. Oct. 3, 2013) ..............................6

*Nat'l Coal. for Men v. Selective Serv. Sys.,*
   141 S. Ct. 1815 (2021) ...............................................................................7, 8, 9, 10

*Parker v. District of Columbia,*
   478 F.3d 370 (D.C. Cir. 2007), *aff'd sub nom. District of Columbia v. Heller,* 554 U.S. 570 (2008) ........................................................................................................................4

*Raines v. Byrd,*
   521 U.S. 811 (1997) ...............................................................................................2

*Rostker v. Goldberg,*
   453 U.S. 57 (1981) .................................................................................................9

*Spokeo, Inc. v. Robins,*
   136 S. Ct. 1540 (2016) ...........................................................................................1

*Summers v. Earth Island Inst.,*
   555 U.S. 488 (2009) ...............................................................................................2

*Valame v. Biden*, Case No. 5:23-cv-03018
Defendants' Response to Plaintiff's Amended Complaint and Supplemental Brief in Support of Summary Judgment
iii

*United States v. Kriesel*,
    720 F.3d 1137 (9th Cir. 2013) ....................................................................5

*Valley Forge Christian Coll. v. Ams. United for Separation of Church and State*,
    454 U.S. 464 (1982) .................................................................2, 7, 8

*Warth v. Seldin*,
    422 U.S. 490 (1975) ....................................................................8

*Weinberger v. Romero-Barcelo*,
    456 U.S. 305 (1982) ....................................................................9

**Statutes**

National Defense Authorization Act ("NDAA") for Fiscal Year 2017,
    Pub. L. No. 114 328 § 551, 130 Stat. 2000 (2016) ...................................5

**Rule**

Fed. R. Civ. P. 15(a)(3) ....................................................................10

**Legislative Materials**

FY2022 NDAA,
    H.R. 4350, 117th Cong. §513 (2021) .............................................9

FY2022 NDAA,
    S. 2792, 117th Cong. §511 (2021) ...............................................9

FY2023 NDAA,
    S. 4543, 117th Cong. § 521 (2022) ..............................................9

FY2023 NDAA: Selective Service and Draft Registration, CRS Insight (Updated January 12,
    2023),
    http://crsreports.congress.gov/product/pdf/IN/IN11973 .........................9

Senate Amendment 161, Cong. Rec. Vol. 169 No. 119, daily ed. Pages S2372-S2373
    (July 12, 2023) .................................................................5, 9

Transcript of Hearing on Final Recommendations and Report of the National Commission on
    Military, National, and Public Service before the United States Senate Committee on Armed
    Services, 117th Cong., 1st Sess. (Mar. 11, 2021), https://perma.cc/8UXP-JXCC ...................5

U.S. House Armed Services Committee, Hearing On Recommendations of the National
    Commission on Military, National, and Public Service, 117th Cong., 1st Sess.,
    YouTube (May 19, 2021), https://www.youtube.com/watch?v=N90tvUb6Fow&t=4229s.........5

**Other Authorities**

Inspired to Serve, Executive Summary, The Final Report of the National Commission on
   Military, National, and Public Service (March 2020),
   https://docs.house.gov/meetings/AS/AS00/20210519/112680/HHRG-117-AS00-Wstate-
   HeckJ-20210519-SD001.pdf ....................................................................................................5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INTRODUCTION

Pursuant to this Court's order of December 13, ECF No. 49, Defendants hereby submit this memorandum in response to Plaintiff's amended complaint and his supplemental memorandum ("Pl.'s Supp. Mem.") in support of his motion for summary judgment addressing standing.  As argued in Defendants' motion to dismiss, or in the alternative, for summary judgment, and reply, ECF Nos. 38 and 47, Plaintiff's claims should be dismissed and his motion for summary judgment denied because the Equal Rights Amendment ("ERA") was not ratified by a sufficient number of States during the time periods established by Congress and the Supreme Court has long recognized such deadlines to be valid, with these issues of timeliness and sufficiency related to ERA ratification yet to be taken up by Congress.[1]  And because Plaintiff's challenge to the Military Selective Service Act ("MSSA") raises a general policy grievance, not a particularized injury present, stigmatic, or future, his amended complaint may also be dismissed for lack of standing.

## ARGUMENT

### I.   Article III Standing

Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing "'Cases' and 'Controversies.'"  *Massachusetts v. EPA*, 549 U.S. 497, 516 (2007).  "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy" and limits who may "maintain a lawsuit in federal court to seek redress for a legal wrong."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the

---

[1] The Court directed that the instant memorandum address only the issue of standing.  *See* ECF No. 49.  Accordingly, Defendants have not reiterated in this filing their other grounds for dismissal raised in prior motions, including for failure to state a claim upon which relief can be granted.  Defendants hereby incorporate all of the arguments for dismissal contained in their motion to dismiss, or, in the alternative, for summary judgment, reply brief, and this supplemental memorandum, and request that the Court deny Plaintiff's motion for summary judgment and dismiss his amended complaint or grant judgment to Defendants.  *See* ECF Nos. 38 and 47.

injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).  Because "[f]ederal courts are courts of limited jurisdiction,"  a court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears, and the plaintiff bears the burden of establishing that such jurisdiction exists.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Plaintiff alleges that he "has knowingly and willfully refused to register for the draft, despite his obligation to do so under the MSSA," and argues that the MSSA registration requirements established by Congress and implemented by the Selective Service System violate the ERA.  Am. Compl. ¶¶ 23, 28.  Where, as here, a plaintiff seeks a decision as to the constitutionality of an action taken by a co-equal branch of government (in this case, both the legislative and executive branches), judicial scrutiny of standing is "especially rigorous." *Raines v. Byrd*, 521 U.S. 811, 819-20 (1997).  This is so because, consistent with the bedrock principle of separation of powers, judging the constitutionality of executive or congressional action "has been recognized as a tool of last resort on the part of the federal judiciary throughout its nearly 200 years of existence."  *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State*, 454 U.S. 464, 474 (1982).  Plaintiff's amended complaint does not demonstrate that he has suffered the type of a legally cognizable injury required to establish his standing, and as stated in Defendants' prior motion, he has not stated a claim upon which relief can be granted.

The first prong of the standing inquiry, "injury in fact," requires (1) an "invasion of a legally protected interest" that is (2) "concrete and particularized" and (3) "actual or imminent." *Lujan*, 504 U.S. at 560.  Establishment of an injury in fact "is a hard floor of Article III jurisdiction."  *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009).

In his supplemental memorandum, Plaintiff identifies three alleged injuries: discriminatory competition for government benefits, the threat of future investigation or enforcement due to his failure to register, and a generalized stigmatic injury of invidious sex discrimination.  However, he fails to demonstrate that any of the three represents a cognizable present, future, or stigmatic injury for purposes sufficient to establish Article III jurisdiction.

**A. Present Injury**

Plaintiff has not demonstrated that any of the harms he alleges constitute cognizable present injuries for purposes of Article III standing.  He does not claim that there exists any enforcement action pending against him at this time, nor does he demonstrate that he has been denied a government benefit or employment opportunity on the basis of his failure to register for the draft.  *See* Pl.'s Supp. Mem. at 5 (conceding that "Plaintiff has not been denied employment yet"); s*ee also Gonzalez v. U.S. Immigration and Customs Enf't*, 975 F.3d 788, 803 (9th Cir. 2020) ("the standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed") (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)).  The mere possibility that the MSSA may be enforced against him at some future point in time, either through commencement of a formal enforcement proceeding or through denial of an employment opportunity, does not serve to establish a present injury today, when no such enforcement proceeding yet exists and no government benefit has been denied him.  *Cf. Brown v. Hotel & Rest. Emps. & Bartenders Int'l Union Loc.* 54, 468 U.S. 491, 512 (1984) (claim "not ripe for review" where, "[b]ecause the Commission never imposed this sanction . . . , we are presented with no concrete application of [challenged] law"); *see also Montana Env't Info. Ctr. v. Stone-Manning*, 766 F.3d 1184, 1189 (9th Cir. 2014) ("Regardless of whether we use the verbal formulations developed for standing or the ones developed for ripeness, our analysis is materially unchanged.").

**B. Future Injury**

To the extent that Plaintiff's amended complaint can be read to assert a threatened future injury, any such injury is too speculative to confer standing.  As the Supreme Court has "repeatedly reiterated," a threatened injury must be "certainly impending" to constitute a cognizable injury in fact, and "'allegations of possible future injury are not sufficient."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).  The Ninth Circuit has also "repeatedly found a lack of standing where the litigant's claim relies upon a chain of speculative contingencies.'  *Lee v. Oregon*, 107 F.3d 1382, 1389 (9th Cir. 1997) (collecting cases).  Plaintiff's failure to identify any concrete and specific threat by authorities to initiate proceedings against him, combined with

the absence of any identified enforcement history, weigh against Plaintiff's standing and demonstrate the insufficiency of his jurisdictional allegations.

As to enforcement history, Plaintiff concedes that he is unable to adduce evidence of even a single enforcement action taken against an individual for failure to register for the draft in the last 38 years—since at least 1986. Pl.'s Supp. Mem. at 4. Absent any history of enforcement to speak of, he speculates that other non-enforcement actions, such as the issuance of status information letters, may hint at unseen enforcement. In reality, however, the issuance of "tens of thousands of status information letters each year, both 'favorable and unfavorable,'" *id*., only weakens Plaintiff's showing by plainly demonstrating that numerous individuals like himself, who have failed to register for the draft, are nevertheless *not* being prosecuted for that refusal and have not been subject to such prosecution since at least 1986. *California Trucking Association v. Bonta*, cited by Plaintiff, *id*. at 3, 6, is accordingly inapposite. That case involved a state that had already "commenced a number of prosecutions" under the challenged statute. 996 F.3d 644, 653 (9th Cir. 2021). Here, in contrast, Plaintiff has failed to identify a single prosecution under the challenged statute occurring any time in the past 38 years.[2]

Plaintiff also identifies no credible threat of enforcement against him personally, relying instead on generalized disclaimers found on the websites of the Selective Service System and Department of Justice, and a statement regarding the *purpose* of MSSA's penalties made by a Selective Service System spokesman to USAToday in 2019 (which notably said nothing about enforcement). *See* Pl.'s Supp. Mem. at 3-4. These generalized public statements do not constitute a credible threat by authorities to initiate proceedings against Plaintiff himself. Plaintiff has identified no more "than a general threat of prosecution," which is insufficient to support review. *Parker v. District of Columbia*, 478 F.3d 370, 374 (D.C. Cir. 2007), *aff'd sub*

---

[2] Plaintiff's attempt to use statements made in the course of a Court-ordered discussion regarding the desirability of a settlement conference to prove his standing fails for the same reason. *See* Pl.'s Supp. Mem. at 3. And contrary to Plaintiff's representation, Defendants did not "affirmatively refuse[] Plaintiff's request to stay enforcement against Plaintiff specifically pending the outcome of this litigation." *Id*. Even if they had, a rejected request for a stay in this context would add nothing to Plaintiff's standing argument, because there exist no enforcement proceedings pending against Plaintiff for the Government to stay.

*nom. District of Columbia v. Heller*, 554 U.S. 570 (2008). *See also Munns v. Kerry*, 782 F.3d 402, 410 (9th Cir. 2015) (uncertainty deterring a plaintiff from seeking employment in a particular field is "an analogous theory of injury" to what was rejected in *Clapper*); *United States v. Kriesel*, 720 F.3d 1137, 1147 (9th Cir. 2013) (no standing where plaintiff merely raises "speculative concerns about possible future government conduct."). And given that the requirements Plaintiff challenges have existed for decades, the lack of enforcement history in the past 38 years outweighs any speculative possibility of future enforcement. *Cf. Cal. Trucking Ass'n*, 996 F.3d at 653 (weight of "history of enforcement" depends on whether the challenged law "is 'relatively new'").

Further, any alleged future injury is made even more speculative by the creation, by Congress, of a Commission to study the military Selective Service process to determine, among other questions, whether the process was needed at all and, if so, whether to conduct it "regardless of sex." National Defense Authorization Act ("NDAA") for Fiscal Year 2017, Pub. L. No. 114 328, §§ 551, 555, 130 Stat. 2000, 2130, 2135 (2016). In its final report, issued March 25, 2020, the Commission recommended that both men and women be required to register with the Selective Service. *See* Inspired to Serve, Executive Summary, The Final Report of the National Commission on Military, National, and Public Service (March 2020), available at https://docs.house.gov/meetings/AS/AS00/20210519/112680/HHRG-117-AS00-Wstate-HeckJ-20210519-SD001.pdf. Congress has held hearings on the Commission's report,[3] and continues to consider proposals to amend or repeal the MSSA. *See* S.Amdt.161, Cong. Rec. daily ed., July 12, 2023 Pages S2372-S2373. If Congress acts on the Commission's recommendations, Plaintiff's concern regarding a future enforcement action would evaporate. Because the policy-making process of the political branches is pending and the future of the Selective Service is currently under debate, Plaintiff's alleged threat of future injury is speculative at best.

---

[3] *See* Transcript of Hearing on Final Recommendations and Report of the National Commission on Military, National, and Public Service before the United States Senate Committee on Armed Services, 117th Cong., 1st Sess. (Mar. 11, 2021), https://perma.cc/8UXP-JXCC; U.S. House Armed Services Committee, Hearing On Recommendations of the National Commission on Military, National, and Public Service, 117th Cong., 1st Sess., YouTube (May 19, 2021), https://www.youtube.com/watch?v=N90tvUb6Fow&t=4229s (no transcript available).

**C. Stigmatic Injury**

Equally deficient is Plaintiff's assertion of "stigmatic injury" caused by his "implicit view that he is expendable and required to defend his county on an unequal basis with his fellow citizens." Am. Compl. ¶ 39. Plaintiff cannot establish Article III standing by relying on conclusory allegations of the harms of discrimination, which allegedly affect all present and future 18 to 26 year-old U.S. citizens and residents. *Id.* Such general allegations of harm, without reference to any particular incidents or injuries that Plaintiff himself has experienced, fail to satisfy Article III's rigid requirements. *See Allen v. Wright*, 468 U.S. 737, 755-56 (1984) (when the injury asserted is "stigmatic," the requirement of personal injury takes on heightened importance).

At most, Plaintiff alleges that he is "suffering frustration and significant anxiety about his role in society" due to the MSSA, Am. Compl. ¶ 39, but "fears of hypothetical future harm that is not certainly impending" do not provide a plaintiff with standing. *Clapper*, 568 U.S. at 416. Plaintiff's alleged psychological injury, brought about by "implicit view[s]" he imputes to the Government, is too far afield from *Allen*'s test for stigmatic claims, which requires that the differential treatment have some real, adverse consequence for the plaintiff.[4] *See Allen*, 468 U.S. at 755 (stigmatic injury inflicted by allegedly unconstitutional discrimination "accords a basis for standing only to those persons who are personally denied equal treatment"); *id.* at 737, 755

---

[4] For example, the plaintiff in *Heckler v. Mathews*, 465 U.S. 728, 739-40 (1984) alleged that the Social Security Act denied him the same Social Security benefits that were afforded similarly situated women, in violation of his equal protection rights. The plaintiff's injury at the hands of the agency was concrete: "as a nondependent man, he receive[d] fewer benefits than he would if he were a similarly situated woman." *Id.* at 738. Although *Heckler* "does contain broad language concerning the stigmatizing injuries suffered by a denial of equal protection"—to which Plaintiff here points, Pl.'s Supp. Mem. at 7—this language "appears in response to the defendant's argument that the plaintiff in *Heckler* lacked standing because one possible outcome of his suit would have been to strike down the discriminatory benefits provision entirely, denying benefits to everyone including the plaintiff. The Court explained that such a possibility did not deprive the plaintiff of standing because he was in fact 'personally denied equal treatment' in the benefits awards." *NAACP v. Horne*, CV 13-01079, 2013 WL 5519514, at *5 (D. Ariz. Oct. 3, 2013); *See also Biszko v. RIHT Fin. Corp.*, 758 F.2d 769, 773 (1st Cir. 1985) (*Heckler* "clearly [did] not dispense with the injury requirement" of Article III).

(plaintiffs lacked standing to challenge tax exemption granted to school when injury was exemption's allegedly stigmatizing effect); *NAACP v. Horne*, 626 F. App'x 200, 201 (9th Cir. 2015) ("stigmatic injury caused by being a target of official discrimination is not itself a personal denial of equal treatment" and "alternate basis for standing resulting from being 'the targets of discriminatory intent' . . . does not support standing"); *Alamo v. Clay*, 137 F.3d 1366, 1370 (D.C. Cir. 1998) (assertions of stigma insufficient when plaintiffs fail to allege "any detrimental consequences" from the stigma).  And the lack of stigma here is further supported by the fact that the military welcomes and recruits men and women alike to enlist.  *See Nat'l Coal. for Men v. Selective Serv. Sys.*, 141 S. Ct. 1815, 1816 (2021) (Sotomayor J., respecting the denial of *certiorari*) ("Beginning in 1991, thousands of women have served with distinction in a wide range of combat roles.").

Absent a particularized, concrete injury, Plaintiff's complaint is akin to a policy grievance, unsuitable for resolution in federal court.  *See Lance v. Coffman*, 549 U.S. 437, 440 (2007) ("To have standing, we observed, a plaintiff must have more than 'a general interest common to all members of the public.'"); *Caldwell v. Caldwell*, 545 F.3d 1126, 1133 (9th Cir. 2008) (allegations of injury that are "no more than an 'abstract objection'" are an insufficient basis for standing).  In the absence of some particularized cognizable harm to Plaintiff himself, the alleged injury is not a matter of individual concern, but rather a generalized and public one.  Such "abstract questions of wide public significance" are "most appropriately addressed in the representative branches."  *Valley Forge*, 454 U.S. at 475; *Kerchner v. Obama*, 612 F.3d 204, 208 (3d Cir. 2010) (same).

Likewise, "assertion of a right to a particular kind of Government conduct, which the Government has violated by acting differently, cannot alone satisfy the requirements of Art. III without draining those requirements of meaning."  *Valley Forge*, 454 U.S. at 483.  Simply put, Article III "requires more than a desire to vindicate value interests."  *Diamond v. Charles*, 476 U.S. 54, 66 (1986).  Thus, although Plaintiff may disagree with the current state of statutory law that exempts women from draft registration, absent some concrete personal injury, he has failed to demonstrate that this disagreement creates Article III standing.  *See id.* at 62 ("The presence of

1  a disagreement, however sharp and acrimonious . . . is insufficient by itself to meet Art. III's

2  requirements."). At its core, Plaintiff's allegations raise a general policy objection, not a

3  particularized injury present, stigmatic, or future, and recourse for his policy objections lies with

4  the political process, not in federal court.

5  **II.    Prudential Considerations**

6         Even if the Court finds that Plaintiff has demonstrated Article III standing for his claims,

7  he has failed to establish that his claims should proceed in light of prudential standing and other

8  prudential considerations.  Prudential considerations about the "the proper—and properly

9  limited—role of the courts in a democratic society" further undermine this Court's authority to

10 review Plaintiff's challenge to the MSSA at this time.  *See Bennett v. Spear*, 520 U.S. 154, 162

11 (1997) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).  Such considerations restrain courts

12 from "adjudicating abstract questions of wide public significance which amount to generalized

13 grievances, pervasively shared and most appropriately addressed in the representative branches."

14 *Valley Forge*, 454 U.S. at 475 (internal citations omitted).  Here, prudential considerations

15 counsel against adjudication of Plaintiff's generalized grievance about draft registration policy,

16 which would inject this Court into military affairs that are appropriately committed to the

17 authority of the political branches.  *See Dep't of Navy v. Egan*, 484 U.S. 518, 530 (1988)

18 ("unless Congress specifically has provided otherwise, courts traditionally have been reluctant to

19 intrude upon the authority of the Executive in military and national security affairs.").

20        The Supreme Court reaffirmed this principle and reconfirmed the prudence of such

21 deference when it was recently asked to review the exact statutory scheme Plaintiff challenges

22 here, but nonetheless declined to do so.  *Nat'l Coal. for Men v. Selective Serv. Sys.*, 141 S. Ct.

23 1815 (2021).  Respecting the Court's denial of *certiorari*, Justice Sotomayor, joined by Justices

24 Breyer and Kavanaugh, made explicit that "the Court's longstanding deference to Congress on

25 matters of national defense and military affairs cautions against granting review while Congress

26 actively weighs the issue."  *Id*. at 1816 (Sotomayor J.).  This Court should adopt the same

27 posture and follow the example set by the Supreme Court by dismissing Plaintiff's claims for

28 prudential considerations (if it does not dismiss them for failure to state a claim as argued in

Defendants' prior motion).  *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982) (equitable relief requires consideration of public interest; courts are "not mechanically obligated to grant an injunction for every violation of law"); *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1222-23 (9th Cir. 1998) ("The Declaratory Judgment Act embraces both constitutional and prudential concerns . . . If [a] suit passes constitutional and statutory muster, the district court must also be satisfied that entertaining the action is appropriate.  This determination is discretionary.").  The same considerations warranting the Supreme Court's denial of *certiorari* remain equally applicable today, and counsel against review of Plaintiff's claims as Congress continues to actively weigh amending or repealing the requirements of the MSSA.  *See* ECF No. 38 at 2-3.

Plaintiff's conclusory assertion that such prudence is no longer warranted simply because Congress has not finished considering an issue as complex and vital to military readiness as draft registration a mere 30 months after denial of *certiorari* in *National Coalition for Men* is unsupported by case law and undermined by clear evidence that Congress continues to "actively weigh the issue." *Nat'l Coal. for Men,* 141 S. Ct. at 1816.  Congress considered the issue of draft registration in the FY22,  FY23, and FY24 National Defense Authorization Acts ("NDAAs").  *See, e.g.*, FY2023 NDAA (S. 4543, 117th Cong. § 521), FY2022 NDAA (H.R. 4350, 117th Cong. §513 and S. 2792, 117th Cong. §511); FY2023 NDAA: Selective Service and Draft Registration, CRS Insight, Updated January 12, 2023, available at http://crsreports.congress.gov/product/pdf/IN/IN11973; S.Amdt.161, Cong. Rec. daily ed., July 12, 2023 Pages S2372-S2373, SEPARATE VOTE REQUIREMENT FOR INDUCTION OF MEN AND WOMEN.  Imposing a 30-month time limit on political consideration of military affairs, with judicial deference expiring when, in Plaintiffs' estimation, Congress has not moved fast enough to resolve the issue, would improperly inject the judiciary into the legislative process in an area where deference is required by the "Constitution itself." *Rostker v. Goldberg*, 453 U.S. 57, 68 (1981).[5]

---

[5] Plaintiff also briefly argues that Defendants have waived the issue of prudential standing by failing to address it in response to his original complaint.  *See* Pl's Supp. Mem. at 11-12, ECF No. 52.  Plaintiff's waiver argument fails.  While Defendants did not expressly argue for

1  The Court should accordingly exercise its discretion to decline to review Plaintiff's

2  claims, given the Supreme Court's express recognition that the importance of "deference to

3  Congress" on the topic of draft registration policy "cautions against granting review while

4  Congress actively weighs" the matter, as it continues to do.  *Nat'l Coal. for Men,* 141 S. Ct. at

5  1816.

6                                    **<u>CONCLUSION</u>**

7          For the foregoing reasons and those contained in Defendants' motion to dismiss, or, in

8  the alternative, for summary judgment, and reply memorandum, the Court should deny

9  Plaintiff's motion for summary judgment, grant Defendants' motion, and either dismiss the

10  amended complaint or enter judgment in favor of Defendants.

11

12  Dated: January 12, 2024                    Respectfully submitted,

13                                             BRIAN M. BOYNTON
14                                             Principal Deputy Assistant Attorney General

15                                             ALEXANDER K. HAAS
16                                             Director, Federal Programs Branch

17                                             TERRY M. HENRY
18                                             Assistant Branch Director

19                                             */s/ Andrew J. Rising*
                                               MICHAEL J. GERARDI
20                                             ANDREW E. CARMICHAEL
                                                  Senior Trial Counsel
21                                             ANDREW J. RISING
22                                                Trial Attorney
                                               Civil Division, Federal Programs Branch
23                                             U.S. Department of Justice
                                               1100 L St., N.W.
24

25  dismissal on prudential standing grounds in their prior motion to dismiss, or in the alternative,
26  for summary judgment, Plaintiff has since chosen to amend his complaint by adding additional,
    specific allegations to support his claim to standing.  *See* ECF No. 51.  Defendants may
27  accordingly raise prudential considerations as an additional basis for dismissal in response to the
    newly amended complaint, along with his failure to state a claim, as they have done here.  *See*
28  *supra* fn. 1; Fed. R. Civ. P. 15(a)(3) (providing defendants an opportunity to respond to the filing
    of an amended complaint).

Washington, D.C.  20005
Telephone: (202) 514-0265
E-mail: andrew.j.rising@usdoj.gov

*Counsel for Defendants*